## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

In Re:

ARTHUR HERRING, III,

    Debtor.

_____/

Case No.: 20-12141-MDC

Chapter 7

NITV FEDERAL SERVICES, LLC,

    Plaintiff,

v.

ARTHUR HERRING, III,

    Defendant.

_____/

Adv. Case No.: 20-00180

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR FINAL SUMMARY JUDGMENT AS TO THE NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(6)**

Plaintiff NITV Federal Services, LLC ("Plaintiff"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 56 (made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056), hereby files this brief in support of its Motion for Final Summary Judgment as to the Non-Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(6) against defendant Arthur Herring, III ("Defendant"), and states as follows:

### INTRODUCTION

Basic principles of collateral estoppel mandate that summary judgment be entered in favor of Plaintiff. As set forth herein, Plaintiff obtained a federal district court judgment against Defendant (after approximately 1.5 years of litigation and more than 163 docket entries) in the amount of $849,347.92. The district court made detailed findings of fact/conclusions of law in granting judgment to Plaintiff on its claims for violation of the Lanham Act, defamation, and

tortious interference with existing/prospective business relationships (among other claims not relevant hereto), and each of these claims involves the type of malicious/willful conduct necessary for a finding of non-dischargeability under 11 U.S.C. § 523(a)(6). Defendant has not raised *any* affirmative defenses to Plaintiff's claims in this lawsuit and has only denied Plaintiff's allegations 'to the extent inconsistent' with the Orders entered in the underlying district court action (without actually identifying any supposed inconsistency). Plaintiff is clearly entitled to final summary judgment at this time.

## STATEMENT OF UNDISPUTED FACTS

### I.  The Florida Lawsuit

1. On July 27, 2018, NITV filed a lawsuit (the "Florida Lawsuit") against Defendant and Dektor Corporation ("Dektor") in the United States District Court for the Southern District of Florida (the "District Court") (Case No. 9:18-cv-80994).[1]

2. Defendant is the sole shareholder, officer, and/or director of Dektor.[2]

3. The Florida Lawsuit alleged a scheme by Debtor/Dektor (competitors of Plaintiff in the field of truth verification software) to unfairly compete through a pervasive campaign of disparagement/defamation of NITV and its products.[3] Debtor/Dektor accomplished this by sending tens of thousands of defamatory e-mails (thousands of which were sent during the Florida Lawsuit) to NITV's clients (primarily law enforcement agencies) and through publication of at least two defamatory websites.[4]

---

[1]  See Declaration of Daniel DeSouza, dated July 8, 2020 (the "DeSouza Decl."), a true and correct copy of which is attached hereto as Exhibit "1," at ¶ 3, Exhibit A thereto (attaching a copy of the Complaint in the Florida Lawsuit); see also Defendant's Answer to Complaint [D.E. 4], at ¶ 6.

[2]  Id.

[3]  See generally Complaint in the Florida Lawsuit, ¶¶ 29 – 83.

[4]  Id.

2

4.  On June 10, 2019, NITV filed (in the Florida Lawsuit) its Motion for Sanctions Against Herring for Spoliation of Evidence and Discovery Abuse (the "Motion for Sanctions").[5] That motion sought sanctions against Defendant for a multitude of alleged discovery abuse he orchestrated during the pendency of the Florida Lawsuit.[6]

5.  The alleged conduct included: (a) Defendant's installation of a "file shredding" program on his laptop the day after Defendant unilaterally cancelled his deposition in the Florida Lawsuit (coupled with a sworn statement from Defendant's former IT-professional that Defendant asked on multiple occasions about permanently deleting files that Defendant did not want NITV obtaining access to); (b) Defendant's attempt to delete approximately 2,500 emails sent between June 15, 2018 and February 13, 2019; (c) Defendant's use of an undisclosed email address for the purpose of evading discovery (and perjurious testimony that no such email account existed); (d) Defendant's destruction/reformatting of a computer hard drive and instructions to his former IT-professional to lie about such; and (e) Defendant's attempt to defy the District Court's injunction by hosting the aforementioned defamatory websites 'offshore' so they would be beyond the jurisdiction of the District Court.[7]

6.  On September 20, 2019, as a result of the above-described misconduct, the District Court entered an Order Granting Plaintiff's Motion for Sanctions for Spoliation of Evidence and Discovery Abuse.[8] The District Court concluded that the severe sanction of entering a default against Defendant was appropriate.[9]

---

[5] See DeSouza Decl., ¶ 4, at Exhibit B thereto (attaching a copy of the Motion for Sanctions).

[6] Id.

[7] Id.

[8] See DeSouza Decl, ¶ 5, at Exhibit C thereto (attaching a copy of the Order Granting Plaintiff's Motion for Sanctions for Spoliation of Evidence and Discovery Abuse).

[9] Id.

3

7.   Thereafter, on December 16, 2019, an Order of Final Default Judgment and Permanent Injunction Against Both Defendants was entered in the Florida Lawsuit.[10] That Order awarded final judgment to Plaintiff (against both Debtor and Dektor) on all claims asserted in the Florida Lawsuit, including Plaintiff's claims for violation of the Lanham Act, defamation, and tortious interference.[11]

8.   In granting final judgment against Defendant, the District Court specifically found that Defendant willfully/intentionally violated the Lanham Act, willfully/intentionally committed defamation, and willfully/intentionally committed tortious interference.[12] In light of this intentional conduct, the District Court awarded Plaintiff (on its Lanham Act claim) two times the amount of actual damages proved, or $849,347.92.[13]

9.   That Order also imposed a *permanent* injunction precluding both Defendant and Dektor from continuing to send the aforementioned e-mails/communications or re-publish the aforementioned defamatory websites.[14]

10.   Defendant was represented in the Florida Lawsuit by The Law Office of Robert Eckard, Associates, P.A. ("Eckard, P.A.") from August 16, 2018 – November 2, 2018 at which time Eckard, P.A. was granted permission to withdraw as counsel for Defendant and Dektor.[15]

11.   According to Eckard, P.A.'s motion to withdraw as counsel, Defendant

---

[10]   See DeSouza Decl., ¶ 6, at Exhibit D thereto (attaching a copy of the Order of Final Default Judgment and Permanent Injunction).

[11]   Id.

[12]   Id. at pp. 11 – 14.

[13]   Id. at pp. 17 – 18.

[14]   Id. at pp. 18 – 21.

[15]   See DeSouza Decl., ¶ 7, at Exhibit E thereto (attaching a copy of the docket sheet in the Florida Lawsuit); see also Defendant's Answer to Complaint [D.E. 4], at ¶ 14.

4

terminated the attorney-client relationship with Eckard, P.A. on October 17, 2018.[16]

12. Thereafter, Defendant was represented in the Florida Lawsuit by Adler Wellikoff, PLLC ("Adler Wellikoff") from December 7, 2018 – February 15, 2019 at which time Adler Wellikoff was granted permission to withdraw as counsel for Defendant and Dektor.[17]

13. After that date, Defendant represented himself pro se in the Florida Lawsuit.[18] The docket in the Florida Lawsuit reflects that Defendant was an active participant as a pro se litigant, having filed at least thirty (30) different documents – including several motions seeking various forms of relief – following withdrawal of Adler Wellikoff.[19]

14. The aforementioned Motion for Sanctions and final judgment in the Florida Lawsuit were not unopposed by Defendant or granted by default. Notably, on June 24, 2019, Defendant filed an 81-page (including attachments) opposition memorandum to the Motion for Sanctions. On October 31, 2019, Defendant filed a 70-page (including attachments) opposition memorandum to Plaintiff's motion for final judgment/permanent injunction. Defendant then filed a 22-page sur-reply to that same motion on November 5, 2019.

15. On December 10, 2019, the District Court held an evidentiary hearing (lasting over 4 hours) on Plaintiff's motion for final judgment/permanent injunction. Defendant appeared in-person at the hearing, testified individually and on behalf of Dektor, and also personally cross-examined Plaintiff's witnesses at the evidentiary hearing.

16. Defendant was provided multiple opportunities to participate and did in fact participate extensively in the Florida Lawsuit following the withdrawal of Adler Wellikoff.

---

[16] See Defendant's Answer to Complaint [D.E. 4], at ¶ 15.

[17] See DeSouza Decl., ¶ 7, at Exhibit E thereto (docket sheet); see also Defendant's Answer to Complaint [D.E. 4], at ¶ 16.

[18] See DeSouza Decl., ¶ 7, at Exhibit E thereto (docket sheet).

[19] Id.

5

## II. The Underlying Allegations in the Florida Lawsuit

17. The December 16, 2019 final judgment entered in the Florida Lawsuit contains a detailed recitation of the facts that the District Court found to be established against both Defendant and Dektor.[20] In describing the facts, the final judgment specifically states: "These facts are drawn from credible witness testimony and uncontested evidentiary submissions that have been presented to the Court. The Court has independently analyzed and considered the evidence and has adopted only those findings which the Court has deemed to be properly supported."[21]

18. Generally, the facts as established by the District Court are that Defendant/Dektor were competitors of Plaintiff in the field of truth verification software and that Defendant/Dektor intentionally sent tens of thousands of defamatory e-mails to existing and/or prospective customers of Plaintiff in an effort to take sales from Plaintiff and direct such sales to Dektor.[22]

19. Further, Defendant established at least two defamatory websites containing a number of misstatements about both Dektor (which was falsely passing itself off as the successor of a prior- entity named Dektor Counterintelligence and Security, Inc.) and Plaintiff in an effort to direct sales toward Dektor.[23] The aforementioned websites contained dozens of pages of defamatory statements about Plaintiff and its products/services.[24]

## ARGUMENT

### I. Legal Standard

Summary judgment should be granted when the moving party demonstrates "there is no

---

[20] See DeSouza Decl., ¶ 6, at Exhibit D thereto (final judgment).
[21] Id. at p. 6, n. 2.
[22] Id. at pp. 6 – 10.
[23] Id.
[24] Id.

6

genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Jensen v. Pressler & Pressler, 791 F.3d 413, 417 (3d Cir. 2015). Under Rule 56, the moving party is entitled to judgment as a matter of law if the court finds that the motion alleges facts which, if proven at trial, would require a directed verdict in favor of the movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). If the moving party meets its initial burden, the responding party may not rest on the pleadings, but must designate specific factual averments through the use of affidavits or other permissible evidentiary material which demonstrate a genuine issue of material fact to be resolved at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50 (1986).

## II.    Discargeability Under 11 U.S.C. § 523(a)(6)

Section 523(a)(6) excepts from discharge any debt for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). "Willful" means deliberate or intentional injury, not just a deliberate or intentional act that leads to injury. In re Coley, 433 B.R. 476, 497 (Bankr. E.D. Pa. 2010) (citing Kawaauhau v. Geiger, 523 U.S. 57 (1998)). "[A]ctions taken for the specific purpose of causing an injury as well as actions that have a substantial certainty of producing injury are 'willful' within the meaning of § 523(a)(6)." In re Coley, 433 B.R. at 497 (citing In re Conte, 33 F.3d 303, 307-09 (3d Cir. 1994)). The "Code requires at least a deliberate action that is substantially certain to produce harm." Conte, 33 F.3d at 309.

"Malice" means wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will. 4 Collier on Bankruptcy ¶ 523.12 [2] (Alan N. Resnick, Henry J. Sommer eds., 16th ed. 2009). Malice does not mean the same thing for nondischargeability

7

purposes under § 523(a)(6) as it does in contexts outside of bankruptcy. In bankruptcy, debtor may act with malice without bearing any subjective ill will toward plaintiff creditor or any specific intent to injure same. In re Wooten, 423 B.R. 108, 130 (Bankr. E.D. Va. 2010) (citation omitted); see also In re Vidal, 2012 Bankr. LEXIS 4198, at *28 (Bankr. E.D. Pa. Sept. 7, 2012). Therefore, in this proceeding, Plaintiff must prove that:

> (1) the subject debt arose from an injury that was willful (i.e., involving Defendant's deliberate and intentional conduct);
>
> (2) the conduct was intended or substantially certain to cause injury; and
>
> (3) the conduct was malicious (i.e., wrongful).

See, e.g., In re Jacobs, 381 B.R. 128, 144-45 (Bankr. E.D. Pa. 2008).

### III. Issue Preclusion Applies

The doctrine of issue preclusion (also known as collateral estoppel), is based upon the principle that "a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise." Dici v. Commw. of Pa., 91 F.3d 542, 547 (3d Cir. 1996) (quoting Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 107 (1991)). Federal common law of issue preclusion determines the preclusive effect of a decision by another federal court sitting in diversity." In re Kaplan, 143 F.3d 807, 814-15 (3d Cir. 1998). The Third Circuit will apply the doctrine of issue preclusion where "(1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question." Bd. of Trs. of Trucking Employees of N. Jersey Welfare Fund, Inc. v. Centra, 983 F.2d 495, 505 (3d Cir. 1992).

### A. *Identical Issues were Decided in the Florida Lawsuit*

The Florida Lawsuit and this adversary proceeding arise out of the same set of material facts – namely, Defendant's use of e-mails, websites, and other forms of communication to present smear Plaintiff's name and drive business to Defendant's own business (Dektor). Based upon the evidence (which included thousands of e-mails, witness testimony, dozens of pages of defamatory websites, etc.), the District Court entered judgment against Defendant on Plaintiff's claims for defamation, tortious interference, and violation of the Lanham Act. Each of these claims – and Defendant's underlying conduct leading to such judgment – constitutes a willful and malicious injury for purposes of § 523(a)(6).

### 1. Defamation

Under Florida law, the elements of defamation are: "(1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory." Turner v. Wells, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing Jews For Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1106 (Fla. 2008)). On this claim, the District Court specifically found:[25]

> Here, the evidence shows that Dektor and Mr. Herring published numerous false and defamatory statements about Plaintiff and Plaintiff's product and related services to a multitude of existing and potential consumers of Plaintiff's products and services. Defendants knew or should have known that the defamatory statements were false when made and Plaintiff has suffered damages, including but not limited to lost sales and lost goodwill as a direct result of the defamation. Plaintiff is entitled to judgment against Defendants on this claim.

---

[25] See DeSouza Decl., ¶ 6, at Exhibit D thereto (final judgment), at p. 13.

9

It is beyond clear that intentional defamation under Florida law – as Defendant was found to have committed – constitutes a willful and malicious injury for purposes of § 523(a)(6). See, e.g. Johnston v. Elbaum (In re Elbaum), 22 Fla. L. Weekly Fed. B231 (Bankr. S.D. Fla. Nov. 20, 2009) ("Intentional defamation meets the requirements of nondischargeability under § 523(a)(6) because malice is an essential element of defamation under Florida law and intentional defamation meets the 'willful' requirement of § 523(a)(6)."); Kronk v. Anthony(In re Anthony), No. 8:19-cv-674-T-33, 2020 U.S. Dist. LEXIS 2784, at *21 (M.D. Fla. Jan. 7, 2020) ("The intentional tort of defamation may constitute a 'willful and malicious injury' so long as the debtor knew the published statements were false.").

### 2. Tortious Interference

Under Florida law, the elements of tortious interference with a business relationship are: (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff. Int'l Sales & Serv., Inc. v. Austral Insulated Prod., Inc., 262 F.3d 1152, 1154 (11th Cir. 2001) (citing Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So.2d 812, 814 (Fla. 1994)). On this claim, the District Court specifically found:[26]

---

[26] Id. at p. 14.

Here, Plaintiff has shown that it had existing contracts or prospective business relationships with various law enforcement agencies and other entities for the sale of its CVSA product and related services. Plaintiff claims Dektor and Mr. Herring knew about these contracts and business relationships and intentionally interfered by making false and disparaging statements about Plaintiff and the CVSA product to dissuade known CVSA users from using NITV's products and instead use Dektor's PSE competing product. NITV is thus entitled to judgment against Dektor on this fourth and final count.

It is likewise beyond question that tortious interference – as Defendant was found to have committed – constitutes a willful and malicious injury for purposes of § 523(a)(6). See Corn v. Marks (In re Marks), 192 B.R. 379, 385 (E.D. Pa. 1996) ("The tort of intentional interference requires an intent to injure; this makes it a 'willful and malicious injury.' The same standard governs the finding of intentional interference and determination of dischargeability; the issue involved in the state court confirmation of the Arbitration Award was the same issue presented in the bankruptcy court, i.e., whether Marks inflicted a willful and malicious injury on Corn. Finding that Marks intentionally interfered with Corn's economic opportunity was a finding that Marks inflicted a 'willful and malicious injury' on Corn."); Caro v. Jundi (In re Jundi), Nos. 11-14496, 11-0759, 2012 Bankr. LEXIS 4022, at *22-23 n.12 (Bankr. E.D. Pa. Aug. 23, 2012) ("Tortious interference with contractual relations may constitute willful and malicious conduct under section 523(a)(6).").

### 3.  Lanham Act

With respect to § 523(a)(6) "willful[ness]," collateral estoppel/issue preclusion specifically with respect to judgments under the Lanham Act has been analyzed as follows:

> [A] violation of the Lanham Act and a willful and malicious injury
> are not necessarily synonymous, and that Lanham Act liability may

11

> be premised on conduct that is not willful and malicious. Therefore, the principle of collateral estoppel does not automatically operate to render a Lanham Act judgment nondischargeable because it would be possible under the same set of facts to find a violation of the Lanham Act, which does not satisfy the elements of nondischargeability under 11 U.S.C. § 523(a)(6). Notwithstanding, this does not mean that a Lanham Act judgment can never have preclusive effect in a § 523(a)(6) nondischargeability proceeding. Rather, collateral estoppel may be appropriate where there is ample support in the record for concluding that the district court based its Lanham Act judgment on the defendant's willful and malicious conduct.

Louis Vuitton Malletier v. Ortiz (In re Ortiz), No. 08-00123, 2009 Bankr. LEXIS 2845, at *4 (Bankr. D.P.R. June 2, 2009). In the Florida Lawsuit, the District Court rendered a damages award against Defendant under 15 U.S.C. §§ 1117(a) and 1125(a). A judgment for compensatory damages under Sections 1117(a) and 1125(a) does not by itself establish the infringer's intent. That is because intent is not an element of the basic Section 1125(a) infringement claim. See Turner Greenberg Assocs., Inc. v. C&C Imports, Inc., 320 F. Supp. 2d 1317, 1330 (S.D. Fla. 2004), aff'd 128 Fed. App'x. 755 (11th Cir. 2005).

However, in this case "there is ample support in the record for concluding that the [D]istrict [C]ourt based its Lanham Act judgment on the defendant's willful and malicious conduct," Ortiz, 2009 Bankr. LEXIS 2845, at *4. That is because the District Court specifically found Defendant's violation of the Lanham Act to be intentional and therefore doubled Plaintiff's damages under 15 U.S.C. § 1117(a) and awarded attorneys' fees to Plaintiff:

> Here, Plaintiff has shown that Defendants intentionally engaged in false advertising, unfair competition, disparagement, and tortious interference under governing federal and Florida law. As discussed previously, the full extent of damage caused by Defendants will likely never be known

given Defendants' refusal to properly participate in discovery. The Court gives some credit to Mr. Herring for appearing before this Court for an evidentiary hearing and making an appropriate, albeit decidedly late, effort to provide relevant information on the matter of damages. Mr. Herring did make some good points, however, his skillful interweaving of some truths with hyperbole and untruths requires a strong sanction.

Ultimately, having presided actively over this case for nearly one year now and having heard from the parties at a recent evidentiary hearing, the Court finds that in light of Defendants' willful violation of the Lanham Act, misuse of the internet to convey materially disparaging information about Plaintiff and Plaintiff's product, and discovery misconduct leading to an additional unknown amount of actual damages, doubling is appropriate here. Accordingly, the Court will award Plaintiff two times the amount of actual damages proved in this case, or **$849,347.92**.

The Eleventh Circuit has defined an exceptional case [justifying a fee award under 15 U.S.C. § 1117(a)] as a case that can be characterized as "malicious, fraudulent, deliberate, and willful." Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1205 (11th Cir. 2001). Thus, the District Court was required to find intentional/malicious conduct on the part of Defendant prior to awarding Plaintiff double damages/attorneys' fees.

### B.   *There was a Final Judgment on the Merits*

There is no dispute that the District Court's December 16, 2019 Order of Final Default Judgment and Permanent Injunction Against Both Defendants constitutes a final judgment on the merits for purposes of issue preclusion. Notably, under Florida law, even "[a] pure default judgment, entered when there is no participation by the defendant, is sufficient to satisfy the 'actually litigated' element of collateral estoppel under Florida law." Lang v. Vickers (In re Vickers), 247 B.R. 530, 535 (Bankr. M.D. Fla. 2000). Here, the District Court did not enter a

"pure" default judgment against Defendant – he participated in that lawsuit for 1.5 years, filed dozens of motions/responses, and appeared/argued at the hearing on final judgment. The final judgment in the Florida Lawsuit was only styled as a "default" by virtue of Defendant's egregious discovery violations that caused the deletion of thousands of highly-relevant documents in addition to Defendant's perjurious deposition testimony in which he concealed secret e-mail accounts he used to communicate about Plaintiff. The final judgment in the Florida Lawsuit is 21-pages long and contains detailed factual and legal findings based upon the evidence presented throughout that lawsuit – Defendant cannot seriously suggest it is anything other than a final judgment on the merits.

### C.  *Privity Exists*

There is likewise no challenging the privity element of issue preclusion – Plaintiff sued Defendant directly in the Florida Lawsuit and the same parties are now before the Court in this proceeding.

### D.  *Defendant had a Full and Fair Opportunity to Litigate the Issues*

Finally, Defendant himself admits that he had a full and fair opportunity to litigate the issues in the Florida Lawsuit.[27] Defendant's admission is not particularly controversial given Defendant's extensive participation in the Florida Lawsuit (evidenced by the docket therein) over approximately 1.5 years. Further, Defendant has nobody to blame but himself for the various sanctions imposed against him in the Florida Lawsuit. Rather than participate fairly in that lawsuit, Defendant chose instead to create secret e-mail accounts, install file shredding software,

---

[27]  See, e.g. Defendant's Answer to Complaint [D.E. 4], at ¶ 20 (admitting Plaintiff's allegation that "Defendant was provided multiple opportunities to participate and did in fact participate extensively in the Florida Lawsuit following the withdrawal of Adler Wellikoff").

purposely destroy a hard drive containing years of data, delete thousands of highly-relevant documents, and commit perjury. As acknowledged by the District Court, Plaintiff's damages were likely many times more what was actually awarded in the Florida Lawsuit, but the full extent of such will likely never be known given Defendant's egregious conduct. Defendant was given every opportunity to participate fairly/reasonably by the District Court and he cannot now use this forum to complain otherwise.

Indeed, the reasons for application of collateral estoppel are particularly strong here given Defendant's contemptuous conduct in the Florida Lawsuit. Defendant destroyed thousands (if not tens of thousands) of relevant documents, lied under oath about secret e-mail accounts he failed to disclose, and committed multiple other discovery abuses ultimately leading to the severe sanction of a default being entered against him. Plaintiff should not be required to re-litigate its underlying case as doing so would operate to reward (rather than punish) Defendant for his *deliberate* destruction of evidence needed to support Plaintiff's allegations. The District Court specifically found that Defendant acted with the intent to deprive Plaintiff of evidence, to interfere with Plaintiff's ability to discover relevant information, and to destroy relevant information. Defendant was successful in those attempts when he erased the entirety of a computer hard drive, failed to disclose e-mails from his 'secret' e-mail account, and destroyed thousands of e-mails concerning the subject matter of the Florida Lawsuit. Defendant does not get another bite at the proverbial apple (challenging Plaintiff on the merits of its underlying claims) when Defendant utilized less-than-scrupulous means to destroy the evidence supporting those claims. The District Court sanctioned Defendant for his conduct – this Court should not reward him for the very same conduct.

**IV.    The Entire Amount of the District Court's $849,347.92 is Non-Dischargeable**

Defendant willfully and maliciously injured Defendant by virtue of his campaign of defamatory e-mails, websites, and other communications designed to take business away from Plaintiff and drive such business to Dektor (Defendant's own company). The District Court evaluated the evidence and awarded Plaintiff $849,347.92 in damages as a result of Defendant's conduct. As set forth above, Plaintiff is entitled to final summary judgment against Defendant because issue preclusion/collateral estoppel applies to bar Defendant from re-litigating the issues raised in the Florida Lawsuit.

Notably, Defendant's Answer to the Complaint [D.E. 4] denies that the entire amount of the $849,347.92 judgment is non-dischargeable.[28] Rather, Defendant argues that because the District Court doubled Plaintiff's actual damages, any judgment of non-dischargeability should be limited to the base damage award ($424,673.96). Defendant is incorrect.

The basis for the Court awarding Plaintiff double damages under 15 U.S.C. § 1117(a) was Defendant's willful and malicious conduct. That sum was not a penalty – indeed, 15 U.S.C. § 1117(a) specifically says as much:

> In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. ***Such sum in either of the above circumstances shall constitute compensation and not a penalty.*** The court in exceptional cases may award reasonable attorney fees to the prevailing party.

The District Court found it proper to double Plaintiff's damages given the uncertainty caused by Defendant's vast array of discovery abuses (the full extent of which will likely never be known). The District Court itself acknowledged that such award may not be punitive and must be based

---

[28] See Defendant's Answer to Complaint, ¶ 29.

on a showing of actual harm.[29] The full award of $849347.92 is non-dischargeable. Rigoni Di Asiago S.p.A. v. Mucci (In re Mucci), 458 B.R. 802, 808 (Bankr. D. Conn. 2011) (damages award and attorneys' fee award under Lanham Act non-dischargeable where both based on same intentional conduct); Ryt v. Peace (In re Peace), 546 B.R. 65, 76 (Bankr. S.D. Ohio 2015) ("If recoverable in this action, the treble damages would be nondischargeable."); Johnson v. Keene (In re Keene), 135 B.R. 162, 165 (Bankr. S.D. Fla. 1991) (award of treble damages found to be non-dischargeable); Monsanto Co. v. Trantham (In re Trantham), 304 B.R. 298, 309 (B.A.P. 6th Cir. 2004) (entire judgment for patent infringement, including treble damages, found to be non-dischargeable). Even if Defendant's characterization of the final judgment being punitive was correct (it is not), such would not alter the conclusion that the entire amount of the final judgment is non-dischargeable.[30]

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter final summary judgment against Defendant as to the non-dischargeability (under 11 U.S.C. § 523(a)(6)) of the $849,347.92 final judgment in the Florida Lawsuit

Dated: July 13, 2020.

DESOUZA LAW, P.A.
3111 N. University Drive
Suite 301
Coral Springs, FL 33065

---

[29] See DeSouza Decl., ¶ 6, at Exhibit D thereto (final judgment), at p. 17.

[30] "Section 523(a)(6) 'does not distinguish between debts which are compensatory and those which are punitive. The language of section 523(a)(6) is directed at the nature of the conduct which gives rise to the debt, rather than the nature of the debt.'" Abbo v. Rossi, McCreery & Assocs., Inc. (In re Abbo), 168 F.3d 930, 931 (6th Cir. 1999) (quoting Johnson v. Miera (In re Miera), 926 F.2d 741, 745 (8th Cir. 1991)); see also Hunter v. Lake Cumberland Reg'l Hosp., LLC, 2012 U.S. Dist. LEXIS 146141, at *14, (E.D. Ky. Sept. 28, 2012) ("[W]hen punitive damages are shown to arise from such conduct [to fall within the compass of § 523(a)(6),] they are also nondischargeable under § 523(a)(6)."); The Spring Works, Inc. v. Sarff (In re Sarff), 242 B.R. 620, 627 (B.A.P. 6th Cir. 2000) ("Punitive damages stemming from the same 'willful and malicious injury' as a nondischargeable compensatory damages judgment are likewise nondischargeable.").

Telephone: (954) 603-1340
DDesouza@desouzalaw.com

By: /s/ Daniel DeSouza, Esq.
Daniel DeSouza, Esq.
Florida Bar No.: 19291

***Admitted Pro Hac Vice***


**DEAN E. WEISGOLD, P.C.**

By: _____
Dean E. Weisgold
Attorney for Plaintiff
1835 Market Street, Suite 1215
Philadelphia, PA 19103
(215) 979-7602
dean@weisgoldlaw.com

18

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

In Re:

ARTHUR HERRING, III,

    Debtor.

_____/

Case No.: 20-12141-MDC

Chapter 7

NITV FEDERAL SERVICES, LLC,

    Plaintiff,

v.

ARTHUR HERRING, III,

    Defendant.

_____/

Adv. Case No.: 20-00180

## CERTIFICATE OF SERVICE

Dean E. Weisgold, Esquire, hereby certifies that a true and correct copy of the within Plaintiff's Motion for Final Summary Judgment as to the Non-Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(6) was served by electronic means to the counsel below named:

Matthew R. Nahrgang, Esquire
35 Evansburg Road
Collegeville, PA 19426

**DEAN E. WEISGOLD, P.C.**

By: _____
Dean E. Weisgold
Attorney for Plaintiff
1835 Market Street, Suite 1215
Philadelphia, PA 19103
(215) 979-7602
dean@weisgoldlaw.com

Dated: 7/13/2020