**UNITED STATES BANKRUPTCY COURT**    EXHIBIT "1"
**EASTERN DISTRICT OF PENNSYLVANIA**

In Re:

ARTHUR HERRING, III,                    Case No.: 20-12141-MDC

     Debtor.                           Chapter 7

_____/

NITV FEDERAL SERVICES, LLC,

     Plaintiff,                         Adv. Case No.: 20-00180

v.

ARTHUR HERRING, III,

     Defendant.

_____/

## DECLARATION OF DANIEL DESOUZA

    Daniel DeSouza does hereby declare pursuant to 28 U.S.C. § 1746:

1.    I submit this declaration in support of plaintiff NITV Federal Services, LLC's ("Plaintiff")

Motion for Final Summary Judgment.  This declaration is based on my personal knowledge.

2.    I represent Plaintiff both in this adversary proceeding and in the underlying lawsuit (the

"Florida Lawsuit") against defendant Arthur Herring, III ("Defendant") and Dektor Corporation

("Dektor") that was filed in the United States District Court for the Southern District of Florida

(the "District Court") (Case No. 9:18-cv-80994).

3.    Attached hereto as Exhibit "A" is a true and correct copy of Plaintiff's July 27, 2018

Complaint in the Florida Lawsuit.

4.    Attached hereto as Exhibit "B" is a true and correct copy of Plaintiff's June 10, 2019

Motion for Sanctions Against Herring for Spoliation of Evidence and Discovery Abuse that was

filed in the Florida Lawsuit.

5.      Attached hereto as Exhibit "C" is a true and correct copy of the District Court's September 20, 2019 Order Granting Plaintiff's Motion for Sanctions for Spoliation of Evidence and Discovery Abuse that was filed in the Florida Lawsuit.

6.      Attached hereto as Exhibit "D" is a true and correct copy of the District Court's December 16, 2019 Order of Final Default Judgment and Permanent Injunction Against Both Defendants that was filed in the Florida Lawsuit.

7.      Attached hereto as Exhibit "E" is a true and correct copy of the docket sheet (accessed through Pacer.gov) in the Florida Lawsuit.

        I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 8, 2020          _____
                                          Daniel DeSouza

EXHIBIT "A"

# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 9:18-cv-80994

NITV FEDERAL SERVICES, LLC,

      Plaintiff,

v.

DEKTOR CORPORATION and ARTHUR
HERRING, III,

      Defendants.

---

## COMPLAINT

Plaintiff NITV Federal Services, LLC ("Plaintiff") sues defendants Dektor Corporation ("Dektor") and Arthur Herring, III ("Herring") (collectively, the "Defendants"), and alleges as follows:

## THE PARTIES

1.      Plaintiff is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business located in Palm Beach County, Florida. All members of Plaintiff are individuals who are citizens of Florida and no other State.

2.      Dektor is a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business located at 400 E. Station Ave., #225, Coopersburg, PA 18036.

3.      Herring is an individual who is a citizen of the State of Pennsylvania. Upon information and belief, Herring resides at 26 Chancery Court, Souderton, PA 18964.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over Plaintiff's claims arising under the

Lanham Act pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(a).

5.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different States.

6.      This Court has jurisdiction over Defendants because they have maintained sufficient minimum contacts with Florida such that the exercise of personal jurisdiction over them would not offend traditional notions of fair play and substantial justice. Further, as set forth herein, Defendants purposefully directed their disparaging statements to the State of Florida by making false statements about Plaintiff, a company they know to be located in Florida. The effects of these disparaging remarks were clearly felt in the State of Florida, where Plaintiff suffered loss of goodwill, harm to its reputation, and pecuniary loss.

7.      Venue properly lies in this district because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## FACTS

### I.      Plaintiff's Business and History

8.      Plaintiff is the manufacturer and sole source for the patented Computer Voice Stress Analyzer® II (the "CVSA"), the most widely used truth verification tool in the United States law enforcement community. The CVSA has been assisting law enforcement around the world in solving crimes and screening potential candidates for 25 years and has largely replaced the old polygraph in the United States.

9.      Plaintiff has been offering training in voice stress analysis since 1980 and is recognized throughout the world as the leader in the field of voice stress analysis.

2

10.     Plaintiff's founder, Charles Humble, is considered by many to be the 'father' of modern voice stress analysis technology.

11.     Plaintiff is the only company in the world to be awarded three patents in forensic voice stress analysis/voice related technologies.

12.     Unlike a polygraph, the subject of computer voice stress analysis is not "wired to" an instrument when undergoing an examination. Only a microphone is used, which is plugged into the computer to analyze the subject's responses. As the subject speaks, a voice pattern is displayed and numbered, and saved to a chart to file.

13.     Drugs or medical problems do not affect the results of the examination, and there are really no "counter measures" that could cause an inconclusive result such as those that occur with a polygraph.

14.     The computer voice stress analyzer notes the frequency changes in the subject's voice and "identifies" the vocal stress related to the specific facts under investigation. The computer processes the voice frequencies and displays a graph "picture" of them.

15.     There is no need for strictly "yes" or "no" answers, and the computer process can "follow" unstructured conversation, recorded conversations, and live telephone conversations.

16.     Micro tremors are tiny frequency modulations in the human voice and, when a subject is lying, the automatic or involuntary nervous system causes inaudible changes in those micro tremor frequencies. The computer voice stress analyzer detects, measures, quantifies and displays those changes in a graph format that can be evaluated and quantified for stress.

17.     The technology is digitized and incorporated into a multi-functional notebook computer that is easily carried and that also has facsimile and e-mail capability for the sending of charts for cold call review by other examiners.

3

18.    The CVSA is used by approximately 2,000 local, state, federal, and international law enforcement agencies, including approximately 175 agencies within the State of Florida and approximately 13 federal government agencies.

**II.    The Original "Dektor" – Dektor Counterintelligence and Security, Inc.**

19.    In 1972, Allan D. Bell, Jr., Wilson H. Ford, and Charles R. McQuiston – the three principals of Dektor Counterintelligence and Security, Inc. –patented an invention which would become known and sold as the "Psychological Stress Evaluator" (the "PSE").

20.    Originally named the "Physiological Response Analysis Method and Apparatus," Dektor Counterintelligence and Security, Inc.'s invention used a method called the McQuiston-Ford algorithm, which detects microtremors which typically fall into the range of 8 to 12 Hz in an individual who is not experiencing stress or being deceptive. These FM frequencies are not audible to the naked human ear and can only be captured through this method. The algorithm simply computes a sequence and converts it into patterns or charts. As a person is being deceptive, the stress they feel causes variations in the frequency modulation, which shows a flattening effect on the graphic display or chart. This allows trained examiners to read the charts in relation to questions that caused this flattening event and correlate it to a stressor.

21.    Dektor Counterintelligence and Security, Inc.'s voice stress analyzer was ground-breaking at the time, but the product has since disappeared from the market after the company went out of business in the late 1990's.

**III.    Defendants and Their Business**

22.    Dektor was formed as a Pennsylvania corporation in 1999.  Herring is Dektor's President and, upon information and belief, sole shareholder.

23.    Dektor is not a successor-in-interest or otherwise connected in any way to Dektor

4

Counterintelligence and Security, Inc.

24.    Defendants did not purchase or otherwise receive any of Dektor Counterintelligence and Security, Inc.'s intellectual property or assets – rather, as set forth herein, they simply appropriated the "Dektor" name, reverse engineered Dektor Counterintelligence and Security, Inc.'s product, and then began selling their own "PSE" voice stress analyzer while capitalizing on the name and storied history of Dektor Counterintelligence and Security, Inc.

25.    Defendants' attempt to capitalize on the "Dektor" name and history is evident through a review of Dektor's website (http://www.dektorpse.com/) which contains numerous misrepresentations attempting to draw a link between the two companies:

> PSE® stands for Psychological Stress Evaluator®. ***Since 1969***, all PSE® models ( PSE 7010, PSE 5128, PSE 4202, PSE 2000, PSE Dek, PSE 101, PSE 1) detect, measure, and graphically display the degree of presence or absence of inaudible body tremors known as micro-muscle tremors.[1]

> Thousands of various PSE models have been sold worldwide ***for 45 years***.[2]

> ***For 50 years***, PSE® has been known worldwide because PSE® constantly proves it is the most superior system for truth verification. Only the Dektor system has proven it is the real technology for Voice Stress Analysis™.[3]

26.    Today, Dektor markets and sells the "PSE-7010," a software-based voice stress analyzer in direct competition with Plaintiff's CVSA.

27.    According to Dektor's website, "[t]housands of various PSE models have been sold worldwide for 45 years" and PSE's are used by law enforcement agencies, Fortune 500 companies,

---

[1]    Available at http://www.dektorpse.com/information/pse/ (emphasis added).

[2]    Available at http://www.dektorpse.com/information/pse/ (emphasis added).

[3]    Available at http://www.dektorpse.com/products/ (emphasis added).

security companies, military, and others.

28.    In short, Dektor markets its PSE product to the same law enforcement agencies, military agencies, private corporations, and other entities/agencies that Plaintiff markets and sells its CVSA product to.

## IV.    Defendants' Disparagement of and Interference with Plaintiff's Business

29.    Defendants are engaged in a public campaign to smear Plaintiff's name and CVSA product in an effort to unfairly gain a competitive advantage in the marketplace.

30.    Herring himself is no stranger to the legal system or the consequences associated with publicly spreading lies when he does not get his way.  Indeed, in 2012, Herring was convicted of harassment in Pennsylvania County Court after handing out pamphlets accusing a college professor at Lehigh University of being a conman, protesting outside the professor's office, and demanding compensation from the university's President in exchange for stopping the harassment.

31.    After Herring's conviction was upheld, he was quoted in the courthouse hallway as stating: "I think the judge is (expletive) up…. They don't know a thing about free speech."

32.    Herring, unfortunately, has not learned his lesson and has turned his focus to harassing, defaming, and disparaging Plaintiff and its products in an effort to capture a piece of the voice stress analyzer market that Plaintiff dominates.

33.    Defendants' campaign of harassment has taken a multi-faceted approach – Defendants have used Dektor's website (which contains 28 pages of defamatory material concerning Plaintiff and its founder), e-mails to law enforcement agencies, telephone calls, and professional speaking engagements to spread numerous and material lies about Plaintiff and its CVSA product.

34.    For example, on March 18, 2014, Herring was a speaker at the Texas Polygraph

6

Summit which was hosted by the Texas Department of Licensing and Regulation. During his speech, Herring publicly berated Plaintiff and its CVSA product as being scams that were proven to be unreliable (no more reliable than a coin toss or 50% accuracy). Of course, Herring touted his PSE product and its storied (albeit false) history dating back some 50 years.

35.    Subsequent thereto, Herring has contacted (telephonically and/or via e-mail) dozens (if not hundreds) of law enforcement agencies across the country in an effort to discredit Plaintiff and its CVSA product. In these communications, Herring refers to CVSA as a "scam," states that CVSA has been proven to be unreliable (no more than 50% accuracy), states that Plaintiff only sells to law enforcement because Plaintiff knows such agencies will not sue Plaintiff for selling an unreliable product as doing so would reopen cases on which CVSA was used, states that Plaintiff's founder obtained a "store bought" diploma, and conveys various other false and disparaging information (falsely represented by Herring as 'facts') concerning Plaintiff and its CVSA product.

36.    As just one example of this multitude of communications, on July 22, 2018, Herring (using e-mail address admin@dektorpse.com) e-mailed a detective with the Garfield County Sheriff's Office in Glenwood Springs, CO with the subject line "lie detection scam."

37.    Herring's e-mail was unsolicited (as the Garfield County Sheriff's Office uses Plaintiff's CVSA product) and contains numerous paragraphs of lies and disparaging material concerning Plaintiff and its CVSA product.

38.    While the e-mail spreads numerous falsehoods about Plaintiff's product, it touts the reliability and "proven superiority" of Dektor's PSE product in an effort to solicit business from the Garfield County Sheriff's Office.

39.    Herring's July 22, 2018 e-mail to the Garfield County Sheriff's Office is just one

7

of dozens (if not hundreds) of similar e-mails to US law enforcement agencies that Herring has sent in 2018 alone. Each of these e-mails refers to Plaintiff and its CVSA product as scams, falsely accuses the CVSA product of not being more than 50% reliable, and contains numerous other material falsehoods about Plaintiff and its CVSA product.

40.    As yet another example, on July 25, 2018, Herring sent substantially the same e-mail (with "voice lie detector scam" as the subject line) to the Executive Director of the Missouri Police Chiefs Association (which represents over 600 members in the State of Missouri). The Executive Director then forwarded Herring's e-mail to the organization's membership, meaning that with one e-mail Herring essentially spread his falsehoods and disparaging remarks throughout the entire State.

41.    In May 2018, Defendants contacted the organizers of the Dallas Crimes Against Children's conference (at which Plaintiff was scheduled to speak). That conference is scheduled to take place August 13 – 16, 2018.

42.    Defendants contacted the organizers of the conference with the specific intent to interfere with Plaintiff's contract and participation at the conference. To accomplish this goal, Defendants made numerous false statements of fact to the conference organizers about Plaintiff, Plaintiff's employees (such as making false statements that an employee scheduled to speak at the conference had been dishonorably fired from his prior position as a sex crimes investigator when in reality he actually retired), and Plaintiff's CVSA product (the same factual allegations as described above with respect to Defendant's e-mails and other communications).

43.    Plaintiff was a speaker at the 2017 Dallas Crimes Against Children's conference and gained substantial business/sales as a result of that speaking engagement. For the 2018 conference, Plaintiff had invested substantial sums to be a presenter, and had a signed contract in

8

place (paid in full) to again speak at the conference.

44.    As a result of Defendants' false and disparaging comments, Plaintiff was uninvited/barred from presenting at the 2018 conference (notwithstanding Plaintiff's paid contract with the organizers) and therefore suffered a tremendous loss of goodwill/reputation in addition to lost sales associated therewith.

45.    As discussed above, Herring boasts that Dektor's website contains approximately 28 pages of negative information about Plaintiff and its CVSA product which 'prove' them to be ineffective scams.

46.    True to his word, Dektor's website does contain an entire section (available at http://www.dektorpse.com/information/cvsa/) specifically dedicated to Plaintiff and the CVSA (with the section stating that it was last updated in June 2018).

47.    As with Herring's e-mails, telephone calls, and in-person communications, the Dektor website contains numerous false allegations of fact about Plaintiff and its CVSA product.

48.    Notably, before Herring begins his 28-page diatribe, he endeavors to equate Plaintiff and its CVSA product with Joseph Goebbels, the Reich Minister of Propaganda of Nazi Germany from 1933 to 1945:

CVSA

"The bigger the lies, the more people will tend to believe them"
"The more you tell those lies, the more people will tend to believe them."
Joseph Goebbels, Hitler's propaganda minister

49.    One of the false statements of fact on Dektor's website which relate specifically to Plaintiff and its CVSA product is: "NITV has claimed CVSA is 97% accurate. But, CVSA has never shown any studies that prove it is better than a coin toss in real crimes." (available at

http://www.dektorpse.com/information/imitations/).

50.    This statement is absolutely false as a 2012 peer reviewed published study (which Defendants are well aware of) of the CVSA showed its error rate to be less than 1%, thus exceeding the 97% accuracy rate claimed by Plaintiff.

51.    The Dektor website further states that "CVSA is about $13,000 per device." (available at http://www.dektorpse.com/information/imitations/).

52.    This statement is false as the price of the CVSA is less than $9,000.00 and has been at that price point for a number of years.

53.    With respect to Plaintiff's founder, the Dektor website states: "Its 'promoter/owner' gave himself the unearned (fake) title of 'Dr' (PhD). The fact was, the title was based on a 'mail order' type of certificate that the promotor bought from a store located near his original NITV office in Indiana. That same type of unearned educational 'diploma' anyone can buy from the internet today for about $100. Most people would call that type of store a 'diploma mill', a business that sells unearned educational degrees only for money." (available at http://www.dektorpse.com/information/cvsa/).

54.    This statement is false.  Plaintiff's founder (Charles Humble) was bestowed an Honorary Doctorate from Indiana Christian University in 1987.  It was one of only five that were granted within the previous five years.  The others were for commencement speakers.  Indiana Christian University has never been listed on any site or accused of being a diploma mill (other than by Defendants).

55.    The Dektor website further states that: "The seller of CVSA having a earned educational title of "Dr" (PhD.) would be the first, of many lies, that would be revealed by the news media and the courts in the many years ahead." (available at

10

http://www.dektorpse.com/information/cvsa/).

56.    This statement is false as neither Plaintiff nor Charles Humble has ever claimed that the honorary degree was an "academic" degree. Indeed, Charles Humble's personal website (available at http://www.charleshumble.com/background/) specifically explains that the degree is honorary.

57.    The Dektor website further states that: "By 2018, after 25 years of being marketed to almost anyone as a "new" type of "computer voice stress" lie detector, CVSA and NITV training have been shown to be just an expensive prop by law enforcement types because of NITV's many untruths and gross exaggerations. This conclusion is based according to many law enforcement types contacted through the years who bought the CVSA...." (available at http://www.dektorpse.com/information/cvsa/). This passage was recently updated by Defendants as it previously contended that CVSA was considered an expensive prop "according to almost all law enforcement types who bought it."

58.    This statement is false as nearly 2,000 law enforcement agencies worldwide are utilizing the CVSA system, including approximately 175 agencies in Florida alone.

59.    The Dektor website further states that: "CVSA, its training and chart analysis techniques have not shown proven reliable accuracy better than about 50% in studies and real crimes." (available at http://www.dektorpse.com/information/cvsa/).

60.    This statement is false.  As explained above, a 2012 peer-reviewed and published study of the CVSA showed its error rate to be less than 1%.  Further, a 2007 U.S. Department of Defense survey of law enforcement users of the CVSA found that approximately 86% of the respondents indicated they thought the CVSA was either "very" or "extremely" effective in detecting stress.

11

61.    The Dektor website further states: "It has appeared through the years that none of the CVSA buyers had ever asked for a study that proved any CVSA accuracy BEFORE they wasted taxpayer's money and ruined criminal cases using the CVSA gadget. The law enforcement department, their detectives and the city themselves would certainly be sued when the public becomes aware their law enforcement department wasted the taxpayer's money on such expensive gadgets, useless training and wasteful 'recertification fees'. Lawsuits would also be brought against prisons, college campus police, district attorney's, probation departments and the federal government who bought the CVSA and training. Add to them ALL the people who ever took the CVSA tests who would claim they were innocent of their charge and they also would sue the law enforcement department, city, mayor, city council, etc. Hundreds of thousands of convicted criminals nationwide would be filing lawsuits because they would claim they were falsely accused because they 'flunked' those very unreliable CVSA tests. Minorities would sue either for their conviction or because they had no choice except to make a plea deal because they had flunked a CVSA test. Add to those costs in the lawsuits the huge amount of lawyer fees for each case against the law enforcement department, city, mayor, etc. Plus, the costs to the falsely accused of their lost wages because they went to jail and lost their jobs, loss of time with their families if they went to jail and more. On top of THOSE costs, the fact individuals of the law enforcement department would have judgements against themselves because they were careless and reckless for buying and using the CVSA without checking it out for accuracy BEFORE they used it on people.  NITV knew any non-law enforcement buyer (PI'S, etc) WOULD sue NITV if they bought a CVSA and training then they had discovered they had been lied to about the CVSA/training credibility, wasted their money and had been cheated." (available at http://www.dektorpse.com/information/cvsa/).

12

62.     This statement is false. There is no mass series of lawsuits against Plaintiff and/or law enforcement agencies in connection with unreliable results.  Indeed, in March 2014, Northern District of New York Chief Judge Norman A. Mordue ruled that sex offenders can be required to submit to CVSA examinations as part of their post-release supervision because CVSA is analogous to polygraph examinations, which have been accepted by the 2nd U.S. Circuit Court of Appeals as a way to monitor the activities of those under post-release supervision.

63.     The Dektor website further states: "At least one police officer had been wrongly fired because he flunked a CVSA test, but it was later shown he was truthful." (available at http://www.dektorpse.com/information/cvsa/).

64.     This statement is false.  Plaintiff is unaware of any such scenario occurring and Defendants have never provided any actual facts or names in support of their contention.

65.     The Dektor website further states: "NITV "ideas" used in training, such as numeric scoring, DSR (Delayed Stress Response), cold calling, kinesics, F.A.C.T. and DBR (Defense Barrier Removal) have never been shown to have any real substance or credibility. Those ideas were invented by the NITV promoter /owner as part of his hype to sell his gadgets and to create the image he is some type of proven expert in lie detection." (available at http://www.dektorpse.com/information/cvsa/).

66.     This statement (and those that follow it which purport to explain why these methodologies are useless) is false.  Neither Herring nor any of his agents/employees have ever attended Plaintiff's training courses or have any actual information concerning Plaintiff's training techniques.  These techniques are both credible and effective and the reason why hundreds of law enforcement agencies and personnel attend Plaintiff's training courses on an annual basis.

13

67.    The Dektor website further states: "We have heard from many ex-CVSA examiners who have told us that they simply guessed on the final answer to a test because the NITV training ideas did not give them reliability and accuracy on lie detection tests. Dektor has heard from CVSA examiners that the software used for CVSA has serious flaws that cause the program to crash or freeze. The software program appears to be extremely basic as what the CVSA examiner can do using it." (available at http://www.dektorpse.com/information/cvsa/).

68.    This statement is false as Defendants have not "heard from" any current or former CVSA examiners with respect to this subject matter – plainly stated, Defendants are making up allegations with no basis in fact.   There are no "serious flaws" with CVSA's software and guessing on the final exam will result in failure.

69.    The Dektor website further states: "In 2007, a very large study, using real crimes and NITV instructors found an accuracy rate of only about chance level. That same study found VERY serious design flaws with the CVSA design that will produce flawed patterns, thus incorrect results." (available at http://www.dektorpse.com/information/cvsa/).

70.    This statement is false and appears to be completely fabricated by Defendants.

71.    The Dektor website further states: "On page 69, of the NITV training manual, it states that recently it was learned that if a person taking a CVSA test holds the microphone, it could cause static electricity and that could cause a distortion of CVSA patterns. Those same patterns are used to decide if a person is innocent or guilty. NITV has always told the person to hold the microphone since 1990. How many thousands of times did that problem happen and ruin a test, BUT nobody knew it? How many innocent people were falsely accused? How many GUILTY people were let go to commit more crimes (rape, murder, robbery, etc) because law enforcement        thought        they        were        innocent?"        (available        at

14

http://www.dektorpse.com/information/cvsa/).

72.    This statement (that Plaintiff tells the person to hold the microphone) is false. Plaintiff has never taught anyone to hold the microphone during an examination. Plaintiff has always taught examiners to utilize a clip-on microphone, which is provided with all the CVSA systems when they are sold.

73.    The Dektor website further states: "The facts indicate that the 'recertifications', according to former users and NITV's own CVSA association, are only 'bullshit' type classes of 3 days of the same things that were taught in the original course."    (available at http://www.dektorpse.com/information/cvsa/).

74.    This statement is false and inflammatory.  The recertification courses offered by Plaintiff (of which Herring or any of his agents/employees have never attended) ensure CVSA examiners are kept up to date on CVSA developments, allow CVSA examiners to receive free software upgrades, and reinforce the correct use of CVSA protocols.  Again, Defendants did not actually receive information from "former users and NITV's own CVSA association" — they simply made these statements up for purposes of the Dektor website.

75.    The Dektor website further states: "In fact, the person at SoCom (Special Operations Command) in the DoD who approved almost $700,000 to buy the CVSA devices pled guilty in 2006 to taking a bribe." (available at http://www.dektorpse.com/information/cvsa/).

76.    This statement is akin to Defendants' attempt to link Plaintiff with Joseph Goebbels and/or the Nazi party.  Here, Defendants are indirectly suggesting that Plaintiff bribed a government agent for use of its CVSA product — that allegation, of course, is completely false as any conviction (if one exists) certainly did not involve a bribe from Plaintiff (as none exists).

77.    The Dektor website further states: "NITV has sued at least one business selling a

15

imitation claiming the other imitation "stole" their machine and training from NITV. There seems to be no honor among thieves." (available at http://www.dektorpse.com/information/cvsa/).

78.    This statement is indicative of other statements throughout the Dektor website which accuse Plaintiff of 'stealing' Dektor Counterintelligence and Security, Inc.'s intellectual property.  This accusation is false and somewhat ironic given that Defendants misappropriated the 'Dektor' name, reverse engineered its PSE product, and have improperly capitalized on the 'Dektor' name for nearly 20 years.

79.    The Dektor website further states: "In late 2006, NITV began to advertise in insurance magazines with full page ads. It appears they were trying to make up for the drastic drop in CVSA sales to law enforcement. NITV tried to get insurance companies to buy CVSA and use it as a over-the-phone lie detector for insurance fraud. If they did so, millions of real claims would be denied because of the poor accuracy caused by unreliable CVSA technology and unreliable NITV training. Dektor contacted the magazine and educated them about NITV. Soon, NITV was banned from advertising in those insurance magazines." (available at http://www.dektorpse.com/information/cvsa/).

80.    This statement is false.  Plaintiff did not experience any drop in sales to law enforcement and was never banned from advertising in insurance magazines.

81.    These are just some of the dozens of defamatory and disparaging remarks about Plaintiff and its CVSA product that are prevalent throughout the Dektor website.

82.    Defendants' false statements (which they know to be untrue or which were made with reckless disregard for their truth) are incredibly damaging to Plaintiff's reputation and goodwill.

83.    Such statements (whether made in-person, via e-mail, via telephone, or through

16

Dektor's website) have caused and will cause Plaintiff to lose sales of CVSA product and certification courses.

84.    With respect to just one licensing board in the State of Texas, Plaintiff invested approximately $200,000.00 in connection with having its CVSA product approved.  As a direct and proximate result of Defendants' false and disparaging statements to that licensing board, Plaintiff was not approved and therefore lost not only its $200,000.00 investment, but also millions of dollars in sales.

85.    Plaintiff's actual damages – when factoring in the sheer number of law enforcement agencies that Defendants have directly contacted and/or which have reviewed the extensive false information on Defendants' website – are estimated to exceed $7 million.

86.    Upon information and belief, Defendants have steered hundreds of thousands of dollars of law enforcement business away from Plaintiff's CVSA product to their 'PSE' product based solely on the lies spread by Defendants with respect to Plaintiff, Plaintiff's CVSA product, and Defendants' supposed link to Dektor Counterintelligence and Security, Inc.

87.    All conditions precedent to this action have been performed or have been waived.

## COUNT I – FALSE ADVERTISING, UNFAIR COMPETITION, AND PRODUCT DISPARAGEMENT UNDER THE LANHAM ACT

88.    Plaintiff re-alleges and incorporates paragraphs 1 through 87 as set forth above.

89.    Defendants' publication of false and disparaging statements about Plaintiff and its CVSA product constitutes product disparagement, unfair competition, false advertising, and false description under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

90.    Defendants' publication of false statements purporting to link themselves to Dektor Counterintelligence and Security, Inc. and its PSE product likewise constitute false advertising and false description under the Lanham Act.

17

91.    Defendants made the above-referenced false statements of fact in commercial promotion of their own PSE product, in direct competition with Plaintiff's product, and in an effort to drive sales away from Plaintiff and toward Defendants.

92.    The above-referenced statements are literally false.

93.    The above-referenced statements actually deceived or had the tendency to deceive a substantial segment of the law enforcement, government agencies, and other prospective purchasers of CVSA's products.

94.    Defendants' deception is material in that it is likely to influence purchasing decision.  Specifically, consumers of Plaintiff's products have been deceived to believe that the products are no more effective than a coin toss, that some vast conspiracy exists amongst law enforcement to mask this ineffectiveness, that Plaintiff's founder purchased his honorary doctorate from a diploma mill, that Plaintiff somehow stole Dektor Counterintelligence and Security, Inc.'s intellectual property (when it was Defendants who have done precisely that), and various other lies as described more fully above.

95.    Defendants caused these false statements to enter interstate commerce by sending dozens (if not hundreds) of e-mails to various law enforcement agencies and by posting a 'manifesto' of lies on the Dektor website which is visible to consumers throughout the United States and worldwide.

96.    Defendants are competitors of Plaintiff in that they market and sell a voice stress analyzer (the PSE) to the same law enforcement and other agencies that Plaintiff markets and sells its own voice stress analyzer (the CVSA).

97.    In an industry in which reputation, word of mouth, and online advertising are critical to the success of a given company (as evidenced by Dektor Counterintelligence and

18

Security, Inc.'s cessation of business notwithstanding ownership of a good/functional product), false statements such as those by Defendants are highly detrimental to Plaintiff's reputation, goodwill, and sales.

98.    As a direct and proximate result of Defendants' conduct, Plaintiff has sustained substantial damages (both direct in the form of lost sales and indirect in the form of loss of goodwill/reputation), the full amount of which will be established at trial of this matter.

99.    Defendants' false statements have caused, and will continue to cause, irreparable harm to Plaintiffs unless Defendants are enjoined by the Court.

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory damages, treble damages pursuant to 15 U.S.C. § 1117, an award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117, preliminary and permanent injunction relief, and such other relief as the Court deems just and proper.

## COUNT TWO: DECEPTIVE AND UNFAIR TRADE PRACTICES

100.    Plaintiff re-alleges and incorporates paragraphs 1 through 87 as set forth above.

101.    The foregoing conduct constitutes a violation of the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA"), Florida Statutes, § 501.201 et seq.

102.    Defendants' campaign of spreading false and disparaging statements about Plaintiff, Plaintiff's CVSA product, and Defendants' own link to Dektor Counterintelligence and Security, Inc. constitutes a "deceptive act or practice" in the conduct of trade/commerce (specifically the sale of voice stress analyzer products in Florida, throughout the United States, and worldwide).

103.    As a direct and proximate result of Defendants' deceptive act or practice, Plaintiff suffered substantial damages, including but not limited to lost profits from consumers who were

19

steered away from purchasing Plaintiff's CVSA product and/or purchased Defendants' PSE product as a result of Defendants' lies. These damages far exceed this Court's $75,000.00 threshold for diversity jurisdiction as they are estimated to exceed $10 million.

104. Defendants' conduct is willful in that they actively misrepresent their history to consumers and knowingly make false statements concerning Plaintiff and its products in an effort to mislead consumers and unfairly drive business away from Plaintiff and toward Defendants.

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory damages, punitive damages, preliminary and permanent injunctive relief, an award of costs and reasonable attorneys' fees pursuant to Fla. Stat. § 501.2105, and such other relief as the Court deems just and proper.

## COUNT THREE: DEFAMATION/BUSINESS DISPARAGEMENT

105. Plaintiff re-alleges and incorporates paragraphs 1 through 87 as set forth above.

106. As set forth more fully above, Defendants have made numerous defamatory and disparaging statements about Plaintiff and Plaintiff's CVSA product to dozens (if not hundreds) of law enforcement agencies and other consumers of Plaintiff's products and services.

107. Defendants' statements were false when made.

108. Defendants knew the aforementioned statements were false at the time they were made.

109. As a direct and proximate result of Defendants' actions, Plaintiff suffered substantial damages, including but not limited to lost profits from consumers who were steered away from purchasing Plaintiff's CVSA product and/or purchased Defendants' PSE product as a result of Defendants' lies. These damages far exceed this Court's $75,000.00 threshold for diversity jurisdiction as they are estimated to exceed $10 million.

20

110.    In conducting such acts, Defendants acted with malice or disregard for Plaintiff's rights; therefore, Plaintiff is entitled to punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory damages, punitive damages, preliminary and permanent injunctive relief, an award of costs, and such other relief as the Court deems just and proper.

## COUNT FOUR: TORTIOUS INTERFERENCE

111.    Plaintiff re-alleges and incorporates paragraphs 1 through 87 as set forth above.

112.    Plaintiff had an existing contractual relationship with law enforcement and other agencies for the sale of its CVSA product and/or provision of training/certification courses. Alternatively, Plaintiff had a prospective business relationship with specifically identifiable law enforcement and other agencies to which Plaintiff would have completed sales but for Defendants' conduct as alleged herein.

113.    Defendants had actual knowledge of Plaintiff's contractual relationships and/or prospective business relationships (as evidenced by Defendant's e-mails and in-person communications specifically attempting to dissuade known CVSA users from using Plaintiff's product and steer them toward Defendants' PSE product).

114.    Defendants intentionally and unjustifiably interfered with Plaintiff's business relationships by making the false and defamatory statements described more fully above.

115.    As a direct and proximate result of Defendants' actions, Plaintiff suffered substantial damages, including but not limited to lost profits from consumers who were steered away from purchasing Plaintiff's CVSA product and/or purchased Defendants' PSE product as a result of Defendants' lies. These damages far exceed this Court's $75,000.00 threshold for diversity jurisdiction as they are estimated to exceed $10 million.

21

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory damages, punitive damages, preliminary and permanent injunctive relief, costs, and such other relief as the Court deems just and proper.

## Demand For Jury Trial

Plaintiff demands a trial by jury on all issued so triable.

Dated: July 27, 2018.

ADVISOR LAW, PLLC
2855 PGA Boulevard
Palm Beach Gardens, FL 33410
Telephone:  (561) 622-7788
jdloughy@advisorlaw.com

By: /s/ James D'Loughy, Esq._____
        James D'Loughy, Esq.
        Florida Bar No.:  0052700

DESOUZA LAW, P.A.
101 NE Third Avenue
Suite 1500
Fort Lauderdale, FL 33301
Telephone:  (954) 603-1340
DDesouza@desouzalaw.com

By: /s/ Daniel DeSouza, Esq._____
        Daniel DeSouza, Esq.
        Florida Bar No.:  19291

4841-1795-7485, v. 1

EXHIBIT "B"

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 9:18-cv-80994-DLB

NITV FEDERAL SERVICES, LLC,

      Plaintiff,

v.

DEKTOR CORPORATION and ARTHUR
HERRING, III,

      Defendants.

_____

## PLAINTIFF'S MOTION FOR SANCTIONS AGAINST HERRING FOR SPOLIATION OF EVIDENCE AND DISCOVERY ABUSE

Plaintiff NITV Federal Services, LLC ("Plaintiff"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 37(b)(2)(A), hereby moves for entry of an Order sanctioning defendant Arthur Herring, III ("Herring") as a result of the discovery misconduct described herein, and states as follows:

### INTRODUCTION

This Motion seeks to impose the harshest of discovery sanctions – the striking of pleadings and imposition of a default against Herring – as a result of Herring's total disregard for and deliberate attempts to avoid his obligations under the Federal Rules of Civil Procedure and multiple Orders from this Court. It is the rare occasion that such sanctions are appropriate, but Herring went above and beyond in earning the honor. As set forth below, Herring's conduct includes the creation of a secret e-mail account for the specific purpose of avoiding production in this lawsuit, the commission of *perjury* in a deposition to avoid identifying this secret e-mail account, the installation of permanent file deletion software the day after he was scheduled to be

deposed on issues such as file retention, the attempted deletion of thousands of relevant documents during the pendency of this lawsuit, and the willful destruction and 'wiping clean' of a hard drive containing years of highly relevant documents.

Herring's conduct is a textbook example of the type of "willfulness" and "bad faith" necessary to impose the harsh sanction of default. Indeed, it is difficult to imagine a collection of worse conduct than Herring has engaged in here. Herring has done everything he can to avoid fairly participating in this litigation and to stymie Plaintiff's efforts to pursue its claims. The Court should recognize Herring's behavior for what it is and sanction him accordingly.

## BACKGROUND

1.      On July 27, 2018, Plaintiff filed its Complaint in this action against Herring and co-defendant Dektor Corporation ("Dektor") (collectively, the "Defendants"). The Complaint contains four causes of action against Defendants: (1) False Advertising, Unfair Competition, and Product Disparagement Under the Lanham Act; (2) Deceptive and Unfair Trade Practices; (3) Defamation/Business Disparagement; and (4) Tortious Interference. All claims are asserted against both Defendants.

2.      As the Court is well aware, Defendants' discovery misconduct throughout this lawsuit has resulted in substantial delays and caused Plaintiff to incur substantial expense in pursuing and obtaining relief from the Court requiring the Defendants to comply with their obligations under the Federal Rules of Civil Procedure. A brief background of these discovery issues is discussed below.

3.      On October 22, 2018, Plaintiff filed a Motion to Compel Defendants' Depositions and for Sanctions [D.E. 32]. At the time, Plaintiff was attempting to engage in jurisdictional discovery relevant to Defendants' then-pending motion to dismiss for lack of personal jurisdiction.

2

Defendants' written discovery responses had raised the specter of a 'computer virus' that conveniently erased years of e-mail and other data from their primary laptop hard drive, and Plaintiff had arranged to take a deposition of Defendants on October 17, 2018 to inquire into those subjects. Defendants did not appear for that deposition (or a subsequently scheduled deposition), and Plaintiff was forced to file the aforementioned motion to compel.

4.      While Herring claimed that he was "sick" and therefore could not attend the October 17, 2018 deposition, the truth is far more sinister. As discussed in detail below, Plaintiff recently learned from the forensic review of Defendants' *current* (non-damaged) hard drive that Herring installed a program called "File Shredder" thereon on October 18, 2018 – the day the aforementioned deposition was scheduled to occur. Hours later on the same date, Herring sent an e-mail to Matt Vanderhoff (an IT professional who has done extensive computer/internet work for Herring over the preceding years) thanking Mr. Vanderhoff "for the computer work." While it is unclear precisely what Herring permanently deleted or what "computer work" was done by Mr. Vanderhoff, Herring's behavior throughout this litigation strongly suggests that the pair were not doing routine maintenance on Herring's computer.

5.      On October 24, 2018 (six days after installing "File Shredder"), Herring ultimately did appear for his telephonic deposition and, as a result, the Court entered a Paperless Order denying Plaintiff's motion to compel the deposition and for sanctions. See D.E. 38.

6.      During the October 24, 2018 deposition, Herring conceded that, *after* the supposed hard drive crash, he sent multiple e-mails that were responsive to Plaintiff's document requests yet never produced in this lawsuit. Further, Herring boasted that he had (within a week or two of the deposition) sent between 150 and 1,100 e-mails to news agencies/reporters across the country containing a 'press release' which disparages Plaintiff.

3

7.       As a result of this and other conduct during the deposition, on October 30, 2018, Plaintiff was forced to file a Motion to Compel Deposition Testimony, Production of Documents, and Forensic Examination [D.E. 39].

8.       On January 7, 2019 (following withdrawal of Defendants' original counsel and appearance of new counsel), the Court entered an *agreed* Order on Plaintiff's Motion to Compel [D.E. 55] which required Defendants to produce responsive documents to Plaintiff's two document requests within twenty days from the Order and also authorized (subject to agreement on protocols) a forensic examination of Defendants' purportedly damaged former and currently working hard drives/e-mail accounts.

9.       On February 8, 2019, the Court entered its Order on Forensic Analysis Protocols [D.E. 65] which set forth the parties' agreed protocols for collection and review of Defendants' hard drives/documents.

10.       Although Defendants agreed to the forensic review protocols, they attempted to delay the process by later objecting to the 'damaged' hard drive leaving Mr. Vanderhoff's business premises in Pennsylvania (notwithstanding that Mr. Vanderhoff does not have a 'clean room' necessary for a forensic analysis to occur).  On February 21, 2019, the Court was forced to enter yet another Paperless Order [D.E. 76] on the subject, this time directing that Plaintiff was entitled to have the analysis occur at its expert's designated 'clean room' facility in Orlando, FL with the analysis to be completed by or before March 14, 2019.

11.       On February 28, 2019 – following Defendants' refusal to turn over the supposedly damaged hard drive in further violation of the above Orders – Plaintiff filed a Motion to Compel Defendants to Produce Damaged Hard Drive Pursuant to the Court's Order [D.E. 78].  That motion

4

sought relief as Defendants asserted they would not provide the subject hard drive until they retained new counsel.

12.    On March 15, 2019 (with no response being filed by Defendants), the Court entered a Paperless Order [D.E. 86] granting the aforementioned motion to compel and requiring Defendants to "forthwith" turn over the hard drive.

13.    Following provision of that Order to Mr. Vanderhoff directly, he sent the supposedly damaged hard drive to the 'clean room' facility in Florida and also cooperated with Plaintiff's expert in transferring Defendants' current hard drive documents/e-mails to the expert for review/analysis.

14.    Subsequently, on March 26, 2019, Herring filed a Suggestion of Bankruptcy [D.E. 90] which notes that he had filed a voluntary Chapter 13 petition in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court") on March 7, 2019 – two days after Plaintiff had filed a motion for entry of default against Dektor (for failure to retain counsel) and while the motion to compel production of the 'damaged' hard drive was pending.

15.    On May 30, 2019, Dektor filed a Suggestion of Bankruptcy [D.E. 97] which notes that it had filed a voluntary Chapter 7 petition in the Bankruptcy Court on May 16, 2019.

16.    On June 4, 2019, the Bankruptcy Court entered an Order dismissing Herring's Chapter 13 bankruptcy case for cause.

17.    Although Dektor initially filed a motion to extend the time to file its bankruptcy schedules, it subsequently withdrew that motion on May 31, 2019 and indicated (through its bankruptcy counsel) that the case would not be pursued and therefore should be dismissed in relatively short order for failure to file the requisite schedules.

5

## ARGUMENT

**I.      Legal Standard**

Rule 37 permits a district court to impose sanctions on a party that "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). Such sanctions include "striking pleadings in whole or in part" or "rendering a default judgment against the disobedient party." Id. Entering a default judgment as a discovery sanction "is appropriate only as a last resort" and requires a finding of willfulness or bad faith on the part of the offending party. Malautea v. Suzuki Motor Co., Ltd., 987 F.2d 1536, 1542 (11th Cir. 1993).

**II.      Herring's Multitude of Discovery Misconduct**

As set forth below, Herring has blatantly ignored his discovery obligations, committed gross acts of spoliation/file destruction, and has otherwise done everything in his power (including the filing and pursuit of two failed bankruptcy proceedings) to delay/avoid discovery of that misconduct. Any one of these actions could justify the striking of Herring's pleadings – collectively, these actions demonstrate an absolute disdain for the legal process and a willingness to do anything to escape liability in this lawsuit.

**A.      Herring's Installation of "File Shredder" Program While Too Sick to Attend His Deposition**

As discussed above, Herring was scheduled to appear for deposition on October 17, 2018 to answer questions on various subjects, including but not limited to:

> The facts and circumstances surrounding the "hard drive crash[]
> from a computer virus" as alleged by your responses to Plaintiff's
> jurisdictional discovery requests.

> The software and hardware systems (including but not limited to the
> name and location of such systems) used by you to store e-mail and
> other electronic documents.

> Your efforts to recover e-mail and other electronic documents

responsive to Plaintiff's jurisdictional discovery requests.[1]

On the day of the deposition, undersigned counsel was contacted by Defendants' then-counsel (Robert Eckard, Esq.) who conveyed that Herring was apparently too sick to attend the scheduled deposition and thus it would need to be rescheduled.

It was later revealed through the forensic investigation of Defendants' hard drives/e-mails that Herring was not necessarily 'sick' but rather proffering an excuse to delay the deposition while he scrubbed relevant information/documents from his computer. Indeed, on October 18, 2018 (the day after the deposition was to occur) at 3:47 p.m., Herring downloaded a program named "File Shredder" from http://www.fileshredder.org/files/file_shredder_setup.exe.[2]  As described on the File Shredder website,[3] File Shredder is a desktop application "for shredding (destroying) unwanted files beyond recovery":



Three hours later on the same day (at 6:43 p.m.), Herring sent an e-mail to Mr. Vanderhoff

---

[1]     See Notice of Taking Deposition of the Corporate Representative of Dektor Corporation, dated October 15, 2018, a true and correct copy of which is attached hereto as Exhibit "A."

[2]     See Declaration of Andy Reisman, dated June 5, 2019 (the "Reisman Decl."), a true and correct copy of which is attached hereto as Exhibit "B," at ¶ 4.

[3]        See http://www.fileshredder.org/.

7

thanking him for computer work:[4]

On 10/18/2018 6:43 PM, Arthur Herring III wrote:

> Hi Matt,
>   Thanks for the computer work. Happy birthday, you are getting old.
> arthur

Although the forensic review shows the download and installation of File Shredder, it is not possible to determine what files Herring actually deleted from his computer.[5] However, given the proximity of the installation to the cancelled deposition and the other conduct described herein, it is difficult to imagine a purpose other than the willful destruction of documents relevant to the allegations in this lawsuit. Indeed, the Court need look no further than the sworn declaration of Mr. Vanderhoff himself to confirm Herring's intentions.[6] That declaration confirms (among other shocking details):

> *During the course of this lawsuit, Mr. Herring has asked me on multiple occasions about file deletion software that could be used to permanently delete files that Mr. Herring did not want NITV obtaining access to.*[7]

This, unfortunately, was just the beginning of Herring's misconduct.

### B.    Herring's Attempted Deletion of E-Mails

The forensic investigation of Herring's current/functioning hard drive also revealed that Herring *attempted to delete approximately 2,500 e-mails* that were sent between June 15, 2018

---

[4]    See Exhibit "C," a true and correct copy of an October 18, 2018 e-mail from Herring to Mr. Vanderhoff.

[5]    See Reisman Decl., at ¶ 5.

[6]    See Exhibit "D," a true and correct copy of the June 5, 2019 Declaration of Matt Vanderhoff (the "Vanderhoff Decl.").

[7]    Id. at ¶ 8.

8

and February 13, 2019 (the last date on which e-mails were collected as part of the forensic investigation).[8]  These e-mails were located in Herring's Microsoft Outlook "Trash" folder, meaning they had been moved to the folder for deletion but not yet permanently deleted from the system (apparently Herring forgot to run these e-mails through File Shredder).[9]  The substantial bulk of these e-mails were sent during the pendency of this lawsuit when Herring undoubtedly had a duty to preserve relevant documents (and had already been ordered by the Court to produce such documents to Plaintiff).

Many/most of these e-mails are highly relevant to Plaintiff's claims in this lawsuit – they are direct evidence of Herring's continued efforts to defame Plaintiff and its products to law enforcement agencies and media agencies, of Herring's conspiratorial relationship with Mr. Vanderhoff, and of Herring's attempted extortion/attempts to have criminal prosecutions brought against both NITV and undersigned counsel.[10]  Had the Court not authorized a forensic review and Herring not been grossly incompetent in actually deleting these e-mails, Plaintiff would have never received these highly relevant communications.

C.      **Herring's Use of 'Secure' E-Mail to Avoid Document Production**

The forensic review of Herring's current hard drive revealed that, in addition to deleting a tremendous amount of relevant data, Herring also created and utilized a secured/encrypted e-mail account (through https://protonmail.com) for the specific purpose of  avoiding discovery in this lawsuit.  Herring was instructed by a "Jill Olson" via e-mail on July 30, 2018 (three days after this

---

[8]       See Exhibit "E," a true and correct copy of a spreadsheet identifying all e-mails appearing in Herring's "Trash" folder within Microsoft Outlook; see also Reisman Decl., at ¶ 8.

[9]       See Reisman Decl., at ¶ 8.

[10]       True and correct copies of certain of the aforementioned e-mails found in Herring's "Trash" folder are attached hereto as Exhibit "F."

lawsuit was filed) to sign up for a secure/encrypted e-mail service "to communicate with key people."[11]   That e-mail goes on to state: "You will want to DELETE ALL OF THE EMAILS BETWEEN US once you read them as NITV lawyers will be going after your email accounts."[12]

Herring apparently took Ms. Olson's instruction to heart because, on August 18, 2018, he sent an e-mail to Mr. Vanderhoff informing him that Herring had "signed up to proton mail."[13] Thereafter, Herring forwarded himself (to his admin@dektorpse.com address) several Plaintiff-related e-mails from melody2013@protonmail.com.[14]  As acknowledged by Mr. Vanderhoff himself, it is beyond dispute that this secret e-mail account belongs to Herring – indeed, Herring was still sending e-mails to Mr. Vanderhoff from this account as recently as June 3, 2019.[15]

Again, Plaintiff only learned of this secret e-mail account through the sheer incompetence of Herring in hiding his misconduct.    If Herring had not forwarded certain of the melody2013@protonmail.com e-mails to his Dektor e-mail address, Plaintiff would have never learned of that account's existence (as it was created specifically to avoid discovery in this lawsuit). Indeed, Herring went so far as to *lie under oath* during his October 24, 2018 deposition in this case when asked to identify all e-mail addresses used by him.  During that deposition, Herring desperately attempted to avoid identifying any e-mail addresses used by him other than his admin@dektorpse.com address.[16]  Herring himself objected on relevance grounds and refused to answer questions notwithstanding instructions from his own counsel (Robert Eckard, Esq.) to

---

[11]    A true and correct copy of Jill Olson's July 30, 2018 e-mail is attached hereto as Exhibit "G."

[12]    Id. (emphasis in original).

[13]    A true and correct copy of Herring's August 18, 2018 e-mail is attached hereto as Exhibit "H."

[14]    See Vanderhoff Decl., at ¶ 7.

[15]    Id.

[16]    See Deposition Transcript of Arthur Herring, III, dated October 24, 2018 (the "Herring Tr."), a true and correct copy of which is attached hereto as Exhibit"I," at 23:16 – 32:5.

identify the other e-mail addresses.[17]    Finally, after undersigned counsel volunteered to treat

Herring's answers as confidential for 14-days to allow Herring to file a motion for protective order,

Herring relented and identified another e-mail address: Ed@Detectornews.com:

> Q. I'll ask it one more time. Mr. Herring, other than the
> Admin@DektorPSE.com email address, what other emails do you
> use?
> A. I use Ed@Detectornews.com.
> Q. Is that E-D?
> A. Yup.
> Q. At detector, D-E -- spell that.
> A. D-E-T-E-C-T-O-R-N-E-W-S.
> *Q. Are there any other email addresses that you use?*
> *A. Nope.*[18]

As highlighted above, Herring *committed perjury*[19] when denying that there were no other e-mail

addresses used by him.  As disclosed by Mr. Vanderhoff, Herring forwarded himself multiple

Plaintiff-related e-mails from the melody2013@protonmail.com address days prior to the October

24, 2018 deposition.  Herring did not 'forget' about the e-mail address – he deliberately lied in

response to a direct question in an effort to hide the existence of his secret e-mail address. Despite

his obligations under the Federal Rules of Civil Procedure and at least one Order from this Court

compelling him to produce responsive documents, Herring deliberately created a secret account

so he could participate in an unknown number of communications about Plaintiff and this lawsuit.

Herring even went so far as to lie under oath in a deposition to avoid discovery of the e-mail

account.  To this day, the only melody2013@protonmail.com e-mails that Plaintiff is aware of are

the handful that Herring forwarded to his Dektor e-mail address.  It is clear from these e-mails that

Herring sent/received many additional e-mails concerning Plaintiff that were never disclosed in

---

[17]    Id.

[18]    See Herring Tr. at 32:7 – 32:17 (emphasis added).

[19]    See 18 U.S.C. § 1621.

11

the context of this lawsuit (and were specifically purposed to never be disclosed).

### D.    The 'Damaged' Hard Drive

Finally, most of Herring's above-described discovery misconduct pales in comparison to

his pièce de résistance – the supposedly 'damaged' laptop hard drive that Herring fought tooth and

nail to prevent Plaintiff from obtaining (notwithstanding Herring's prior agreement to an Order

authorizing that forensic review).  As explained above, Herring's written discovery responses in

this lawsuit claimed that a "computer virus" infected his laptop hard drive, rendered it unusable,

and therefore Herring was unable to produce *any* documents (other than a few magazine articles

hand-selected by Herring) responsive to Plaintiff's document requests or respond substantively to

Plaintiff's interrogatories.  Herring described the supposed computer virus during his October 24,

2018 deposition, noting that it occurred in May 2018 (a few months prior to the filing of this

lawsuit):

> Tell me about this hard drive crash that's referenced in your
> responses to interrogatories and document requests. There's
> reference to a hard drive crash from a computer virus that,
> apparently, interfered with your ability to gather or secure
> documents in response to our discovery request. So give me some
> information about that hard drive crash.
> A. Well, as everybody knows, viruses are very rampant, and I do get
> virus warnings from my antivirus software from time to time. And
> one day, I did get a virus warning, and in the next day or two the
> computer was unable to be used. And I just assumed it was the virus.
> Upon later discussion with my IT person, he told me the hard drive
> simply stopped working, it crashed.
> Q. You said one day this happened. When did it happen?
> A. I think it happened around the middle of May or
> so.
> Q. Around the middle of May, you think?
> A. It was about that.[20]

---

[20]    See Herring Tr. at 8:5 – 9:3.

In January 2019, the Court entered an **agreed** Order authorizing a forensic investigation of the 'damaged' hard drive and of Herring's current/functioning hard drive and e-mail accounts (as Herring admitted during the October 2018 deposition that he was in possession of and had failed to produce thousands of relevant e-mails).   Notwithstanding his agreement to a forensic investigation, Herring thereafter put up a tremendous number of roadblocks designed to prevent Plaintiff from obtaining the 'damaged' hard drive.  As the Court knows, Herring insisted the drive remain at Mr. Vanderhoff's office at all times.  When that did not work, he insisted that the forensic review occur in Pennsylvania.  When that did not work, he insisted the drive not be turned over to the forensic expert until Herring retained new counsel.  When that did not work, Herring filed a bad faith Chapter 13 bankruptcy petition in Pennsylvania (which was recently dismissed for cause) to slow discovery of his conduct.  When that did not work, Herring filed a Chapter 7 bankruptcy petition for Dektor (which Dektor's bankruptcy counsel now confirms will be dismissed as they do not intend to file the requisite schedules).

Logically, Herring's resistance to the forensic investigation of the 'damaged' hard drive makes little to no sense.  Herring testified in his deposition that all of his work-related e-mails and records (including correspondence with customers, correspondence with prospective customers, forms, sales records, etc.) were lost as a result of the hard drive crash and that he was unable to conduct any Dektor business until months later when a new hard drive was installed.  One would assume that a business in operation for nearly 20 years would be eager to recover its sales/customer data – especially when someone else (Plaintiff) agreed to incur the cost for such recovery.  On its face, Herring's conduct in resisting the forensic investigation was thus nonsensical.  However, once the investigation actually occurred, Herring's motivations became much clearer.

13

Interestingly, although Herring claims a May 2018 catastrophic crash of his laptop hard drive that purportedly brought Dektor's business to a screeching halt, e-mails voluntarily produced by Mr. Vanderhoff and the thousands of e-mails reviewed from Herring's current hard drive are silent as to any such catastrophe. There is no mention of a failed hard drive or efforts to fix such drive. Rather, the only e-mail on point is an October 9, 2018 exchange between Herring and Mr. Vanderhoff (concerning a request for a phone call by Herring's attorney)[21] in which they debate when Mr. Vanderhoff should state that the hard drive crash occurred:

| | |
|---|---|
| From: | Arthur Herring III |
| To: | "Matt Vanderhoff" |
| Subject: | RE: hard drive |
| Date: | Tuesday, October 9, 2018 3:40:50 PM |

Hi Matt,

About middle of June 2018 is better as to when the hard drive became contaminated and useless to use. That would be about 45 days before they filed the suit.
Thanks
arthur

From: Matt Vanderhoff [mailto:mvanderhoff@vanderson.net]
Sent: Tuesday, October 09, 2018 1:59 PM
To: Arthur Herring III
Subject: Re: hard drive

Okay i will call her when back at my office. Is the May 2018 date okay to use?

The lack of communication (other than coordinating on a pre-deposition joint story) on the hard drive 'crash' is easily explained. As set forth in the June 3, 2019 declaration of the data recovery engineer who performed the analysis,[22] the subject hard drive appears to have been opened and extensively damaged through human interference.[23] This was confirmed by Mr. Vanderhoff who

---

[21]    A true and correct copy of the October 9, 2018 e-mail is attached hereto as Exhibit "J."

[22]    See Exhibit "K," a true and correct copy of the June 3, 2019 Declaration of Igor Sestanj (the "Sestanj Decl.").

[23]    Id. at ¶¶ 9 – 10.

explained that, although he replaced Herring's 'old' hard drive in May 2018, he gave that 'old' hard drive (in undamaged condition) back to Herring at that time.[24] *After* Herring was served with this lawsuit (in August 2018), he brought the 'old' hard drive back to Mr. Vanderhoff and asked him to store the hard drive in his safe.[25]  Notably, Mr. Vanderhoff noticed that the drive's encasement had been opened and that the drive may have been physically damaged (which it was not when the drive was returned to Herring in May 2018).[26]  More importantly – and for increasingly obvious reasons – Herring asked Vanderhoff at that time (when delivering the 'old' hard drive in August 2018) to lie and tell anyone who asked that the hard drive was in Mr. Vanderhoff's possession from May 2018 through that date.[27]

Further, prior to the above-described physical damage, some person appears to have formatted the hard drive by utilizing software to erase all data thereon.[28]  Both the Sestanj Decl. and the Reisman Decl. confirm that this damage and this formatting of the hard drive is not consistent with mechanical failure or a computer virus but rather deliberate tampering with the hard drive.[29]  Unfortunately, as a direct result of this tampering, no data could be recovered from the hard drive and therefore Plaintiff's review was limited to those e-mails/documents created in or after June 2018.[30]

Notably, it is unclear whether *any* data was *ever* written to the hard drive provided by Herring for the forensic review.  As conveyed by Mr. Vanderhoff, Herring recently reached out to

---

[24]    See Vanderhoff Decl., at ¶ 5.

[25]    Id.

[26]    Id.

[27]    Id.

[28]    See Sestanj Decl., at ¶¶ 11 – 14.

[29]    Id.; see also Reisman Decl., at ¶ 7.

[30]    See Sestanj Decl., at ¶ 14.

him with a question concerning the prospective purchase of a new hard drive that Herring could

'swap out' with his existing hard drive if any further forensic review of his computers was ordered:

> More recently, Mr. Herring reached out to me with a question concerning whether he could purchase a new hard drive at Walmart that could be 'swapped' for his existing hard drive in the event that a further forensic examination of the hard drive was ordered. My understanding of this request is that Mr. Herring wanted to provide a 'dummy' drive devoid of data to the forensic expert so he could avoid disclosure of his actual files/documents.[31]

Herring's inquiry calls into question whether he did the same 'swap' with respect to the original

hard drive submitted for forensic review (during the approximately 4 months Herring was in

possession of the drive while asking Mr. Vanderhoff to lie to the contrary). That behavior would

certainly be consistent with Herring's other conduct throughout this case – all of which

unfortunately confirms Herring's belief that he is somehow 'above the law' or beyond the reach

of this Court's power.    This point is perhaps most clearly demonstrated by Herring's

conduct/inquiries after the Court expended substantial effort in crafting a Permanent Injunction

[D.E. 95] against Dektor which required the immediate takedown of the offending

www.NITVCVSAexposed.com website (among other defamatory/disparaging material). Almost

immediately after Mr. Vanderhoff (who hosted the website) voluntarily complied with the

Permanent Injunction and took the website offline, Herring inquired about hosting the website

"offshore" so that he could somehow move it beyond the reach of the Court:

> After complying with the attorneys' request, I notified Mr. Herring what I had done. He was displeased with my actions and asked me (as he had done previously in September 2018) about hosting the www.NITVCVSAexposed.com website "offshore" so that it would be beyond the reach of any court in the United States. I told Mr.

---

[31]    See Vanderhoff Decl., at ¶ 8.

> Herring that I would not assist him with doing that, but he indicated
> that is the course he is pursuing at this time.[32]

While that conduct is unfortunate (and likely to lead Herring being held in civil and/or criminal contempt), it is not surprising. Mr. Vanderhoff has only confirmed what the forensic examination already revealed – Herring has been a bad actor since the initiation of this lawsuit and is simply not interested in complying with any rule, obligation, or Order.

## CONCLUSION

To say that Herring has been less than forthcoming in complying with his discovery obligations is perhaps the understatement of the year. Herring has put up every roadblock imaginable to avoid discovery of his egregious conduct, but his sheer incompetence ultimately (after months of delay tactics) betrayed him and shed light on his fraudulent/criminal activity. The striking of a litigant's pleadings and/or entry of default as a discovery sanction is an extreme remedy that should be reserved for extreme conduct. That conduct clearly exists here. No lesser sanction can adequately rectify Herring's deliberate destruction of evidence and other discovery misconduct. As Herring has not yet filed an Answer to the Complaint (despite being ordered to do so by March 4, 2019), the Court should enter a default against Herring (or strike any Answer filed in the interim) and direct Plaintiff to proceed with a motion for default final judgment against him.

## LOCAL RULE 7.1(a)(3) CERTIFICATE

Before filing this Motion, undersigned counsel attempted to confer with Herring regarding the relief requested. As set forth in the attached Exhibit "L" (June 5, 2019 e-mail exchange between Daniel DeSouza, Esq. and Arthur Herring, III), Herring refused to engage in a substantive

---

[32]     Id. at ¶ 10.

discussion (responding with "Ha ha ha ha ha") and flaunted that the www.NITVCVSAexposed.com website is back up notwithstanding this Court's entry of a Permanent Injunction barring such. On June 6, 2019, undersigned counsel (Daniel DeSouza, Esq. and James D'Loughy, Esq.) spoke with Herring telephonically for approximately 18 minutes. During that time, Herring threatened multiple times that if Plaintiff did not pay him off, he would arrange for Plaintiff's principals and their wives to be prosecuted and jailed and he would continue sending the e-mails/communications to law enforcement agencies that he was previously enjoined from sending. When undersigned counsel finally had an opportunity to inquire about this Motion, Herring laughed off the concept that he did anything wrong and indicated (presumably) that he did not agree to the relief sought herein. To say that focused communication with Herring is 'difficult' is somewhat of an understatement.

Respectfully submitted

ADVISORLAW PLLC
2925 PGA Boulevard
Suite 204
Palm Beach Gardens, FL 33410
Telephone: (561) 622-7788
Jdloughy@advisorlaw.com

By:/s/ James D'Loughy
     James D'Loughy, Esq.
     Florida Bar No: 052700

Respectfully submitted,

DESOUZA LAW, P.A.
101 NE Third Avenue
Suite 1500
Fort Lauderdale, FL 33301
Telephone:  (954) 603-1340
DDesouza@desouzalaw.com

By: /s/ Daniel DeSouza, Esq.
     Daniel DeSouza, Esq.
     Florida Bar No.:  19291

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.  I

further certify that on June 10, 2019, I served the foregoing document via US Mail to Dektor Corporation and Arthur Herring, III, 400 E. Station Avenue, Coopersburg, PA 18036 and via e-mail to admin@dektorpse.com.

/s/ Daniel DeSouza___

Daniel DeSouza, Esq.

4841-1795-7485, v. 1

19

EXHIBIT "C"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-80994-Civ-Brannon

NITV FEDERAL SERVICES, LLC,

     Plaintiff,

vs.

DEKTOR CORPORATION, and
ARTHUR HERRING III,

     Defendants.

_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE AND DISCOVERY ABUSE

THIS CAUSE is before the Court on Plaintiff's Motion for Sanctions Against Herring for Spoliation of Evidence and Discovery Abuse [DE 103]. Defendant Herring has responded in opposition [DE 119], Plaintiff has replied [DE 120], and Defendant Herring has filed an unauthorized sur-reply[1] [DE 126]. The Court has independently reviewed the entire record in this matter and is fully advised. For the following reasons, the Court finds that the extraordinary circumstances presented call for extraordinary action. Plaintiff's Motion is granted.

## I.  BACKGROUND

This case involves two competing businesses that sell truth verification technology. NITV is a Florida limited liability company based in Palm Beach County whose members

---

[1] Under S.D. Fla. L.R. 7.1(c), after a reply is filed, "[n]o further or additional memoranda of law shall be filed without prior leave of Court." Although Mr. Herring did not seek leave of Court to file his sur-reply, the Court has nonetheless considered it in analyzing Plaintiff's motion for spoliation sanctions.

1

are all Florida citizens [DE 1 ¶ 1]. Dektor is a Pennsylvania corporation headquartered in Coopersburg, Pennsylvania [*Id.* ¶ 2]. Dektor's President and sole shareholder is Defendant Arthur Herring III, who is a citizen and resident of Pennsylvania [*Id.* ¶¶ 3, 22].

On July 27, 2018, NITV filed this lawsuit alleging four counts against Dektor and Mr. Herring: false advertisement, unfair competition, and product disparagement under the Lanham Act, 15 U.S.C. § 1125(a) (Count I), deceptive and unfair trade practices under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count II), defamation/business disparagement (Count III), and tortious interference (Count IV) [DE 1]. Generally, NITV alleges that Dektor unfairly competes with NITV by making false and defamatory statements about NITV, NITV's founder, and NITV's CVSA product to gain an unfair advantage in the market [DE 1 ¶¶ 29-86]. NITV alleges that the false and defamatory statements have been (1) published on Dektor's website, (2) communicated by Mr. Herring on behalf of Dektor in emails and on phone calls with several different law enforcement agency contacts across the U.S., (3) made by Mr. Herring on behalf of Dektor during a speech at a polygraph summit in Texas, and (4) made to organizers of a "Crimes Against Children" conference at which NITV was scheduled to speak [*Id.*]. NITV alleges that the false and disparaging statements have caused incredible damage to NITV's reputation, goodwill, and sales—causing damages "estimated to exceed $7 million." [*Id.* ¶¶ 35, 83, 85].

On March 12, 2019, a Clerk's default was entered against Dektor based upon its failure to appear, answer, or otherwise plead to NITV's Complaint, despite having been duly served [DE 85]. On April 1, 2019, pursuant to 11 U.S.C. § 362(a)(1), the Court stayed this case as to Mr. Herring only based upon Mr. Herring's filing of a bankruptcy petition

on behalf of himself individually in a Pennsylvania bankruptcy court [DE 92]. The Court

expressly noted that this case would proceed against Dektor [*Id.*].

On May 17, 2019, the Court issued an order of final default judgment against

Dektor as to liability only with instructions for Plaintiff to submit supplemental evidence

regarding the appropriate amount of damages [DE 95]. The Court further granted

permanent injunctive relief against Dektor [*Id.*]. Shortly thereafter, on May 31, 2019,

pursuant to 11 U.S.C. § 362(a)(1), the Court stayed this case as to Dektor based upon notice

that Dektor had initiated a bankruptcy case in a Pennsylvania bankruptcy court [DE 98].

On June 7, 2019, this case was re-opened and the stay against Mr. Herring was

lifted based upon the bankruptcy court's dismissal of Mr. Herring's bankruptcy case [DE

107]. On June 14, 2019, the stay against Dektor was similarly lifted based upon the

bankruptcy court's dismissal of Dektor's separate bankruptcy case [DE 107].

Meanwhile, on June 10, 2019, NITV filed the instant motion seeking the imposition

of a default against Mr. Herring. As grounds, NITV argues:

> The Motion seeks an admittedly harsh remedy against Herring –the entry of
> default and/or striking of pleadings – as a result of a multitude of egregious
> discovery violations that . . . include: (a) Herring's installation and use of
> permanent file-deletion software the day after he missed a deposition due to
> an alleged sickness; (b) Herring's failed attempt to delete approximately
> 2,500 e-mails pertaining to Plaintiff during the pendency of this lawsuit;
> (c) Herring's use of a secret/secure e-mail account specifically to avoid
> disclosure/production in this lawsuit; (d) Herring's commission of perjury
> when he lied under oath about that secret/secure e-mail account; and (e)
> Herring's willful destruction of a laptop hard drive which contained years
> of highly-relevant documents.

[DE 120 at 1]. NITV supports its motion with citation to documentary evidence as well as

the sworn declarations of (1) Matt Vanderhoff (Defendants' former longtime Information

Technology ("IT") consultant) [DE 103-4]; (2) Andrew Reismann (an expert in digital

forensic, cybersecurity, and information technology services, with a focus on serving the

legal industry) [DE 103-2]; and (3) Igor Sestanj (a data recovery engineer) [DE 103-11].

Mr. Herring opposes the motion, claiming "[n]o foul, no harm" regarding his

rescheduled deposition, asserting that his former IT consultant was "forced to sign a fake

document" under threat of being sued, contending that "[f]ile deletion software is legal to

buy and use . . . to free up hard drive space," and arguing that NITV's attorneys are

unethical [DE 119 at 7-8, DE 126 at 2-4]. Mr. Herring further contends that he did not act

in bad faith or with the intent to deprive NITV of discoverable information.

## II.    THE LAW OF SPOLIATION

"Spoliation is the destruction or significant alteration of evidence, or the failure to

preserve property for another's use as evidence in pending or reasonably foreseeable

litigation." *Graff v. Baja Marine Corp.*, 310 F. App'x. 298, 301 (11th Cir. 2009).

"Sanctions for spoliation of the evidence 'are intended to prevent unfair prejudice to

litigants and to ensure the integrity of the discovery process.'" *Managed Care Solutions,*

*Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1323 (S.D. Fla. 2010) (quoting *Flury*

*v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005)).

Federal Rule of Civil Procedure 37(e) governs claims of spoliation of electronically

stored information ("ESI"). *Title Capital Mgmt., LLC v. Progress Residential, LLC*, No.

16-21882-Civ-Williams/Torres, 2017 WL 5953428, at *3 (S.D. Fla. Sept. 29, 2017); *Living*

*Color Enterprises, Inc. v. New Era Aquaculture, Ltd.*, No. 14-62216-Civ-

Marra/Matthewman, 2016 WL 1105297, at *3, 4 n.2 (S.D. Fla. Mar. 22, 2016) ("[W]hen

confronting a spoliation claim in an ESI case, a court must first look to newly amended

Rule 37(e) and disregard prior spoliation case law based on 'inherent authority' which

conflicts with the standards established in Rule 37(e).").

> Rule 37(e) provides:
>
> **Failure to Preserve Electronically Stored Information.** If electronically
> stored information that should have been preserved in the anticipation or
> conduct of litigation is lost because a party failed to take reasonable steps
> to preserve it, and it cannot be restored or replaced through additional
> discovery, the court:
>> (1) upon finding prejudice to another party from loss of the
>> information, may order measures no greater than necessary to cure
>> the prejudice; or
>> (2) only upon finding that the party acted with the intent to deprive
>> another party of the information's use in the litigation may:
>>> (A) presume that the lost information was unfavorable to the
>>> party;
>>> (B) instruct the jury that it may or must presume the
>>> information was unfavorable to the party; or
>>> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Before imposing sanctions under Rule 37(e), a court must find that: "(1) the

information sought constitutes ESI; (2) the ESI should have been preserved in anticipation

of litigation; (3) the ESI is lost because a party failed to take reasonable steps to preserve

it; and (4) the ESI cannot be restored or replaced through additional discovery." *Title*

*Capital Mgmt.*, 2017 WL 5953428, at *3. If these four threshold requirements are met,

sanctions may be warranted if the Court finds prejudice or that the spoliating party acted

with the intent to deprive the moving party of the ESI. *Id.* Rule 37(e) gives courts

discretion to determine how best to assess prejudice. *Id.* at *6. The intent to deprive

standard "may very well be harmonious with the 'bad faith' standard previously established

by the Eleventh Circuit" in spoliation cases. *Living Color*, 2016 WL 1105297, at *6 n.6.

That is, where there is no direct evidence of bad intent, bad faith may be found on

circumstantial evidence where: "(1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator." *See Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1322-23 (S.D. Fla. 2010) (declining to find bad faith and denying a request for an adverse inference instruction); *Calixto v. Watson Bowman Acme Corp.*, 2009 WL 3823390, at *16 (S.D. Fla. Nov. 16, 2009) (declining to find bad faith and denying a request for spoliation sanctions); *Alabama Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 746 (N.D. Ala. 2017) (finding sufficient circumstantial evidence to conclude that the spoliating party intended to destroy ESI, warranting an adverse inference instruction and an award of attorney's fees and costs).

## III.    DISCUSSION

To determine whether to impose sanctions in this case, the Court has considered all the evidence presented and the parties' arguments. Upon careful review, the Court finds that the requested sanction of default is warranted.

### A.    *Rule 37(e)'s Four Requirements are Met*

First, the information sought by NITV includes emails, email account information, and data stored on various electronic devices. This information constitutes ESI. Second, Mr. Herring knew that the ESI should have been preserved for litigation. To be sure, on February 8, 2019, , the Court issued an Order on Forensic Analysis Protocols [DE 65], which set forth detailed agreed-upon procedures for the collection and forensic review of

6

electronic data from Defendants' storage media "including but not limited to any laptops, desktops, hard drives, flash drives, servers, networks, or web-based accounts." Under the agreed-upon protocol, a designated independent digital forensic expert would review storage media belonging to Defendants to identify relevant data and data usage information after which Defendants could designate any such information as being privileged. Mr. Herring was aware of this protocol and the requirement that he preserve the designated ESI on behalf of himself and his company. Thus, Rule 37(e)'s first two threshold requirements are met.

Turning to the third requirement, the Court must determine if the ESI was lost because Mr. Herring failed to take reasonable steps to preserve it. The answer is yes. Unrefuted record evidence establishes the following five categories of unreasonable misconduct by Mr. Herring involving the exchange of discovery in this lawsuit.

The first category involves the installation of a "file shredding" program with the intention of deleting files beyond recovery. In this regard, it is undisputed that Mr. Herring was scheduled to appear for a deposition on October 17, 2018 to answer questions on various topics, including:

1. The facts and circumstances surrounding the "hard drive crash[]from a computer virus" as alleged by your responses to Plaintiff's jurisdictional discovery requests.
2. The software and hardware systems (including but not limited to the name and location of such systems) used by you to store e-mail and other electronic documents.
3. Your efforts to recover e-mail and other electronic documents responsive to Plaintiff's jurisdictional discovery requests.

[DE 103-1, Notice of Taking Corp. Rep. Depo., dated 10/15/18]. At the request of Defendants' prior counsel, the deposition was rescheduled on grounds that Mr. Herring was sick and therefore could not attend the deposition [DE 34 at 1]. Notably, however, a

7

later review of Defendants' laptop hard drives by digital forensic expert Andrew Reisman revealed that on the day after the cancelled deposition, "on October 18, 2018 at 11:46 a.m. eastern, a Google search for 'file shredder filehippo' was performed . . . and a minute later another Google search was run for 'file shredder download...'" [DE 103-2, Reisman Dec. ¶ 4, dated 6/5/19].    One minute later, "[t]he File Shredder setup program 'file_shredder_setup.exe' then was downloaded at 11:47 a.m. eastern that day" and "a program called 'File Shredder' was downloaded to the hard drive from http://www.fileshredder.org/files/" [Id.]. According to its website, File Shredder is a "free desktop application for shredding (destroying) unwanted files beyond recovery." See Free File Shredder, http://www.fileshredder.org/ (last accessed on 9/18/19).  On 6:43 P.M. that same day, Mr. Herring sent an email to his IT consultant, Matt Vanderhoff, stating: "Thanks for the computer work." [DE 103-3].

The digital forensic expert could not determine whether and to what extent files were destroyed using the "file shredder" program [DE 103-2, Reisman Dec. ¶ 5, dated 6/5/19].  However, the sworn declaration of Defendants' former longtime IT consultant Matt Vanderhoff sheds light on this issue.  According to Mr. Vanderhoff, "[d]uring the course of this lawsuit, Mr. Herring has asked me on multiple occasions about file deletion software that could be used to permanently delete files that Mr. Herring did not want NITV obtaining access to" [DE 103-4, Vanderhoff Dec. ¶ 8, dated 6/5/19].  Considering the totality of this unrefuted evidence, the Court concludes that Mr. Herring actively pursued and participated in the intentional shredding or attempted shredding of relevant electronic files.

The second misconduct category involves deleting or attempting to delete emails during the pendency of this lawsuit.   According to the digital forensic expert, approximately 2,500 emails sent between June 15, 2018 and February 13, 2019 were moved to the "Trash" folder "for deletion but had not yet permanently been deleted from the system" of one of Defendants' laptops [DE 103-2, Reisman Dec. ¶ 8, dated 6/5/19].  In addition, over 2,100 "email fragments dated between June 15, 2018 and February 13, 2019 . . . contained search hits for potentially relevant data" which is an indicator for "when emails are deleted and [are] no longer are recoverable from the Trash folder" [*Id.*].  NITV has provided copies of the recovered emails and a spreadsheet identifying the recovered emails from this timeframe [DE 103-5].

This lawsuit commenced on July 27, 2018 and the parties were actively engaged in discovery thereafter through at least mid-March 2019.  The Court's review of the recovered emails provided by NITV reveals that they contain relevant information of evidentiary value in this case.  These emails were sent during the pendency of this lawsuit when Mr. Herring had a duty to preserve relevant documents and after the Court ordered him to produce such documents to NITV in discovery [DE 65, DE 76, DE 86].  Instead, Mr. Herring apparently chose to delete or attempt to delete this information.

The third misconduct category involves the use of an undisclosed email address for the purpose of evading discovery.  On July 30, 2018, the Monday immediately after this lawsuit was filed, Mr. Herring received an email from a "Jill olson" at jill.olson@gmx.com stating that "it might be a good idea to get a different EMAIL address to communicate with key people to include me" [DE 103-7].  The sender states that "PROTON EMAIL is a good

choice" and that Mr. Herring "will want to DELETE ALL OF THE EMAILS BETWEEN US once you read them as NITV lawyers will be going after your email accounts" [*Id.*].

Around three weeks later, on August 18, 2018, Mr. Vanderhoff avers that Mr. Herring said he had "signed up to proton mail" and "sent a test back to myself and it works fine." [DE 103-8]. Mr. Herring asked Mr. Vanderhoff about secure/encrypted e-mail that "[Mr. Herring] could use to avoid NITV discovering his communications with various parties" [DE 103-4, Vanderhoff Dec. ¶ 7, dated 6/5/19]. Acting against Mr. Vanderhoff's advice that the use of secret emails "was not a good idea," Mr. Herring signed up for the secure/encrypted email address of melody2013@protonmail.com in August 2018 and thereafter sent Mr. Vanderhoff "numerous e-mails concerning NITV and/or the websites at issue in this lawsuit using this melody2013@protonmail.com e-mail address." [*Id.*].

Mr. Herring was deposed on October 24, 2018. During his deposition, NITV's counsel confirmed Dektor's known email address of admin@dektorpse.com and asked Mr. Herring to identify any other email addresses used by Mr. Herring [DE 103-9, Herring Tr. 23:16 – 24:19]. Mr. Herring objected at first but ultimately testified that "[t]he only email address I have for Dektor is admin@dektorpse.com." [*Id.* at 25:15-26:24]. Only after being further pressed by NITV's counsel did Mr. Herring identify one other email address he used, that is Ed@Detectornews.com [*Id.* at 32:7-32:14]. NITV's counsel asked "Are there any other email addresses that you use?" to which Mr. Herring responded "Nope." [*Id.* at 32:15-32:17].

At best, Mr. Herring forgot about the melody2013@protonmail.com address when asked. At worst, he lied under oath—otherwise known as the federal criminal offense of perjury. *See* 18 U.S.C. § 1621. One thing is clear. As evidenced by Mr. Vanderhoff's

declaration and the "Jill olson" email, Mr. Herring knowingly created and used the

undisclosed protonmail.com address to participate in unknown communications about

NITV and this lawsuit. It is highly doubtful that Mr. Herring forgot he had created that

email in July/August when he testified in October.

The fourth category of misconduct involves the circumstances regarding a hard

drive that Mr. Herring claimed was damaged. At his October 24, 2018 deposition, Mr.

Herring testified regarding a hard drive crash that he said happened in May 2018 and was

interfering with his ability to produce responsive documents in discovery:

> **A.** Well, as everybody knows, viruses are very rampant, and I do get virus
> warnings from my antivirus software from time to time. And one day, I did
> get a virus warning, and in the next day or two the computer was unable to
> be used. And I just assumed it was the virus. Upon later discussion with my
> IT person, he told me the hard drive simply stopped working, it crashed.
> **Q.** You said one day this happened. When did it happen?
> **A.** I think it happened around the middle of May or so.

[DE 103-9, Herring Tr. 8:5 – 9:3].

Contrary to Mr. Herring's testimony about this unexpected hard drive crash, NITV

has produced an email suggesting a far more sinister ploy orchestrated by Mr. Herring to

deceive NITV with regard to the hard drive. Specifically, on October 9, 2018, Mr. Herring

sent Mr. Vanderhoff the following email: "Hi Matt, About middle of [J]une 2018 is better

as to when the hard drive became contaminated and useless to use. That would be about 45

days before they filed the suit." [DE 103-10].

Thereafter, on January 7, 2019, the Court ordered Defendants to "cooperate with

and allow Plaintiff to conduct a forensic examination and imaging of Defendants' storage

media . . . and networked e-mail accounts for documents (existing and/or deleted) relevant

to the claims and defenses in this matter" [DE 55 at 2]. On February 8, 2019, the Court

issued its Order on Forensic Analysis Protocols setting forth the parties' agreed-upon data collection and review forensic protocols [DE 65]. During a status conference on February 15, 2019, NITV's counsel advised the Court of a discovery dispute involving a "damaged hard drive located in Pennsylvania" [DE 70]. At the time, Mr. Herring "assure[d the] Court that he has no intention of taking possession of the damaged hard drive prior to the forensics examination." [*Id.*].

Mr. Herring thereafter opposed having his "damaged" hard drive shipped from Pennsylvania to Florida for forensic review. Ultimately, after considering the parties' respective position statements on the matter, the Court ordered that the hard drive be delivered "from the IT safe in Pennsylvania to Orlando for review" in accordance with the Court's Order on Forensic Analysis Protocols [DE 76].

The data recovery engineer who later analyzed the damaged drive avers that:

> In my professional opinion, the above-described damage to the hard drive platter is not indicative of just mechanical failure. Rather, it appears some damage . . . was likely caused by human interference with the hard drive when its cover-lid was removed . . . Unfortunately, no data could be recovered.

[DE 103-11, Sestanj Dec. ¶ 10-12, dated 6/3/19]. This analysis is consistent with Mr. Vanderhoff's sworn statements regarding the supposed hard drive crash. Upon Mr. Herring's request, Mr. Vanderhoff replaced Mr. Herring's laptop hard drive in May 2018 and gave the prior drive back to Mr. Herring "in the event he wanted to extract data" from the drive [DE 103-4, Vanderhoff Dec. ¶ 5, dated 6/5/19]. After Mr. Herring was served with this lawsuit ("at some point in August 2018"), Mr. Herring brought the removed hard drive back to Mr. Vanderhoff and asked Mr. Vanderhoff to store the hard drive in his safe [*Id.*]. Mr. Vanderhoff noticed that "the drive's encasement had been opened and that the

12

drive may have been physically damaged." Even more troubling, Mr. Herring apparently told Mr. Vanderhoff at that time to tell anyone who asked that the hard drive was in Mr. Vanderhoff's possession from May 2018 through that date "rather than the truth which was that Herring had the hard drive for that period of time" [*Id.*].

The data recovery engineer and the digital forensics expert both agree that the formatting of the subject drive is not consistent with mechanical failure or a computer virus; rather, the "most likely explanation for this is that someone formatted the hard drive (prior to the above-referenced physical damage) by 'zero-filling' the drive—a method of formatting a hard drive whereby the formatter wipes the contents by overwriting them with zeros" [DE 103-11, Sestanj Dec. ¶ 13-14, dated 6/3/19; DE 103-2, Reisman Dec. ¶ 7, dated 6/5/19 (agreeing with Mr. Sestanj's opinion "that deliberate human interference is the explanation for the data on the Damaged Drive being inaccessible"].

As conveyed by Mr. Vanderhoff, while this lawsuit was pending, Mr. Herring reached out to ask "whether he could purchase a new hard drive at Walmart that could be 'swapped' for his existing hard drive in the event that a further forensic examination of the hard drive was ordered" [DE 103-4, Vanderhoff Dec. ¶ 8, dated 6/5/19]. Mr. Vanderhoff understood this to mean "Mr. Herring wanted to provide a 'dummy' drive devoid of data to the forensic expert so he could avoid disclosure of his actual files/documents" [Id.]. Mr. Herring has not offered any argument or evidence to refute Mr. Vanderhoff's declaration about the hard drive or otherwise.

The fifth and final category of misconduct involves Mr. Herring's apparent intention to defy this Court's orders. On May 17, 2019, the Court issued a detailed Order [DE 95] granting final default judgment as to liability only against Dektor Corporation and

issuing a permanent injunction which mandated, among other things, the immediate takedown of the www.NITVCVSAexposed.com website.   Upon learning of the Court's Order, Mr. Vanderhoff (as the website's host) took the website offline [DE 103-4, Vanderhoff Dec. ¶ 10, dated 6/5/19].   Mr. Herring was "displeased" and asked Mr. Vanderhoff about hosting the website "offshore so that it would be beyond the reach of any court in the United States." [*Id.*].   Mr. Vanderhoff "told Mr. Herring that I would not assist him with doing that, but he indicated that is the course he is pursuing at this time." [*Id.*].

Confronted with the evidentiary submissions detailed above, Mr. Herring's reply is largely non-responsive.   Mr. Herring's arguments focus on his views about the overall merits of this case as opposed to offering a response to the misconduct alleged by NITV. In conclusory fashion, Mr. Herring contends that "Nitv/lawyers demanded a hard drive examination under false pretenses." [DE 119 at 8].   It is unclear how so.   Mr. Herring also suggests that Mr. Vanderhoff was forced "to sign a fake document." [DE 126 at 3].   Yet, Mr. Herring offers no evidentiary proof in support of this statement.

Mr. Herring also argues that "file deletion software is legal to buy and use . . . to free up hard drive space" [*Id.* at 2].   This argument misses the point, which is that Mr. Herring was under an affirmative obligation to preserve his files during the pendency of this suit.   Mr. Herring takes issue with NITV's statements about Mr. Herring's actions or responses since "[a] business (law) that is written in a foreign language (legalese) and forms written in legalese CANNOT be stated by lawyers that non-trained people sould be able to understand those rules and forms." [DE 126 at 3].   That Mr. Herring has chosen to proceed *pro se* in this matter cannot be used as a shield protecting him from his discovery obligations or the imposition of sanctions based on deliberate misconduct.   The Court finds

14

that Mr. Herring was fully aware of his obligations as a litigant in this suit and his explanations for deleting or losing relevant ESI demonstrate an unreasonable failure to preserve.

Mr. Herring knew that ESI including his emails and electronic storage devices had to be preserved for forensic review in this litigation and he acted unreasonably in deleting ESI, attempting to delete ESI, or using an undisclosed email address to avoid the ESI from being reviewed. The agreed-upon forensic protocol provided a process for determining the relevance of captured ESI. It was not for Mr. Herring to unilaterally decide what might or might not be relevant. All of the foregoing establishes that Rule 37(e)'s third threshold requirement—*i.e.* that the ESI is lost because a party failed to take reasonable steps to preserve it—is satisfied.

The fourth requirement is also met. The sworn declarations of the digital forensic expert and the data recovery engineer together with Mr. Vanderhoff's declaration establish that certain emails and data were intentionally removed with Mr. Herring's knowledge and at his direction from Defendant's electronic devices and email accounts beyond recovery. While NITV could conceivably attempt to piece together the larger puzzle of what might have been on Mr. Herring's devices or in his email accounts through other sources, NITV can never know for sure without the ability to properly analyze these ESI sources. This is precisely why the parties entered the stipulated forensic review process in the first place.

**B.    *Prejudice and Intent to Deprive***

Having found that Rule 37(e)'s four threshold requirements are met, the Court must next determine if NITV is prejudiced as a result of the lost ESI and/or if Mr. Herring acted with the requisite intent to deprive NITV of the ESI at issue. Yes to both inquiries. As for

15

prejudice, without the ability to conduct a fair forensic review the devices belonging to Defendants or the emails in all of Mr. Herring's email accounts from the relevant timeframe, NITV has lost key evidence regarding whether and to what extent, if at all, Mr. Herring competed unfairly, tortiously interfered, defamed, or disparaged NITV and NITV's product. Such evidence goes to the heart of NITV's alleged claims in this case. For instance, NITV alleges that Mr. Herring has engaged in an unrelenting campaign of harassment against NITV by sending emails to law enforcement agencies nationwide containing false information about NITV and NITV's product. Without access to the lost or destroyed emails and other related ESI for forensic review, this claim cannot be readily analyzed during a full and fair trial on the merits.

As for intent, the Court finds that the evidence present sufficiently establishes that Mr. Herring acted with the intent to deprive NITV of the ESI and interfere with NITV's ability to discover discoverable information. First, the ESI located in Mr. Herring's email accounts and on his electronic devices "could fairly be supposed to have been material to the proof or defense of a claim at issue in the case." *Managed Care Sols.*, 736 F. Supp. 2d at 1323. As demonstrated by several emails produced by third parties, Mr. Herring was communicating via email with others regarding issues in this case. Without access to the emails in all of Mr. Herring's accounts, NITV is unable to determine the full scope of Mr. Herring's communications and activities during the relevant timeframe. Similarly, NITV is unable to trace the history of the electronic data while it was in Mr. Herring's possession.

Second, through his affirmative actions, Mr. Herring intentionally caused the ESI to be damaged or lost beyond recovery. This is shown through Mr. Vanderhoff's declaration. Third, Mr. Herring did so at a time that he had counsel and after having been

duly advised of the stipulated forensic review process—illustrating that he knew or should have known that he was obligated to take precautions to preserve relevant ESI in his email accounts and electronic devices.  Considering the totality of the circumstances—including but not limited to the installation of a file shredder program around the time of a scheduled deposition, Mr. Herring's statements to his former IT professional demonstrating his continuing efforts to obstruct the forensic review process, and the sworn declarations of an independent digital forensic expert and data recovery engineer regarding their review of available electronic devices belonging to Mr. Herring—the Court concludes that Mr. Herring did not safeguard or preserve his ESI as required.  On the contrary, Mr. Herring's affirmative actions caused the loss or destruction of the ESI and "cannot be credibly explained as not involving bad faith by the reason[s] proffered." *See Managed Care Sols.*, 736 F. Supp. 2d at 1323.

C.    **_Sanctions_**

As sanctions, NITV proposes a Court Order entering a default against Mr. Herring and directing NITV to proceed with a motion for final default final judgment against Mr. Herring [DE 103 at 17].  In its discretion, and after careful consideration, the Court finds this proposal to be an appropriate measure in this case.  *See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009) (default judgment is an appropriate sanction only when less drastic measures are insufficient).  Our society and our legal system both depend upon the fundamental truthful conduct of persons.  When that truthfulness is compromised or absent, the processes still work, but not nearly as well.  In those situations, Courts have the authority to impose sanctions to penalize those who damage the operations of our valuable judicial process.  Sometimes the misconduct is so

17

pervasive and impactful that normal sanctions are not enough because then the process does not work. The extraordinary sanction becomes appropriate in such an extraordinary circumstance. Such is the case here.

## IV.    CONCLUSION

Based on the foregoing, the Court concludes that the evidentiary submissions demonstrate that Mr. Herring affirmatively acted on various occasions with the intent to deprive NITV of discoverable ESI and other information. The Court further finds that NITV suffered prejudice by this loss, such that sanctions are warranted. Mr. Herring's extraordinary misconduct warrants the imposition of the extraordinary sanction of default.

Accordingly, the Court **ORDERS AND ADJUDGES** that Plaintiff's Motion for Sanctions Against Herring for Spoliation of Evidence and Discovery Abuse [DE 103] is **GRANTED**. Within 21 days of this Order, NITV shall file an appropriate motion for final default judgment against Mr. Herring. Such motion shall be accompanied by a proposed order that is filed and submitted via e-mail to the Court at brannon@flsd.uscourts.gov. *See* S.D. Fla. Local Rule 7.1(a)(2). NITV's motion may include information regarding the final amount of monetary damages to be imposed against both Defendants. In this regard, NITV shall heed the Court's prior statements regarding the need to file satisfactory evidentiary submissions in support of any request for financial damages.

DONE AND ORDERED in Chambers at West Palm Beach in the Southern District of Florida, this 20th day of September, 2019.

DAVE LEE BRANNON
U.S. MAGISTRATE JUDGE

18

EXHIBIT "D"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-80994-Civ-Brannon

NITV FEDERAL SERVICES, LLC,

     Plaintiff,

vs.

DEKTOR CORPORATION, and
ARTHUR HERRING III,

     Defendants.

_____/

## ORDER OF FINAL DEFAULT JUDGMENT
## AND PERMANENT INJUNCTION AGAINST BOTH DEFENDANTS

**THIS CAUSE** is before the Court upon Plaintiff NITV Federal Services, LLC's

("Plaintiff") Verified Motion for Default Final Judgment [DE 135] and Plaintiff's Motion for Entry

of Permanent Injunction Against Dektor Corporation ("Dektor") and Arthur Herring, III ("Mr.

Herring") (collectively, the "Defendants") [DE 134]. Also pending before the Court is Mr.

Herring's Motion to Deny Claim of Damages [DE 145] and his Motion for Court to Sanction

Plaintiff's Attorneys [DE 146]. The Court has reviewed all four motions and the entire record in

this case.

The Court held an evidentiary hearing on December 10, 2019, at which time the parties

submitted evidence and argument related to the Court's determination of the damages and

injunctive relief sought by Plaintiff. Plaintiff's corporate representative, Charles Humble, appeared

with counsel for Plaintiff. Mr. Herring appeared and proceeded without counsel. Relevant

affidavits and other documents were admitted into evidence, and the Court heard testimony from

1

Mr. Humble, Certified Public Accountant Kevin Foyteck, and Mr. Herring.  The Court has carefully considered the evidence, the entire record in this case, and the arguments presented by Plaintiff's counsel and Mr. Herring at the hearing.  Pursuant to Rule 55 of the Federal Rule of Civil Procedure, the Court concludes that Plaintiff has met its burden of showing that it is entitled to a final default judgment as to both Defendants.[1]  The Court further finds that under the circumstances of this case, and given Defendants' willful misconduct, multiplying Plaintiff's actual proven damages is appropriate under 15 U.S.C. § 1117(a). Plaintiff has also met its burden of showing that it is entitled to permanent injunctive relief under 15 U.S.C. § 1116 and Fla. Stat. § 501.211(1).  The Court's findings and reasoning are set forth below.

## I.    **INTRODUCTION**

This case involves two competing businesses that sell truth verification technology.  NITV is a Florida limited liability company based in Palm Beach County whose members are all Florida citizens.  Dektor is a Pennsylvania corporation headquartered in Coopersburg, Pennsylvania. Dektor's President and sole shareholder is Mr. Herring, who is a citizen and resident of Pennsylvania.

On July 27, 2018, NITV filed this action alleging four counts against Dektor and Mr. Herring:  false advertisement, unfair competition, and product disparagement under the Lanham Act, 15 U.S.C. § 1125(a) (Count I), deceptive and unfair trade practices under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count II), defamation/business disparagement (Count III), and tortious interference (Count IV) [DE 1].  Generally, NITV alleges that Dektor unfairly competes with NITV by making false and defamatory statements about NITV, NITV's

---

[1] The Court previously entered default final judgment against Dektor (as to liability only) and a permanent injunction against Dektor.  Because Plaintiff's two motions addressed herein address both Defendants and now include sufficient information to enter an award of monetary damages, this Order shall be deemed the governing Order and Judgment with respect to both Dektor and Mr. Herring.

founder, and NITV's CVSA product to gain an unfair advantage in the market [DE 1 ¶¶ 29-86].

NITV alleges that the false and defamatory statements have been (1) published on Dektor's

website, (2) communicated by Mr. Herring on behalf of Dektor in emails and on phone calls with

several different law enforcement agency contacts across the U.S., (3) made by Mr. Herring on

behalf of Dektor during a speech at a polygraph summit in Texas, and (4) made to organizers of a

"Crimes Against Children" conference at which NITV was scheduled to speak [*Id.*].    NITV

alleges that the false and disparaging statements have caused incredible damage to NITV's

reputation, goodwill, and sales—causing damages "estimated to exceed $7 million." [*Id.* ¶¶ 35,

83, 85].

On March 12, 2019, a Clerk's default was entered against Dektor based upon its failure to

appear, answer, or otherwise plead to NITV's Complaint, despite having been duly served [DE

85].  On April 1, 2019, pursuant to 11 U.S.C. § 362(a)(1), the Court stayed this case as to Mr.

Herring only based upon Mr. Herring's filing of a bankruptcy petition on behalf of himself

individually in a Pennsylvania bankruptcy court [DE 92].  The Court expressly noted that this case

would proceed against Dektor [*Id.*].

On March 22, 2019, NITV moved for entry of final default judgment and a permanent

injunction against Dektor [DE 88, DE 89].  At the time, NITV sought base compensatory damages

of $1,360,000, and sought for this base amount to be trebled for a grand total of $4,080,000 [*Id.* ¶¶

86, 89].  On May 17, 2019, the Court granted Plaintiff's Motion for Permanent Injunction and

granted in part Motion for Final Default Judgment "as to liability only." [DE 95].  The Court found

the record to be "devoid of evidentiary materials" to prove the amount of base damages sought [DE

95 at 14].  The Court further found that the requested damages enhancement might be warranted,

but further evidentiary support was required before a determination could be made [*Id.* at 15].

3

On May 31, 2019, after Suggestions of Bankruptcy were filed as to Dektor and on Mr. Herring [DE 90, DE 97], the case was stayed as to both Defendants [DE 98].

On June 7, 2019, the stay was lifted upon notice that the separate bankruptcy proceedings were concluded [DE 102]. On June 10, 2019, Plaintiff filed a Motion for Sanctions Against Mr. Herring for Spoliation of Evidence and Discovery Abuse [DE 103]. On September 20, 2019, the Court issued a detailed order in support of the Court's final conclusion that:

> . . . the evidentiary submissions demonstrate that Mr. Herring affirmatively acted on various occasions with the intent to deprive NITV of discoverable ESI and other information. The Court further finds that NITV suffered prejudice by this loss, such that sanctions are warranted. Mr. Herring's extraordinary misconduct warrants the imposition of the extraordinary sanction of default.

[DE 133 at 18].

Plaintiff now seeks entry of final default judgment and a permanent injunction against both Defendants. As compensatory damages, NITV now seeks base damages of $5,990,659.12, and seeks for this amount to be trebled for a grand total of $17,871,977.36 [DE 135 at 28, 30]. In support of this request, NITV relies principally upon the testimony and declaration of Charles Humble [DE 135-1], who is a managing member and minority owner of NITV. NITV also relies upon the testimony of Certified Public Accountant Kevin Foyteck [who also authored a declaration, which is available at DE 155-1] and the declaration of Certified Public Accountant Matthew C. Smith [DE 135-2]. Mr. Herring largely focuses his response on the argument that NITV's lie detector software product is "a fake or fraud" and that NITV is seeking to wrongfully place the blame on Mr. Herring alone "for all of their troubles, problems, their lies and their sales losses." [DE 145 at 1, 4].

## II.    APPLICABLE LEGAL STANDARDS

Federal Rule of Civil Procedure 55 sets forth two steps to obtain a default judgment. First,

when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court may enter a clerk's default. Fed. R. Civ. P. 55(a). Second, after entry of the clerk's default, the Court may enter default judgment against the defendant so long as the defendant is not an infant or incompetent. Fed. R. Civ. P. 55(b)(2). "The effect of a default judgment is that the defendant admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by entry by the judgment, and is barred from contesting on appeal the facts thus established." *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

The Court must review the sufficiency of the complaint before determining if a moving party is entitled to default judgment. *See U.S. v. Kahn*, 164 F. App'x 855, 858 (11th Cir. 2006) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206) (5th Cir. 1975); *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). "While a complaint . . . does not need detailed factual allegations," a plaintiff's obligation to show its entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

If the admitted facts are enough to establish liability, the Court must then ascertain the appropriate amount of damages and enter final judgment in that amount. *See Nishimatsu*, 515 F.2d at 1206. Importantly, damages may be awarded only if the record adequately reflects the basis for the award, which can be shown by submission of detailed affidavits establishing the facts necessary to support entitlement to the damages requested. *See Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985). An evidentiary hearing on damages is not required by Rule 55, and it is within the Court's discretion to choose whether to hold such a hearing. *See* Fed. R. Civ. P. 55(b)(2); *SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *Tara Productions, Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911-12 (11th Cir. 2011).

### III.  FACTS[2]

Generally stated, this lawsuit involves allegations that Defendants are unfairly competing with Plaintiff through a targeted campaign of sending disparaging communications to Plaintiff's current and prospective customers and by publishing at least two websites (one of which was published months after this lawsuit was commenced) which contain the same disparaging information.

NITV manufactures and is the sole source for a patented Computer Voice Stress Analyzer, II ("CVSA") product—which is described as digitized technology incorporated into a multi-functional, portable notebook computer that is "the most widely used truth verification tool in the United States law enforcement community" [DE 1 ¶¶ 8, 17].  According to NITV, the CVSA is used by approximately 2,000 local, state, federal, and international law enforcement agencies, including approximately 175 agencies within Florida and approximately 13 federal government agencies.  NITV holds three patents in forensic voice stress analysis/voice related technologies and "is recognized throughout the world as a leader in the field of voice stress analysis" [*Id.* ¶¶ 9, 11].

In 1972, Allan D. Bell, Jr., Wilson H. Ford, and Charles R. McQuiston–the three principals of a company known as Dektor Counterintelligence and Security, Inc.–patented an invention which would become known and sold as the "Psychological Stress Evaluator" ("PSE").  However, Dektor Counterintelligence and Security, Inc.'s voice stress analyzer product disappeared from the market after the company went out of business in the late 1990's.  Dektor, the corporate Defendant in this case, was formed in 1999 and is not a successor-in-interest or connected in any

---

[2] These facts are drawn from credible witness testimony and uncontested evidentiary submissions that have been presented to the Court.  The Court has independently analyzed and considered the evidence and has adopted only those findings which the Court has deemed to be properly supported.

way to the original Dektor Counterintelligence and Security, Inc. Neither Defendant purchased or

otherwise received any of Dektor Counterintelligence and Security, Inc.'s intellectual property or

assets. Instead, Dektor appropriated the "Dektor" name, reverse-engineered Dektor

Counterintelligence and Security, Inc.'s product, and began selling its own "PSE" voice stress

analyzer product while capitalizing on the name and history of the original Dektor

Counterintelligence and Security, Inc. For instance, as of the date of NITV's Complaint, Dektor's

website (http://www.dektorpse.com/) represented that:

> PSE® stands for Psychological Stress Evaluator®. Since 1969, all PSE® models
> (PSE 7010, PSE 5128, PSE 4202, PSE 2000, PSE Dek, PSE 101, PSE 1) detect,
> measure, and graphically display the degree of presence or absence of inaudible
> body tremors known as micro-muscle tremors.

> Thousands of various PSE models have been sold worldwide for 45 years. For 50
> years, PSE® has been known worldwide because PSE® constantly proves it is the
> most superior system for truth verification. Only the Dektor system has proven it is
> the real technology for Voice Stress Analysis™.

[*Id.* ¶ 25]. Dektor directly competes with NITV by marketing and selling Dektor's "PSE-7010"

(described as a software-based voice stress analyzer) to the same law enforcement agencies, and

other entities to which NITV markets and sells its CVSA product. Dektor's website has touted

that "[t]housands of various PSE models have been sold worldwide for 45 years" and PSE's are

used by law enforcement agencies, Fortune 500 companies, security companies, military, and

others [*Id.* ¶ 27].

Dektor's campaign to disparage NITV has included dozens of pages of defamatory

material concerning NITV and NITV's founder published on Dektor's website, as well as e-mails

to law enforcement agencies, telephone calls, and professional speaking engagements designed to

widely spread numerous and material falsehoods about NITV and its CVSA product. NITV cites

the following examples of Dektor's targeted campaign to disparage NITV:

- On March 18, 2014, while speaking at a Texas Polygraph Summit hosted by the Texas Department of Licensing and Regulation, Mr. Herring publicly berated NITV and NITV's CVSA product as being scams that have been proven unreliable (no more reliable than a coin toss or 50% accuracy) and touted Dektor's PSE product and its storied (albeit false) history dating back some 50 years.

- Mr. Herring has contacted (telephonically or via e-mail) dozens (if not hundreds) of law enforcement agencies across the country to discredit NITV and its CVSA product by (1) referring to CVSA as a "scam," stating that CVSA has been proven unreliable (no more than 50% accuracy), (2) stating that NITV only sells to law enforcement because NITV knows such agencies will not sue NITV for selling an unreliable product as doing so would reopen cases on which CVSA was used, (3) stating that NITV's founder obtained a "store bought" diploma, and (4) conveying other false and disparaging information (falsely represented as "facts") concerning NITV and its CVSA product.

- On July 22, 2018, Mr. Herring (using e-mail address admin@dektorpse.com) sent an unsolicited e-mail to a detective with the Garfield County Sheriff's Office (which uses NITV's CVSA product) in Glenwood Springs, CO with the subject line "lie detection scam." The email contains falsehoods and disparaging material concerning NITV and its CVSA product (including that the CVSA product is a scam and not more than 50% reliable), while touting the reliability and "proven superiority" of Dektor's PSE product in an effort to solicit business from the Garfield County Sheriff's Office. This email is just one of a multitude of similar e-mails sent to law enforcement agencies in the U.S. in 2018 alone.

- On July 25, 2018, Mr. Herring sent substantially the same e-mail (with "voice lie detector scam" as the subject line) to the Executive Director of the Missouri Police Chiefs Association. The Executive Director then forwarded Mr. Herring's e-mail to the organization's membership, meaning that with one e-mail Herring essentially spread his falsehoods and disparaging remarks throughout the entire State of Missouri.

- In May 2018, Dektor contacted the organizers of the Dallas Crimes Against Children's conference (NITV was a speaker at the 2017 conference and was scheduled to speak again at the 2018 conference). The 2018 conference was set for August 13–16, 2018. Dektor contacted the organizers with the specific intent to interfere with NITV's contract and participation at the conference and did so by making numerous false statements to conference organizers about NITV, NITV's employees (such as falsely stating that an employee scheduled to speak at the conference had been dishonorably fired from his prior position as a sex crimes investigator when in reality that employee retired), and NITV's CVSA product (the same factual allegations described above with respect to Mr. Herring's e-mails and other communications sent on Dektor's behalf). NITV gained business and sales from its speaking engagement at the 2017 conference and had invested substantial

8

sums to be a presenter—including a signed contract in place and paid in full—to speak at the 2018 conference. Plaintiff has credibly shown that $5,660.83 and $6,513.13 were invested in marketing, travel, and associated expenses for Plaintiff's attendance and participation at the Crimes Against Children Conference in Dallas, Texas for the years 2018 and 2019, respectively. Because of Dektor's disparaging comments, NITV was uninvited from presenting at both the 2018 conference (notwithstanding NITV's paid contract with the organizers) and the 2019 conference.

- On October 24, 2018, during Mr. Herring's deposition in this lawsuit (on behalf of himself individually and as Dektor's corporate representative), Mr. Herring confirmed that he sent approximately 1,100 of the same type of e-mails concerning NITV and the CVSA product, and was continuing to "send[] out press releases about the lawsuit."

[*Id.* ¶¶ 34-44; DE 88-1, Herring Dep. 63:3-63:18].    The full extent of Mr. Herring's communications to other potential and existing NITV customers could not be fully and fairly discovered as Defendants failed to participate in discovery and Mr. Herring's deceitful and obstructionist conduct necessitated the Court entering an Order allowing a forensic examination of Defendants' hard drives and e-mail files and, ultimately, an Order sanctioning Mr. Herring in the form of entry of default as a result of substantial discovery violations.

According to NITV's verified motion, Dektor's main business website used to contain an entire section (previously available at http://www.dektorpse.com/information/cvsa/) dedicated to disparaging NITV and NITV's CVSA product (with the section stating that it was last updated in June 2018). The Court has previously reviewed the Dektor website (the website has now been taken down following the Court's prior directives) and found it to contain a substantial amount of disparaging material directed toward NITV and the CVSA product.

According to NITV, Defendants have shown no sign of slowing down their campaign of disparaging NITV—as evidenced by Dektor's registration and publication of a new website, www.NITVCVSAexposed.com, after this lawsuit was filed. The NITVCVSAexposed website is

dedicated entirely to the disparagement of NITV and its CVSA product. In Mr. Herring's own words, the NITVCVSAexposed website is "a huge, beautiful website of all the documents and information showing that [NITV] is a liar, a con man, and a scam artist" [DE 88-1, Herring Dep. 61:10-12].

At the hearing, Mr. Humble credibly testified about certain damaging effects of Defendants' conduct. Mr. Humble described lost sales of new product as well as related product training that has resulted from Mr. Herring's campaign to disparage NITV in the marketplace. Mr. Humble testified about a recent incident in which Plaintiff sent a notice out to all of Plaintiff's clients that they could upgrade their older existing CVSA systems with Plaintiff's latest version, the CVSA II. When Plaintiff's marketing person contacted the El Paso County Sheriff's Department in Colorado, the person was told that due to information received from Defendants, they were discontinuing the CVSA program and would not be trading in their existing CVSA's. This one client, according to Mr. Humble and Plaintiff's verified motion, represents a loss of $18,000.00 in expected profits for selling three upgraded CVSA products. In addition, over the next five years, based on prior training needs, the El Paso County Sheriff's Department would be expected to train three additional examiners per year at approximately $1,300.00 each. Thus, the $18,000.00 in lost product sales plus the $19,500.00 in lost training revenue equates to a total loss of $37,500.00.

IV.    **ANALYSIS**

Under Federal Rule of Civil Procedure 55(b)(2), the Court may enter a final judgment of default against a party who has failed to timely plead in response to a complaint. Here, the clerk's default against Dektor constitutes an admission by Dektor of the well-pleaded allegations in the Complaint. *See Cancienne v. Drain Master of S. Fla., Inc.*, 2008 WL 5111264, at *1 (S.D. Fla. Dec. 3, 2008) (citing *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277–78 (11th Cir. 2005)).

Mr. Herring has also been defaulted out due to his misconduct in discovery.

However, because a defaulting party is not held to admit facts that are not well pleaded or to admit conclusions of law, the Court must determine if there is a sufficient basis in the pleadings for final judgment to be entered before turning to the appropriateness of granting relief in the form of a permanent injunction and monetary damages. The Court now turns to an evaluation of each of Plaintiff's claims in this case.

### A.    *Lanham Act Violations (Count I)*

The Lanham Act prohibits making "false or misleading representation[s] of fact … in commercial advertising or promotion" which "misrepresent[] the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. §1125(a)(1). To prevail on a false advertising/unfair competition claim under the Lanham Act, the movant must show (1) that the opposing party's advertisements were false or misleading; (2) that the advertisements deceived, or had the capacity to deceive, consumers; (3) that the deception materially affected purchasing decisions; (4) that the misrepresentation affects interstate commerce; (5) and that the movant has been injured or is likely to suffer injury because of the false advertising. *N. American Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1224 (11th Cir. 2008); *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). Under the Lanham Act, a "cause of action for product disparagement includes the following elements: 1) there must be 'commercial advertising or promotion' constituting commercial speech of or concerning another's goods or services or commercial activities, 2) by a defendant who is in commercial competition with plaintiff, 3) for the purpose of influencing consumers to buy defendant's goods or services, and 4) the promotion must be disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry."). *See Fun*

11

*Spot of Fla., Inc. v. Magical Midway of Cent. Fla., Ltd.*, 242 F. Supp. 2d 1183, 1203 n.3 (M.D. Fla. 2002) (collecting cases).

Here, Plaintiff is entitled to judgment against Defendants on its Lanham Act claims. Defendants have falsely represented their own PSE product as being the same product sold by Dektor Counterintelligence and Security, Inc. and falsely stated that Dektor has been in business since 1969. Defendants' various e-mails, letters, and websites constitute commercial speech from a competitor with the purpose of influencing customers to purchase Dektor's PSE product. Plaintiff has offered credible proof that these communications by Defendants contain materially false information concerning Plaintiff and its CVSA product. Plaintiff has offered specific details showing that Dektor and Mr. Herring are the source of these communications containing materially false information about Plaintiff and its CVSA product. As such, Plaintiff is entitled to judgment on its false advertising, unfair competition, and product disparagement claims arising under the Lanham Act.

### B.    *Florida's Deceptive and Unfair Trade Practices (Count II)*

One stated purpose of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). A FDUTPA claim has three elements: (1) a deceptive act or unfair practice in the course of trade or commerce; (2) causation; and (3) actual damages. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1338 n.25 (11th Cir. 2012); *BPI Sports, LLC v. Labdoor, Inc.*, 2016 WL 739652, at *4 (S.D. Fla. Feb. 25, 2016) (citing Florida case law).

Based on the Court's factual findings, the Court concludes that Plaintiff has demonstrated each element to succeed on its FDUTPA claim. As described in detail above, Plaintiff alleges that Dektor and Mr. Herring have engaged in a widespread scheme of intentionally deceptive acts to promote Dektor's own PSE product to the direct detriment of Plaintiff's product and legitimate business. Dektor has engaged in a widespread campaign of disparaging NITV and NITV's competing CVSA product through websites, in emails, during phone calls, and at speaking engagements. NITV alleges that Dektor's deceptive and unfair trade practices have damaged NITV's reputation, goodwill, and overall sales. Plaintiff's FDUTPA claim is legally sound.

**C.    *Defamation/Business Disparagement (Count III)***

Under Florida law, the elements of defamation are: "(1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)).

Here, the evidence shows that Dektor and Mr. Herring published numerous false and defamatory statements about Plaintiff and Plaintiff's product and related services to a multitude of existing and potential consumers of Plaintiff's products and services. Defendants knew or should have known that the defamatory statements were false when made and Plaintiff has suffered damages, including but not limited to lost sales and lost goodwill as a direct result of the defamation. Plaintiff is entitled to judgment against Defendants on this claim.

**D.    *Tortious Interference (Count IV)***

Under Florida law, the elements of tortious interference with a business relationship are: (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the

13

defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff. *Int'l Sales & Serv., Inc. v. Austral Insulated Prod., Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001) (citing *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla. 1994)).

Here, Plaintiff has shown that it had existing contracts or prospective business relationships with various law enforcement agencies and other entities for the sale of its CVSA product and related services. Plaintiff claims Dektor and Mr. Herring knew about these contracts and business relationships and intentionally interfered by making false and disparaging statements about Plaintiff and the CVSA product to dissuade known CVSA users from using NITV's products and instead use Dektor's PSE competing product. NITV is thus entitled to judgment against Dektor on this fourth and final count.

### E.    *Request for Permanent Injunction*

Pursuant to the Lanham Act, a district court may issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a). Injunctive relief is also available to remedy FDUTPA violations. *See* Fla. Stat. § 501.211(1); *Wyndham Vacation Resorts, Inc. v. Timeshares Direct, Inc.*, 2012 WL 3870405 *2-3 (Fla. 5th DCA Sept. 7, 2012). Injunctive relief is a "remedy of choice" in unfair competition cases and is available in the default judgment setting. *See Burger King Corp. v. Agad*, 911 F.Supp. 1499, 1509–10 (S.D. Fla. 1995); *Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1290 (S.D. Fla. 2016). Permanent injunctive relief is appropriate where a plaintiff demonstrates: (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *See eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *Angel Flight of Georgia, Inc. v. Angel Flight America, Inc.*, 522 F.3d

14

1200, 1208 (11th Cir. 2008).

Here, Plaintiff has carried its burden on each of the four factors. As discussed above, Plaintiff is entitled to judgment against Defendants on all four claims asserted in the Complaint. The Court concludes that, absent a permanent injunction, Plaintiff will suffer an irreparable injury as it appears likely that Defendants will continue their campaign of disparaging e-mails, letters, and websites dedicated to damaging Plaintiff's business. The balance of the harms likewise favors issuance of a permanent injunction. Plaintiff has a statutorily protected right to be free from Defendants' deceptive trade practices and Lanham Act violations. The harm to Plaintiff from Defendants' continued activities will be immeasurable and the public interest is served by encouraging fair competition in the marketplace and the provision of accurate and truthful information in a party's advertisements and marketing materials.

## V.    DAMAGES

In addition to permanent injunctive relief, Plaintiff seeks monetary damages. As the Court has made clear in prior rulings, it remains incumbent on NITV to prove the amount of damages to which it is entitled. To be sure, a plaintiff's allegations regarding the amount of damages are not admitted by virtue of default; rather, the Court must determine both the amount and character of damages. Even in the default judgment context, the Court "has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir.2003); *see also Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir.1985) (damages may be awarded on default judgment only if the record adequately reflects the basis for award).

Earlier this same year and approximately nine months ago, Plaintiff sought $1,360,000.00 in base damages, trebled to $4,080,000.00 [DE 88 at 19-20]. At the time, the Court noted that the

15

record was devoid of evidentiary materials to support these claimed damages. The Court thus concluded that "[g]iven the current state of the record, the Court has no reasonable evidentiary basis for computing a damages award" and that for "the Court to simply adopt NITV's estimated damages would be an act of pure speculation." [DE 95 at 15].

Plaintiff now seeks total base damages amount of *$5,990,659.12* against both Defendants. Plaintiff further seeks for this base damage figure be trebled to *$17,871,977.36*, arguing that Defendants' willful disparagement of NITV and Defendants' refusal to participate in this case supports the enhanced damage award. In support, Plaintiff relies on the declaration and testimony of its own corporate representative, Mr. Humble, and the declaration and testimony of two CPA's hired by Plaintiff. While Plaintiff has satisfactory established some damages attributable to Defendants, the evidence presented simply does not support the requested amount of damages sought by Plaintiff.

Damages in a case of this type involve an inherent degree of speculation. For instance, in this case alone, the proposed amount of base damages has changed from $1.3 million to $5.99 million within less than one year. The amount has been requested to be trebled. Not only has the amount changed but the amount determined is also speculative. Mr. Humble chose to use a figure of 10-15% for existing and prospective customers choosing not to buy Plaintiff's product and services for reasons other than Mr. Herring and Dektor. Thus, Mr. Humble speculates that Mr. Herring and Dektor are responsible for 85-90% of the speculated lost sales. Although Mr. Herring and Dektor pointed out alleged defects and disseminated materially false information about Plaintiff's product to existing and prospective customers who would not have heard of any issues, other customers may have learned of these items by their own searches. In the internet age, it is fair to say that clients buying truth verification technology will check that technology on the

16

internet.   Perhaps the court should use 50%, but then the Court itself would be speculating.

The Court accepts as reliable hearsay the evidence of the loss of business in El Paso County, Colorado totaling $37,500.00.  The Court also accepts Mr. Humble's testimony regarding the expenses incurred to attend the Crimes Against Children Conference in 2018 and 2019, $5,660.83 and $6,513.13, respectively.  These accepted amounts total *$49,673.96*.  The Court does not accept that Mr. Herring is the sole reason that the State of Texas did not change its polygraph-only laws.  The Court does not therefore accept Plaintiff's estimate of lost sales in the entire state of Texas.  Taking a minimal approach, and using El Paso County, Colorado as a model, Plaintiff has lost at least ten customers for another *$375,000.00*.  Using these figures, the total amount of proven base damages would be **$424,673.96**.

Turning to Plaintiff's request for treble damages under 15 U.S.C. § 1117(a), the Eleventh Circuit has held that "to be eligible for Lanham Act treble damages, the plaintiff must prove that the defendant's conduct was intentional."  *Vector Prod., Inc. v. Hartford Fire Ins. Co.*, 397 F.3d 1316, 1320 (11th Cir. 2005) (citing *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472 (11th Cir. 1991)).  The Court may, in its discretion, reduce or enhance the resulting award up to three times the amount of profits or damages, whichever is greater, as justice shall require.  *See* 15 U.S.C. § 1117(a).  Such an award is discretionary, but it may not be punitive, and must be based on a showing of actual harm.  *Island Fund Mgmt., Inc. v. RWS, Inc.*, 2019 WL 1466707, at *4 (S.D. Fla. Feb. 11, 2019), report & recommendation adopted, *Island Fund Mgmt., Inc. v. RWS, Inc.*, 2019 WL 1468540 (S.D. Fla. Mar. 12, 2019).

Here, Plaintiff has shown that Defendants intentionally engaged in false advertising, unfair competition, disparagement, and tortious interference under governing federal and Florida law.  As discussed previously, the full extent of damage caused by Defendants will likely never be known

17

given Defendants' refusal to properly participate in discovery. The Court gives some credit to Mr. Herring for appearing before this Court for an evidentiary hearing and making an appropriate, albeit decidedly late, effort to provide relevant information on the matter of damages. Mr. Herring did make some good points, however, his skillful interweaving of some truths with hyperbole and untruths requires a strong sanction.

Ultimately, having presided actively over this case for nearly one year now and having heard from the parties at a recent evidentiary hearing, the Court finds that in light of Defendants' willful violation of the Lanham Act, misuse of the internet to convey materially disparaging information about Plaintiff and Plaintiff's product, and discovery misconduct leading to an additional unknown amount of actual damages, doubling is appropriate here. Accordingly, the Court will award Plaintiff two times the amount of actual damages proved in this case, or **$849,347.92**.

## VI.    **CONCLUSION**

### A.    *Permanent Injunction*

Plaintiff's Motion for Entry of Permanent Injunction Against Defendants [de 134] is **GRANTED**. Defendants, their shareholders, directors, officers, agents, servants, employees, successors, assigns, affiliates, joint venturers, and any and all other persons in active concert, in privity with them are PERMANENTLY ENJOINED from:

(a)    Sending or transmitting any e-mails, text messages, letters, or other written correspondence to any entity (including any law enforcement agency or government agency) or person which contains any false or disparaging remarks or statements about Plaintiff, its CVSA product, or Plaintiff's founder/President, Charles Humble. To avoid any doubt, this restriction specifically includes, but is not limited to: (1) any statement concerning the purported

accuracy/reliability of CVSA; (2) any statement suggesting that Plaintiff and/or its products are a scam or ineffective; (3) any statement concerning the PSE's supposed proven superiority over the CVSA; (4) any statement comparing or equating Plaintiff, its product, or its employees to the German Nazi party or Joseph Goebbels specifically; (5) any statement that Plaintiff's products (including the CVSA) are no more accurate than a coin toss; (6) any statement misrepresenting the pricing of Plaintiff's products; (7) any statement that Mr. Humble received an unearned, fake, or 'store bought' diploma; (8) any statement suggesting that the CVSA is just an expensive prop; (9) any statement that law enforcement agencies continue to use Plaintiff's products in some conspiratorial effort to avoid overturned verdicts or lawsuits from defendants falsely convicted; (10) any statement that any law enforcement officer has been wrongly fired because he flunked/failed a CVSA test yet was being truthful; (11) any statement that the processes/procedures used by Plaintiff (such as numeric scoring, DSR [Delayed Stress Response], cold calling, kinesics, F.A.C.T. and DBR [Defense Barrier Removal]) have no real substance or credibility; (12) any statement that any of the enjoined parties has "heard from" current or former CVSA examiners that there are serious flaws with the CVSA; (13) any statement that some purported 2007 study found serious design flaws with the CVSA that will produce flawed patterns/incorrect results; (14) any statement suggesting that CVSA tests were affected/ruined by persons holding the microphone during the test; (15) any statement that Plaintiff's recertification courses are 'bullshit' type classes and the same information taught in Plaintiff's original training courses; (16) any statement suggesting that Plaintiff 'stole' or misappropriated Dektor's technology; and/or (17) any suggestion that Plaintiff was somehow banned from advertising in insurance magazines or stopped advertising as a result of a drop in sales to law enforcement.

(b)    Making any oral statement (whether in-person, telephonically, or otherwise) to any

19

entity (including any law enforcement agency or government agency) or person which contains any false or disparaging remarks or statements about Plaintiff, its CVSA product, or Plaintiff's founder/President, Charles Humble – including, but not limited to, the examples provided in subparagraph (a) above.

(c)    Publishing or posting any website, blog, or other writing accessible via the internet which contains any false or disparaging remarks or statements about Plaintiff, its CVSA product, or Plaintiff's founder/President, Charles Humble – including, but not limited to, the examples provided in subparagraph (a) above. For the avoidance of doubt, this includes all information published on the www.NITVCVSAexposed.com website, all information published on the http://www.dektorpse.com/information/cvsa/ sub-page, and all mentions of Plaintiff/CVSA/Humble on http://www.dektorpse.com/information/imitations/. The enjoined parties shall *immediately* remove the aforementioned information from the subject websites (to the extent still there) and shall *immediately* remove from public view/unpublish the www.NITVCVSAexposed.com website in its entirety (to the extent still published). To be clear, the above-referenced content is not to be published or re-published on any website, blog, or other writing accessible via the internet and Defendants shall not do so or cooperate or assist any person with doing so.

(d)    Representing or suggesting, explicitly or implicitly, that Dektor and Dektor Counterintelligence and Security, Inc. have any relationship or affiliation, that Dektor has been in business since 1969, that Dektor and Dektor Counterintelligence and Security, Inc. have cooperated in any way, or that Dektor's PSE product is in any way related to the PSE product sold by Dektor Counterintelligence and Security, Inc.

(e)    The Court cautions that well-proven intentional violations of the permanent

20

injunction will be treated very seriously.

### B.    *Damages*

For the reasons discussed above, Plaintiff's Verified Motion for Default Final Judgment

[DE 135] is **GRANTED**.  Final Default Judgment is hereby entered in favor of Plaintiff and

against Defendants in the total amount of **$849,347.92**, representing the total proven base

damages of $424,673.96.  In accordance with Federal Rule of Civil Procedure 58, the Court will

separately enter a final judgment.

DONE AND ORDERED in Chambers at West Palm Beach in the Southern District of

Florida, this 16th day of December, 2019.

DAVE LEE BRANNON
U.S. MAGISTRATE JUDGE

Copy via U.S. Mail:
Mr. Arthur Herring, III, *pro se*
Dektor Corporation
400 E. Station Avenue #400
Coopersburg, PA 18036

EXHIBIT "E"

CLOSED,DLB,MEDREQ,REF_TRL

# U.S. District Court
## Southern District of Florida (West Palm Beach)
## CIVIL DOCKET FOR CASE #: 9:18-cv-80994-DLB

| | |
|---|---|
| NITV Federal Services, LLC v. Dektor Corporation et al | Date Filed: 07/27/2018 |
| Assigned to: Magistrate Judge Dave Lee Brannon | Date Terminated: 12/16/2019 |
| Cause: 15:1125 Trademark Infringement (Lanham Act) | Jury Demand: Plaintiff |
| | Nature of Suit: 840 Trademark |
| | Jurisdiction: Federal Question |

**Plaintiff**

**NITV Federal Services, LLC**                    represented by **James D D'Loughy**
ADVISORLAW PLLC
2925 PGA BLVD, SUITE 204
2613 Bucknell Lane
PALM BEACH GARDENS, FL 33410
5616227788
Fax: 8007345289
Email: jdloughy@advisorlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel DeSouza**
DeSouza Law, P.A.
101 NE Third Avenue
Suite 1500
Fort Lauderdale, FL 33301
954-603-1340
Email: ddesouza@desouzalaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Dektor Corporation**                    represented by **Dektor Corporation**
400 E. Station Avenue
#400
Coopersburg, PA 18036
PRO SE

**Robert David Eckard**
The Law Office of Robert Eckard ,
Associates, P.A.
3110 US Alt. 19 North
Palm Harbor, FL 34683

7277721941
Email: Robert@roberteckardlaw.com
*TERMINATED: 11/02/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott M Wellikoff**
19638 Estuary Drive
Boca Raton, FL 33498
917-816-5058
Email: swellikoff@wellikofflaw.com
*TERMINATED: 02/15/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Arthur Herring, III**                 represented by   **Arthur Herring, III**
400 E. Station Avenue
#225
Coopersburg, PA 18036
PRO SE

**Robert David Eckard**
(See above for address)
*TERMINATED: 11/02/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott M Wellikoff**
(See above for address)
*TERMINATED: 02/15/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/27/2018 | 1 | COMPLAINT against All Defendants. Filing fees $ 400.00 receipt number 113C-10856816, filed by NITV Federal Services, LLC. (Attachments: # 1 Civil Cover Sheet Civil Cover Sheet, # 2 Summon(s) Summons to Herring, # 3 Summon(s) Summons to Dektor)(DeSouza, Daniel) (Entered: 07/27/2018) |
| 07/27/2018 | 2 | Clerks Notice of Judge Assignment to Judge Donald M. Middlebrooks. Pursuant to 28 USC 636(c), the parties are hereby notified that the U.S. Magistrate Judge Dave Lee Brannon is available to handle any or all proceedings in this case. If agreed, parties should complete and file the Consent form found on our website. It is not necessary to file a document indicating lack of consent. (yha) (Entered: 07/27/2018) |

| 07/27/2018 | 3 | Summons Issued as to All Defendants. (yha) (Entered: 07/27/2018) |
|---|---|---|
| 07/27/2018 | 4 | FORM AO 120 SENT TO DIRECTOR OF U.S. PATENT AND TRADEMARK (yha) (Entered: 07/27/2018) |
| 07/31/2018 | 5 | NOTICE of Attorney Appearance by James D D'Loughy on behalf of NITV Federal Services, LLC (D'Loughy, James) (Entered: 07/31/2018) |
| 08/06/2018 | 6 | ORDER REFERRING CASE to Magistrate Judge Dave Lee Brannon for Scheduling Order with notices (NEFs for Events only) for all filings in case, and Setting Trial Date. ( Calendar Call set for 4/10/2019 01:15 PM in West Palm Beach Division before Judge Donald M. Middlebrooks., Jury Trial set for 4/15/2019 09:00 AM in West Palm Beach Division before Judge Donald M. Middlebrooks.). Signed by Judge Donald M. Middlebrooks on 8/6/2018. *See attached document for full details.* (ls) (Entered: 08/06/2018) |
| 08/07/2018 | 7 | SUMMONS (Affidavit) Returned Executed on 1 Complaint, with a 21 day response/answer filing deadline by NITV Federal Services, LLC. Dektor Corporation served on 8/3/2018, answer due 8/24/2018. (DeSouza, Daniel) (Entered: 08/07/2018) |
| 08/13/2018 | 8 | PRETRIAL SCHEDULING ORDER: ( Amended Pleadings due by 10/1/2018., All Discovery due by 1/14/2019., Joinder of Parties due by 10/1/2018., In Limine Motions due by 2/4/2019., Motions due by 2/4/2019., Pretrial Stipulation due by 3/18/2019.), and ORDER REFERRING CASE to Mediation.. Signed by Magistrate Judge Dave Lee Brannon on 8/13/2018. *See attached document for full details.* (ls) <br><br> **Pattern Jury Instruction Builder** - To access the latest, up to date changes to the 11th Circuit Pattern Jury Instructions go to https://pji.ca11.uscourts.gov or click here. (Entered: 08/13/2018) |
| 08/16/2018 | 9 | NOTICE of Attorney Appearance by Robert David Eckard on behalf of Dektor Corporation, Arthur Herring, III. Attorney Robert David Eckard added to party Dektor Corporation(pty:dft), Attorney Robert David Eckard added to party Arthur Herring, III(pty:dft). (Eckard, Robert) (Entered: 08/16/2018) |
| 08/21/2018 | 10 | SUMMONS (Affidavit) Returned Executed on 1 Complaint, with a 21 day response/answer filing deadline by NITV Federal Services, LLC. All Plaintiffs. (D'Loughy, James) (Entered: 08/21/2018) |
| 08/22/2018 | 11 | Unopposed Motion for Extension of Time to File Response/Reply/Answer as to 1 Complaint by Dektor Corporation, Arthur Herring, III. Responses due by 9/5/2018 (Eckard, Robert) Modified Relief on 8/22/2018 (ls). (Entered: 08/22/2018) |
| 08/22/2018 | 12 | Clerks Notice to Filer re 11 First MOTION for Extension of Time to respond to Plaintiff's Complaint . **Wrong Motion Relief(s) Selected**; ERROR - The Filer selected the wrong motion relief(s) when docketing the motion. The correction was made by the Clerk. It is not necessary to refile this document but future motions filed must include applicable reliefs. (ls) (Entered: 08/22/2018) |
| 08/23/2018 | 13 | |

| | | |
|---|---|---|
| | | PAPERLESS ORDER granting <u>11</u> Motion for Extension of Time. The Court will extend the deadline for a response to Plaintiff's Complaint to September 6, 2018, as requested. However, this extended deadline does not excuse the Parties from compliance with the pretrial deadlines previously set by the Court (see DE 8), all of which remain in effect. Signed by Judge Donald M. Middlebrooks on 8/23/2018. (kal) (Entered: 08/23/2018) |
| 08/29/2018 | <u>14</u> | Joint SCHEDULING REPORT - **Rule 26(f)** by NITV Federal Services, LLC (DeSouza, Daniel) (Entered: 08/29/2018) |
| 09/05/2018 | <u>15</u> | MOTION to Dismiss for Lack of Jurisdiction <u>1</u> Complaint, *and Incorporated Memorandum of Law* by Dektor Corporation, Arthur Herring, III. Responses due by 9/19/2018 (Attachments: # <u>1</u> Affidavit Declaration)(Eckard, Robert) (Entered: 09/05/2018) |
| 09/06/2018 | <u>16</u> | NOTICE by Dektor Corporation, Arthur Herring, III re <u>15</u> MOTION to Dismiss for Lack of Jurisdiction <u>1</u> Complaint, *and Incorporated Memorandum of Law Defendants' Notice of filing Corrected Declaration due to Scriveners Error to Doc 15-1* (Attachments: # <u>1</u> Affidavit Declaration) (Eckard, Robert) (Entered: 09/06/2018) |
| 09/09/2018 | <u>17</u> | Certificate of Interested Parties/Corporate Disclosure Statement by NITV Federal Services, LLC (DeSouza, Daniel) (Entered: 09/09/2018) |
| 09/13/2018 | <u>18</u> | MOTION for Extension of Time to File Response/Reply/Answer as to <u>15</u> MOTION to Dismiss for Lack of Jurisdiction <u>1</u> Complaint, *and Incorporated Memorandum of Law* by NITV Federal Services, LLC. (Attachments: # <u>1</u> Exhibit A - Proposed First Request for Production (Jurisdictional Discovery), # <u>2</u> Exhibit B - Proposed First Set of Interrogatories (Jurisdictional Discovery)) (DeSouza, Daniel) . (Entered: 09/13/2018) |
| 09/14/2018 | 19 | PAPERLESS ORDER REQUIRING EXPEDITED BRIEFING. Plaintiff has filed a Motion for Extension of Time (DE <u>18</u> ) seeking more time to respond to Defendants' Motion to Dismiss (DE <u>15</u> ). Plaintiff states that the Motion to Dismiss is premised on lack of personal jurisdiction over Defendants, and Plaintiff argues that additional jurisdictional discovery is required before Plaintiff can formulate a response. The certificate of conferral indicates that Defendants object to the relief requested. Defendant is therefore directed to file a response to Plaintiff's Motion for Extension of Time (DE <u>18</u> ) on or before September 18, 2018. Any reply must be filed by September 20, 2018. Signed by Judge Donald M. Middlebrooks on 9/14/2018. (kal) (Entered: 09/14/2018) |
| 09/17/2018 | <u>20</u> | WITHDRAWN MOTION for Extension of time to Respond to Order Requiring Expedited Briefing on Plaintiff's Motion for Extension of Time to Respond to Motion to Dismiss (D.E. 19) by Dektor Corporation, Arthur Herring, III. (Eckard, Robert) Modified on 9/17/2018 (dj). Modified on 9/19/2018 withdrawn per de# <u>22</u> (dj). (Entered: 09/17/2018) |
| 09/17/2018 | 21 | Clerks Notice to Filer re <u>20</u> Response/Reply (Other),. **Wrong Event Selected - Document is a Motion**; ERROR - The Filer selected the wrong event. A motion event must always be selected when filing a motion. The correction |

| | | was made by the Clerk. It is not necessary to refile this document. (dj) (Entered: 09/17/2018) |
|---|---|---|
| 09/18/2018 | 22 | NOTICE OF WITHDRAWAL OF MOTION by Dektor Corporation, Arthur Herring, III re 20 Motion for Extension of Time filed by Dektor Corporation, Arthur Herring, III (Eckard, Robert) (Entered: 09/18/2018) |
| 09/18/2018 | 23 | RESPONSE in Opposition re 18 MOTION for Extension of Time to File Response/Reply/Answer as to 15 MOTION to Dismiss for Lack of Jurisdiction 1 Complaint, *and Incorporated Memorandum of Law* filed by Dektor Corporation, Arthur Herring, III. Replies due by 9/25/2018. (Eckard, Robert) (Entered: 09/18/2018) |
| 09/19/2018 | 24 | REPLY to Response to Motion re 18 MOTION for Extension of Time to File Response/Reply/Answer as to 15 MOTION to Dismiss for Lack of Jurisdiction 1 Complaint, *and Incorporated Memorandum of Law* filed by NITV Federal Services, LLC. (Attachments: # 1 Exhibit A - August 31 Request for Production, # 2 Exhibit B - August 31 Interrogatories)(DeSouza, Daniel) (Entered: 09/19/2018) |
| 09/23/2018 | 25 | PAPERLESS ORDER granting 18 Motion for Extension of Time. Plaintiff moved for additional time to respond to Defendants' Motion to Dismiss (DE 15 ) for the purpose of engaging in limited jurisdictional discovery. Defendants oppose the motion, arguing that Plaintiff seeks an impermissible fishing expedition in order to cure a fatal jurisdictional defect. (DE 23 at 2). "Although the plaintiff bears the burden of proving the court's jurisdiction, the plaintiff should be given the opportunity to discover facts that would support his allegations of jurisdiction." Majd-Pour v. Georgiana Community Hosp., Inc., 724 F.2d 901, 903 (11th Cir. 1984) (determining district court's dismissal without affording the plaintiff any opportunity to proceed with discovery was abuse of discretion). Plaintiff's request for an extension of time is granted, and Plaintiff may proceed with the discovery described in its motion. The deadline for Plaintiff to respond to Defendants' Motion to Dismiss (DE 15 ) is extended to October 23, 2018. No other deadlines are extended or modified as a result of this order. Signed by Judge Donald M. Middlebrooks on 9/23/2018. (kal) (Entered: 09/23/2018) |
| 09/27/2018 | 26 | Unopposed MOTION to Amend/Correct 8 Scheduling Order,,, Order Referring Case to Mediation,, by NITV Federal Services, LLC. Responses due by 10/11/2018 (DeSouza, Daniel) (Entered: 09/27/2018) |
| 09/28/2018 | 27 | PAPERLESS ORDER granting 26 Unopposed Motion to Amend Scheduling order. The deadline for the Parties to amend pleadings and join additional parties is hereby extended to November 26, 2018. No other deadlines are modified or extended as a result of this Order. Signed by Judge Donald M. Middlebrooks on 9/28/2018. (kal) (Entered: 09/28/2018) |
| 09/28/2018 | 28 | NOTICE by Dektor Corporation, Arthur Herring, III *of Service of Rule 26 Disclosures* (Eckard, Robert) (Entered: 09/28/2018) |
| 10/17/2018 | 29 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 15 MOTION to Dismiss for Lack of Jurisdiction 1 Complaint, *and* |

| | | *Incorporated Memorandum of Law* by NITV Federal Services, LLC. (Attachments: # 1 Exhibit A - Dektor Responses to Jurisdictional Interrogatories)(DeSouza, Daniel) (Entered: 10/17/2018) |
|---|---|---|
| 10/18/2018 | 30 | PAPERLESS ORDER granting 29 Unopposed Motion for Extension of Time. The deadline for Plaintiff to respond to Defendant's Motion to Dismiss (DE 15 ) is extended to November 6, 2018. No other deadlines are extended or modified as a result of this Order. Requests for further extensions will only be granted upon a compelling showing of good cause supported by specific facts. Signed by Judge Donald M. Middlebrooks on 10/18/2018. (kal) (Entered: 10/18/2018) |
| 10/19/2018 | 31 | Unopposed MOTION to Withdraw as Attorney by Robert D. Eckard for / by Dektor Corporation, Arthur Herring, III. Responses due by 11/2/2018 (Attachments: # 1 Exhibit Clients Request and Stipulation for Counsel's withdrawal, # 2 Exhibit Order on Stipulated Motion to Withdraw as Counsel for Defendants)(Eckard, Robert) (Entered: 10/19/2018) |
| 10/22/2018 | 32 | MOTION to Compel *Defendants' Depositions* ( Responses due by 11/5/2018), MOTION for Sanctions by NITV Federal Services, LLC. (DeSouza, Daniel) (Entered: 10/22/2018) |
| 10/23/2018 | 33 | PAPERLESS ORDER REQUIRING EXPEDITED BRIEFING. This cause is before the Court on Plaintiff's Motion to Compel Defendants' Depositions and for Sanctions(DE 32 ). Plaintiff states that its attempts to conduct jurisdictional discovery, in order to respond to Defendants' Motion to Dismiss (DE 15 ), have been frustrated by Defendant Arthur Herring III's failure to appear at two scheduled depositions. (DE 32 at 2). Plaintiff now seeks to compel Defendant Herring's presence at a deposition scheduled for tomorrow, October 24, 2018. Defendants are ORDERED to file a response to Plaintiff's Motion to Compel (DE 32 ) no later than 5:00 PM today, October 23, 2018. Counsel for Defendants are further advised that the Court is disinclined to rule on Defendants' Motion to Withdraw as Attorney until the concerns underlying Plaintiff's Motion to Compel are resolved. Signed by Judge Donald M. Middlebrooks on 10/23/2018. (kal) (Entered: 10/23/2018) |
| 10/23/2018 | 34 | RESPONSE to Motion re 32 MOTION to Compel *Defendants' Depositions* MOTION for Sanctions filed by Dektor Corporation, Arthur Herring, III. Replies due by 10/30/2018. (Eckard, Robert) (Entered: 10/23/2018) |
| 10/23/2018 | 35 | RESPONSE to Motion re 32 MOTION to Compel *Defendants' Depositions* MOTION for Sanctions *Amended Response* filed by Dektor Corporation, Arthur Herring, III. Replies due by 10/30/2018. (Eckard, Robert) (Entered: 10/23/2018) |
| 10/24/2018 | 36 | NOTICE of Compliance *of Defendants' Attendance at Deposition* by Dektor Corporation, Arthur Herring, III re 32 MOTION to Compel *Defendants' Depositions* MOTION for Sanctions filed by NITV Federal Services, LLC (Eckard, Robert) (Entered: 10/24/2018) |
| 10/24/2018 | 37 | |

| | | |
|---|---|---|
| | | REPLY to Response to Motion re 32 MOTION to Compel *Defendants' Depositions* MOTION for Sanctions filed by NITV Federal Services, LLC. (DeSouza, Daniel) (Entered: 10/24/2018) |
| 10/25/2018 | 38 | PAPERLESS ORDER denying as moot 32 Motion to Compel and denying sanctions. Plaintiff moves, after two attempts to depose Defendant Arthur Herring III in the course of jurisdictional discovery, for the Court to compel Defendant Herring's deposition. (DE 32 ). Plaintiff also asks the Court to levy sanctions against Defendants' counsel for the cost of the court reporter's appearance at the second cancelled deposition. (DE 32 at para 11). After this Court ordered expedited briefing (DE 33 ), Defendants filed a response assuring the Court that Defendant Herring would appear at the deposition scheduled for October 24, 2018 (DE 35 ). Defendant subsequently filed a Notice of Compliance attesting to Defendant Herring's presence at the deposition. (DE 36 ). Accordingly, with respect to Defendant Herring's attendance at the deposition, Plaintiff's motion is DENIED AS MOOT. Defendants' response does not address Plaintiff's request for sanctions, but in light of Defendants' good-faith explanations for Defendant Herring's prior nonappearances and Counsel for Defendants' previously filed Motion to Withdraw as Attorney (DE 31 ) on account of "irreconcilable differences" (DE 35 at para 5), Plaintiffs motion is DENIED with respect to sanctions. Signed by Judge Donald M. Middlebrooks on 10/25/2018. (kal) (Entered: 10/25/2018) |
| 10/30/2018 | 39 | MOTION to Compel *Deposition Testimony, Production of Documents, and Forensic Examination* by NITV Federal Services, LLC. Responses due by 11/13/2018 (Attachments: # 1 Exhibit 1 - First Request for Production, # 2 Exhibit 2 - First Set of Interrogatories, # 3 Exhibit 3 - Jurisdictional Document Requests, # 4 Exhibit 4 - Jurisdictional Interrogatories, # 5 Exhibit 5 - Defendants' Amended Responses to First Request for Production, # 6 Exhibit 6 - Defendants' Amended Responses to First Set of Interrogatories, # 7 Exhibit 7 - Defendants' Responses to Jurisdictional Document Requests, # 8 Exhibit 8 - Defendants' Responses to Jurisdictional Interrogatories, # 9 Exhibit 9 - Emails, # 10 Exhibit 10 - 30(b)(6) Notice, # 11 Exhibit 11 - Herring Deposition Transcript)(DeSouza, Daniel) (Entered: 10/30/2018) |
| 11/01/2018 | 40 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 15 MOTION to Dismiss for Lack of Jurisdiction 1 Complaint, *and Incorporated Memorandum of Law* by NITV Federal Services, LLC. (Attachments: # 1 Exhibit 1 - Email)(DeSouza, Daniel) (Entered: 11/01/2018) |
| 11/02/2018 | 41 | ORDER granting 31 Motion to Withdraw Counsel. Robert David Eckard withdrawn from case. Signed by Judge Donald M. Middlebrooks on 11/2/2018. *See attached document for full details.* (mc) (Entered: 11/02/2018) |
| 11/02/2018 | 42 | PAPERLESS ORDER granting 40 Unopposed Motion for Extension of Time. The deadline for Plaintiff to respond to Defendants' Motion to Dismiss (DE 15 ) is extended to November 16, 2018. No other deadlines are modified or extended as a result of this order. Signed by Judge Donald M. Middlebrooks on 11/2/2018. (kal) (Entered: 11/02/2018) |
| 11/05/2018 | 43 | |

| | | |
|---|---|---|
| | | MOTION to Amend/Correct <u>8</u> Scheduling Order,,, Order Referring Case to Mediation,, by NITV Federal Services, LLC. Responses due by 11/19/2018 (DeSouza, Daniel) (Entered: 11/05/2018) |
| 11/06/2018 | <u>44</u> | NOTICE by NITV Federal Services, LLC re <u>43</u> MOTION to Amend/Correct <u>8</u> Scheduling Order,,, Order Referring Case to Mediation,, *Notice of Defendants' Opposition* (DeSouza, Daniel) (Entered: 11/06/2018) |
| 11/06/2018 | <u>45</u> | INSTRUCTIONS TO PRO SE LITIGANT AND DIRECTIONS TO PLAINTIFF REGARDING SERVICE OF COURT FILINGS. Signed by Judge Donald M. Middlebrooks on 11/6/2018. *See attached document for full details.* (mc) (Entered: 11/06/2018) |
| 11/09/2018 | 46 | PAPERLESS ORDER granting in part <u>43</u> Motion for Extension of Time. Plaintiff NITV Federal Services, LLC moves to extend by sixty days the deadline to make its expert witness disclosures. Plaintiff states that such an extension is necessary because Defendants have not participated in discovery, and notes that it has separately filed a Motion to Compel production. (DE <u>39</u> ). Plaintiff filed along with its motion to extend a Notice stating that Defendants Dektor Corporation and Arthur Herring, III, object to the relief requested. (DE <u>44</u> ). In light of Defendant Dektor Corporation's need to acquire counsel in order to respond to the pending Motion to Compel, the Court finds that a delay in the proceedings is inevitable and an extension is warranted over Defendants' objection. The deadline for Plaintiff to make its expert witness disclosures is extended to December 5, 2018. A corresponding extension will be permitted for Defendants' expert disclosure if requested. No other deadlines are modified or extended as a result of this Order, and this extension shall not constitute good cause to later seek modifications of other pretrial deadlines. Signed by Judge Donald M. Middlebrooks on 11/9/2018. (kal) (Entered: 11/09/2018) |
| 11/14/2018 | <u>47</u> | (STRICKEN per DE <u>51</u> ) DEFENDANT'S MOTION to Dismiss Motion to Compel <u>39</u> MOTION to Compel *Deposition Testimony, Production of Documents, and Forensic Examination* by Dektor Corporation, Arthur Herring, III. Responses due by 11/28/2018 (drz) Modified text on 11/19/2018 (mc). (Entered: 11/14/2018) |
| 11/15/2018 | <u>48</u> | MOTION for Extension of Time to File Response/Reply/Answer as to <u>15</u> MOTION to Dismiss for Lack of Jurisdiction <u>1</u> Complaint, *and Incorporated Memorandum of Law* by NITV Federal Services, LLC. (DeSouza, Daniel) (Entered: 11/15/2018) |
| 11/15/2018 | <u>49</u> | REPLY to Response to Motion re <u>39</u> MOTION to Compel *Deposition Testimony, Production of Documents, and Forensic Examination* filed by NITV Federal Services, LLC. (DeSouza, Daniel) (Entered: 11/15/2018) |
| 11/16/2018 | <u>50</u> | RESPONSE in Opposition re <u>15</u> MOTION to Dismiss for Lack of Jurisdiction <u>1</u> Complaint, *and Incorporated Memorandum of Law* filed by NITV Federal Services, LLC. Replies due by 11/23/2018. (Attachments: # <u>1</u> Exhibit 1 - Herring Transcript, # <u>2</u> Exhibit 2 - Declaration)(DeSouza, Daniel) (Entered: 11/16/2018) |
| 11/19/2018 | <u>51</u> | |

| | | OMNIBUS ORDER striking 47 Motion to Dismiss Motion to Compel; granting 48 Motion for Extension of Time. (Deadline to obtain new counsel 12/7/2018. Responses due by 1/7/2019 re: 15 Motion to Dismiss). Signed by Judge Donald M. Middlebrooks on 11/19/2018. *See attached document for full details.* (mc) (Entered: 11/19/2018) |
|---|---|---|
| 12/07/2018 | 52 | NOTICE of Attorney Appearance by Scott M Wellikoff on behalf of Dektor Corporation, Arthur Herring, III. Attorney Scott M Wellikoff added to party Dektor Corporation(pty:dft), Attorney Scott M Wellikoff added to party Arthur Herring, III(pty:dft). (Wellikoff, Scott) (Entered: 12/07/2018) |
| 12/14/2018 | 53 | NOTICE by Dektor Corporation, Arthur Herring, III re 15 MOTION to Dismiss for Lack of Jurisdiction 1 Complaint, *and Incorporated Memorandum of Law* (Wellikoff, Scott) (Entered: 12/14/2018) |
| 12/14/2018 | 54 | NOTICE by Dektor Corporation, Arthur Herring, III re 39 MOTION to Compel *Deposition Testimony, Production of Documents, and Forensic Examination* (Attachments: # 1 Proposed Agreed Order) (Wellikoff, Scott) (Entered: 12/14/2018) |
| 01/04/2019 | 55 | ORDER granting in part 39 Motion to Compel. Signed by Judge Donald M. Middlebrooks on 1/4/2019. *See attached document for full details.* (ar2) (Entered: 01/07/2019) |
| 01/09/2019 | 56 | Agreed MOTION for Extension of Time to extend deadlines in Trial Order and Pretrial Trail Order and for a Continuance of Trial re 8 Scheduling Order,,, Order Referring Case to Mediation,, 6 Order Referring Case to Magistrate Judge,, Set/Reset Hearings, by Dektor Corporation, Arthur Herring, III. Responses due by 1/23/2019 (Attachments: # 1 Exhibit A-affidavit in support, # 2 Exhibit B-proposed order)(Wellikoff, Scott) (Entered: 01/09/2019) |
| 01/10/2019 | 57 | RESPONSE in Opposition re 15 MOTION to Dismiss for Lack of Jurisdiction 1 Complaint, *and Incorporated Memorandum of Law* filed by NITV Federal Services, LLC. Replies due by 1/17/2019. (DeSouza, Daniel) (Entered: 01/10/2019) |
| 01/17/2019 | 58 | REPLY to Response to Motion re 15 MOTION to Dismiss for Lack of Jurisdiction 1 Complaint, *and Incorporated Memorandum of Law* filed by Dektor Corporation, Arthur Herring, III. (Attachments: # 1 Exhibit Exhibit A to Reply)(Wellikoff, Scott) (Entered: 01/17/2019) |
| 01/23/2019 | 59 | NOTICE by NITV Federal Services, LLC *Notice of Taking Deposition Duces Tecum* (D'Loughy, James) (Entered: 01/23/2019) |
| 01/23/2019 | 60 | ORDER granting in part and denying in part 56 Motion for Extension and Continuance. Discovery due by 3/1/2019. In Limine Motions due by 3/4/2019. Motions due by 3/4/2019. Signed by Judge Donald M. Middlebrooks on 1/23/2019. *See attached document for full details.* (mc) (Entered: 01/24/2019) |
| 02/05/2019 | 61 | MOTION for Leave to File *Sur-Reply to Motion to Dismiss* by NITV Federal Services, LLC. (DeSouza, Daniel) (Entered: 02/05/2019) |
| 02/06/2019 | 62 | PAPERLESS ORDER denying 61 Motion for Leave to File. Plaintiff seeks to file a sur-reply to Defendants' Motion to Dismiss (DE 15 ) on the basis that |

|  |  | Defendants' Reply (DE 58 ) improperly challenges factual allegations contained in a declaration attached to the Response in Opposition to Defendant's Motion to Dismiss (DE 50 -2) filed by Plaintiff prior to Defendants' notice of its withdrawal of the jurisdictional arguments in its Motion to Dismiss (DE 53 ). As Plaintiff notes, the memorandum is not relevant to the remaining issues in Plaintiff's Motion to Dismiss, and resolution of the contested facts is unwarranted at this stage of the litigation. Accordingly, Plaintiff's Motion for Leave to File Sur-Reply (DE 61 ) is denied. Signed by Judge Donald M. Middlebrooks on 2/6/2019. (kal) (Entered: 02/06/2019) |
|---|---|---|
| 02/06/2019 | 63 | Joint Notice and Consent to Jurisdiction US Magistrate Judge signed by all parties . Filed by NITV Federal Services, LLC (DeSouza, Daniel) (Entered: 02/06/2019) |
| 02/08/2019 | 64 | Joint MOTION to Amend/Correct *Scheduling Order* by NITV Federal Services, LLC. Responses due by 2/22/2019 (DeSouza, Daniel) (Entered: 02/08/2019) |
| 02/08/2019 | 65 | ORDER on Forensic Analysis Protocols re 55 Order on Motion to Compel, 39 MOTION to Compel *Deposition Testimony, Production of Documents, and Forensic Examination* filed by NITV Federal Services, LLC Signed by Judge Donald M. Middlebrooks *See attached document for full details.* (drz) (Entered: 02/08/2019) |
| 02/08/2019 | 66 | Order of Reference. Judge Donald M. Middlebrooks no longer assigned as presider/referral judge(s) in case. Signed by Judge Donald M. Middlebrooks on 2/8/2019. *See attached document for full details.* (drz) (Entered: 02/08/2019) |
| 02/08/2019 | 67 | PAPERLESS ORDER SETTING TELEPHONIC STATUS CONFERENCE: To facilitate matters in this newly-referred consent case, a telephonic status conference is set for Friday, February 15, 2019, at 2:30 P.M. At that time, counsel shall call (888) 808-6929 and enter access code 2036573. Counsel should confer beforehand and be prepared to briefly discuss: (1) an estimate of the time required for trial, (2) proposed new trial dates, (3) any proposed changes to existing pretrial deadlines, and (4) the available option of having a settlement conference before U.S. Magistrate Judge William Matthewman. Signed by U.S. Magistrate Judge Dave Lee Brannon on 2/8/2019. (jrz) (Entered: 02/08/2019) |
| 02/08/2019 | 68 | Unopposed MOTION to Withdraw as Attorney by Scott Wellikoff for / by Dektor Corporation, Arthur Herring, III. Responses due by 2/22/2019 (Attachments: # 1 Exhibit Exhibit A-Client Consent to Withdrawal, # 2 Exhibit Exhibit B-Proposed Order)(Wellikoff, Scott) (Entered: 02/08/2019) |
| 02/08/2019 | 69 | ORDER SETTING DISCOVERY PROCEDURE. Signed by Magistrate Judge Dave Lee Brannon on 2/8/2019. *See attached document for full details.* (drz) (Entered: 02/11/2019) |
| 02/15/2019 | 70 | PAPERLESS MINUTE ENTRY for proceedings held before U.S. Magistrate Judge Dave Lee Brannon: Telephonic Status Conference held on 2/15/19. Appearances: James D'Loughy, Esq. & Daniel DeSouza, Esq. for Plaintiff \| Scott Wellikoff, Esq. & Arthur Herring III for Defendants. Court discusses |

| | | |
|---|---|---|
| | | pretrial matters and three outstanding motions. With Defendants' consent, defense counsel shall be permitted to withdraw. Defendants to secure new counsel and file an Answer to the Complaint by Monday, March 4, 2019. Five-day trial set to begin on October 28, 2019. Plaintiffs raise discovery dispute re: forensic examination of a damaged hard drive located in Pennsylvania. Mr. Herring assures Court that he has no intention of taking possession of the damaged hard drive prior to the forensics examination. Court reserves ruling and requires any additional submissions of five pages or less on this issue to be sent via email (brannon@flsd.uscourts.gov) before Thursday, February 21, 2019. Orders to follow. (Time in Court: 31 mins. | Digital: 14:27:31) (jrz) (Entered: 02/15/2019) |
| 02/15/2019 | 71 | ORDER Denying 15 Defendants' Motion to Dismiss. Defendants shall file an answer to the Complaint on or before Monday, March 4, 2019. Signed by Magistrate Judge Dave Lee Brannon on 2/15/2019. *See attached document for full details.* (spe) (Entered: 02/15/2019) |
| 02/15/2019 | | Reset Answer Due Deadline: Dektor Corporation response due 3/4/2019; Arthur Herring, III response due 3/4/2019. Per DE 71 . (spe) (Entered: 02/15/2019) |
| 02/15/2019 | 72 | ORDER granting 68 Defendants' Unopposed Motion to Withdraw as Counsel for Defendants. Deadline to obtain new counsel 3/4/2019. Signed by Magistrate Judge Dave Lee Brannon on 2/15/2019. *See attached document for full details.* (spe) (Entered: 02/15/2019) |
| 02/15/2019 | 73 | ORDER granting 64 - Setting Jury Trial Before U.S. Magistrate Judge and Amended Pretrial Scheduling Order Discovery due by 7/1/2019. Expert Discovery due by 7/18/2019. Joinder of Parties due by 3/18/2019. Mediation Deadline 8/29/2019. Dispositive Motions due by 7/15/2019. In Limine Motions due by 7/15/2019. Motions due by 7/15/2019. Pretrial Stipulation due by 9/23/2019. Jury Trial set for 10/28/2019 at 9:30 AM in West Palm Beach Division before Magistrate Judge Dave Lee Brannon. Status Conference set for 10/23/2019 at 1:30 PM in West Palm Beach Division before Magistrate Judge Dave Lee Brannon. Signed by Magistrate Judge Dave Lee Brannon on 2/15/2019. *See attached document for full details.* (spe) (Entered: 02/15/2019) |
| 02/20/2019 | 74 | PAPERLESS ORDER SETTING DISCOVERY HEARING: Upon notice by Defendant Arthur Herring III of a discovery dispute requiring Court intervention, a discovery hearing is set for 2:00 P.M. on Wednesday, February 27, 2019, 4th Floor, Courtroom 3, in the West Palm Beach Division. All parties or their counsel must appear in person. One hour is reserved. Signed by U.S. Magistrate Judge Dave Lee Brannon on 2/20/2019. (jrz) (Entered: 02/20/2019) |
| 02/21/2019 | 75 | Unopposed MOTION to Continue *Hearing* by NITV Federal Services, LLC. Responses due by 3/7/2019 (D'Loughy, James) (Entered: 02/21/2019) |
| 02/21/2019 | 76 | PAPERLESS ORDER: Upon due consideration of the parties' position statements on pending discovery matters, the Court finds a discovery hearing unnecessary at this time. With regard to Mr. Herring's concern about Plaintiff's alleged refusal to turn over documents, Plaintiff's counsel represents that written responses to Defendants' requests have been timely served and that |

|  |  | responsive documents will be served upon Defendants within the next two weeks. Plaintiff's counsel is preparing a proposed confidentiality agreement for review by Mr. Herring and will confer with Mr. Herring regarding any objections lodged as required by governing rules and procedures. These are perfectly appropriate measures. With regard to the damaged laptop hard drive, Plaintiff shall be entitled to have the damaged drive analyzed by Plaintiff's designated forensic expert at the "clean room" facility in Orlando, Florida. The forensic review shall be conducted in full accordance with the Court's Order on Forensic Analysis Protocols 65 and shall be completed by or before March 14, 2019, or by such other date as is mutually agreed to by the parties. The parties shall confer and agree on a procedure for delivering the hard drive from the IT safe in Pennsylvania to Orlando for review. Should Defendants wish, Defendants shall be permitted to send a designated IT professional at Defendants' own expense to observe the forensic review in Orlando. In light of these rulings, the discovery hearing set for 2:00 P.M. on 2/27/19 is CANCELLED. Plaintiff's related Motion to Continue Hearing 75 is DENIED AS MOOT. Signed by U.S. Magistrate Judge Dave Lee Brannon on 2/21/2019. (jrz) (Entered: 02/21/2019) |
|---|---|---|
| 02/27/2019 | 77 | PAPERLESS ORDER: Plaintiff's counsel has notified the Court of a discovery dispute involving a proposed confidentiality agreement. Considering the present posture of this case--including a *pro se* Defendant located in Pennsylvania who is seeking new counsel to represent him and his corporation--the Court finds written briefing to be the best course of action. Accordingly, Plaintiff shall have until Wednesday, March 6, 2019, to file an appropriate motion addressing the parties' discovery dispute. Any response shall be filed by Wednesday, March 13, 2019. Signed by U.S. Magistrate Judge Dave Lee Brannon on 2/27/2019. (jrz) (Entered: 02/27/2019) |
| 02/28/2019 | 78 | MOTION to Compel *Defendants to Produce Damaged Hard Drive* by NITV Federal Services, LLC. Responses due by 3/14/2019 (Attachments: # 1 Exhibit A - Feb 27 Email, # 2 Exhibit B - Feb 28 Email)(DeSouza, Daniel) (Entered: 02/28/2019) |
| 02/28/2019 | 79 | MOTION for Protective Order by NITV Federal Services, LLC. (Attachments: # 1 Exhibit A - Feb 23 email with draft agreement, # 2 Exhibit B - Feb 26 email)(DeSouza, Daniel) (Entered: 02/28/2019) |
| 03/01/2019 | 80 | NOTICE OF WITHDRAWAL OF MOTION by NITV Federal Services, LLC re 79 MOTION for Protective Order filed by NITV Federal Services, LLC (DeSouza, Daniel) (Entered: 03/01/2019) |
| 03/01/2019 | 81 | Amended MOTION for Protective Order by NITV Federal Services, LLC. (Attachments: # 1 Exhibit A - February 23 email, # 2 Exhibit B - February 26 email, # 3 Text of Proposed Order Proposed Protective Order)(DeSouza, Daniel) (Entered: 03/01/2019) |
| 03/05/2019 | 82 | MOTION for Court Entry of Default as to Dektor Corporation by NITV Federal Services, LLC. (DeSouza, Daniel) Modified on 3/5/2019 (dj). (Entered: 03/05/2019) |
| 03/05/2019 | 83 |  |

| | | |
|---|---|---|
| | | ORDER TO SHOW CAUSE Show Cause Response due by 3/11/2019. Signed by Magistrate Judge Dave Lee Brannon on 3/5/2019. *See attached document for full details.* (spe) (Entered: 03/05/2019) |
| 03/12/2019 | 84 | ORDER Granting Motion for Default re 82 MOTION for Clerks Entry of Default as to Dektor Corporation filed by NITV Federal Services, LLC, Motions terminated: 82 MOTION for Clerks Entry of Default as to Dektor Corporation filed by NITV Federal Services, LLC. Motions terminated: 82 MOTION for Clerks Entry of Default as to Dektor Corporation filed by NITV Federal Services, LLC. Signed by Magistrate Judge Dave Lee Brannon on 3/12/2019. *See attached document for full details.* (drz) (Entered: 03/12/2019) |
| 03/12/2019 | 85 | Clerks Entry of Default as to Dektor Corporation per Order Directing Clerk to Enter Default Re: 84 Order,,, Terminate Motions,,. Signed by DEPUTY CLERK on 3/12/2019. (drz) (Entered: 03/12/2019) |
| 03/15/2019 | 86 | PAPERLESS ORDER granting by default Plaintiff's Motion to Compel Defendants to Produce Damaged Hard Drive 78 . Defendants have not timely responded to the Motion or otherwise demonstrated compliance with the Court's prior Order 76 . Accordingly, Defendants shall forthwith instruct IT Professional, Matt Vanderhoff, to deliver the "damaged" hard drive to Plaintiff's forensic expert, Andy Reisman, in Orlando and cease all interference with such delivery. Non-compliance with this Order may be grounds for the imposition of sanctions, up to and including civil contempt. The Court declines to award attorneys' fees incurred in connection with Plaintiff's motion at this time, but cautions Defendants that it will not hesitate to award such fees in the future should circumstances warrant. Signed by U.S. Magistrate Judge Dave Lee Brannon on 3/15/2019. (jrz) (Entered: 03/15/2019) |
| 03/15/2019 | 87 | ORDER granting 81 Amended Motion for Entry of Protective Order. Signed by Magistrate Judge Dave Lee Brannon on 3/15/2019. *See attached document for full details.* (spe) (Entered: 03/15/2019) |
| 03/22/2019 | 88 | MOTION for Default Judgment *Against Dektor Corporation* by NITV Federal Services, LLC. (Attachments: # 1 Exhibit 1 - Deposition Transcript, # 2 Exhibit 2 - NITVCVSAexposed website)(DeSouza, Daniel) (Entered: 03/22/2019) |
| 03/22/2019 | 89 | MOTION for Permanent Injunction *Against Dektor Corporation* by NITV Federal Services, LLC. (DeSouza, Daniel) (Entered: 03/22/2019) |
| 03/26/2019 | 90 | SUGGESTION OF BANKRUPTCY as to Arthur Herring, III by Arthur Herring, III. (drz) (Entered: 03/26/2019) |
| 03/26/2019 | 91 | CERTIFICATE OF SERVICE by Arthur Herring, III re 90 Suggestion of Bankruptcy. (drz) (Entered: 03/26/2019) |
| 04/01/2019 | 92 | ORDER STAYING CASE AS TO DEFENDANT ARTHUR HERRING III ON SUGGESTION OF BANKRUPTCY. Signed by Magistrate Judge Dave Lee Brannon on 4/1/2019. *See attached document for full details.* (drz) (Entered: 04/01/2019) |
| 04/09/2019 | 93 | |

| | | |
|---|---|---|
| | | NOTICE by NITV Federal Services, LLC re <u>89</u> MOTION for Permanent Injunction *Against Dektor Corporation*, <u>88</u> MOTION for Default Judgment *Against Dektor Corporation Notice of Filing* (Attachments: # <u>1</u> Exhibit A - Spreadsheet of Deleted Emails, # <u>2</u> Exhibit B - Composite of Emails) (DeSouza, Daniel) (Entered: 04/09/2019) |
| 04/09/2019 | <u>94</u> | CERTIFICATE of Counsel re <u>89</u> MOTION for Permanent Injunction *Against Dektor Corporation*, <u>88</u> MOTION for Default Judgment *Against Dektor Corporation* by Daniel DeSouza on behalf of NITV Federal Services, LLC (DeSouza, Daniel) (Entered: 04/09/2019) |
| 05/17/2019 | <u>95</u> | ORDER on Motions for Final Default Judgment and Permanent Injunction Against Dektor Corporation. Signed by Magistrate Judge Dave Lee Brannon on 5/17/2019. *See attached document for full details.* (spe) (Entered: 05/17/2019) |
| 05/17/2019 | <u>96</u> | CERTIFICATE OF SERVICE by NITV Federal Services, LLC (D'Loughy, James) (Entered: 05/17/2019) |
| 05/29/2019 | <u>97</u> | SUGGESTION OF BANKRUPTCY as to Dektor Corporation by Arthur Herring, III. (jas) (Entered: 05/30/2019) |
| 05/31/2019 | <u>98</u> | ORDER STAYING CASE AS TO DEFENDANT DEKTOR CORPORATION ON SUGGESTION OF BANKRUPTCY AND CLOSING CASE re: <u>97</u> Defendant Dektor Corporations Suggestion of Bankruptcy (Suggestion). Any scheduling hearings are CANCELED, any pending Motions are DENIED AS MOOT, and all deadlines are TERMINATED. Signed by Magistrate Judge Dave Lee Brannon on 05/31/2019. *See attached document for full details.* (jao) (Entered: 05/31/2019) |
| 05/31/2019 | <u>99</u> | FORM AO 120 SENT TO DIRECTOR OF U.S. PATENT AND TRADEMARK (Attachments: # <u>1</u> Supplement Order) (jao) (Entered: 05/31/2019) |
| 06/04/2019 | <u>100</u> | NOTICE by NITV Federal Services, LLC re <u>92</u> Order Staying Case *Notice of Filing Order Dismissing Herring Bankruptcy Case* (Attachments: # <u>1</u> Exhibit Order Dismissing Herring Bankruptcy Case) (DeSouza, Daniel) (Entered: 06/04/2019) |
| 06/05/2019 | <u>101</u> | MOTION to Reopen Case , MOTION Lift Stay As to Defendant Arthur Herring, III Only re <u>98</u> Order Dismissing Case, by NITV Federal Services, LLC. (DeSouza, Daniel) (Entered: 06/05/2019) |
| 06/07/2019 | <u>102</u> | ORDER Lifting Stay as to Defendant Arthur Herring IIIgranting <u>101</u> Motion to Reopen Case; granting <u>101</u> Motion To Lift Stay. Signed by Magistrate Judge Dave Lee Brannon on 6/7/2019. *See attached document for full details.* (drz) (Entered: 06/10/2019) |
| 06/10/2019 | <u>103</u> | MOTION for Sanctions *Against Defendant Arthur Herring, III* by NITV Federal Services, LLC. (Attachments: # <u>1</u> Exhibit A - Notice of Deposition, # <u>2</u> Exhibit B - Reisman Declaration, # <u>3</u> Exhibit C - October 18 Email, # <u>4</u> Exhibit D - Vanderhoff Declaration, # <u>5</u> Exhibit E - Herring Trash Spreadsheet, # <u>6</u> Exhibit F - Herring Trash Emails, # <u>7</u> Exhibit G - Jill Olson Email, # <u>8</u> Exhibit |

| | | H - August 18 Email, # 9 Exhibit I - Herring Transcript, # 10 Exhibit J - October 9 Email, # 11 Exhibit K - Sestanj Declaration, # 12 Exhibit L - Meet and Confer Email)(DeSouza, Daniel) (Entered: 06/10/2019) |
|---|---|---|
| 06/14/2019 | 104 | NOTICE by NITV Federal Services, LLC re 98 Order Dismissing Case, *Notice of Filing order Dismissing Dektor Bankruptcy Case* (Attachments: # 1 Exhibit Order Dismissing Dektor Bankruptcy Case) (DeSouza, Daniel) (Entered: 06/14/2019) |
| 06/14/2019 | 105 | MOTION to Lift Stay as to Dektor Corporation re 98 Order Dismissing Case, by NITV Federal Services, LLC. (DeSouza, Daniel) (Entered: 06/14/2019) |
| 06/14/2019 | 106 | MOTION for Extension of Time to File Responses by Arthur Herring, III. (drz) (Entered: 06/14/2019) |
| 06/14/2019 | 107 | ORDER granting 105 Motion to Lift Stay as to Defendant Dektor Corporation. Signed by Magistrate Judge Dave Lee Brannon on 6/14/2019. *See attached document for full details.* (drz) (Entered: 06/14/2019) |
| 06/14/2019 | 108 | PAPERLESS ORDER denying without prejudice Defendant Arthur Herring's Motion to Extend 106 . The Motion fails to comply with Local Rule 7.1(a)(3), which requires certification of a pre-filing conferral with the opposing party. In addition, the Motion seeks "a two week delay of any orders, responses, etc, due to a trip that has been in the making for 8 months." This case has been in the making for 11 months and the Court has previously granted a number of extensions to Defendants. The Court has an independent obligation to ensure that this case moves along efficiently. Further requests for delay hinder this obligation. The Court, and the Courtroom Deputy, have repeatedly advised Mr. Herring of what he has to do to properly file pleadings and also to receive electronic notices of CM/ECF filings so that this case may proceed without unnecessary delay. Mr. Herring must comply with these instructions. A *pro se* party is not excused from these responsibilities. Signed by U.S. Magistrate Judge Dave Lee Brannon on 6/14/2019. (jrz) (Entered: 06/14/2019) |
| 06/17/2019 | 109 | MOTION to Disclose by Arthur Herring, III. (drz) (Entered: 06/17/2019) |
| 06/17/2019 | 110 | PAPERLESS ORDER CAUTIONING DEFENDANT ARTHUR HERRING, III: It has come to this Court's attention that Defendant Arthur Herring, III has repeatedly contacted members of this Court's staff via telephone and email regarding substantive matters. Such *ex parte* communications are not permitted and will not be considered by the Court. Any communications must be made via appropriate filings in the record with proper notice to opposing counsel and in full accordance with all governing rules. Mr. Herring is cautioned to not contact this Court or any member of this Court's staff again, via phone or email, regarding any matters of substance. Mr. Herring has been warned about this topic before. Failure to abide by this Order will be grounds for the imposition of appropriate sanctions. Signed by U.S. Magistrate Judge Dave Lee Brannon on 6/17/2019. (jrz) (Entered: 06/17/2019) |
| 06/17/2019 | 111 | Motion to Disclose NACVSA Location. by Arthur Herring, III.(drz) (Entered: 06/17/2019) |
| 06/17/2019 | 112 | |

| | | |
|---|---|---|
| | | MOTION to Dismiss NITV Lawsuits 1 Complaint, by Arthur Herring, III. Responses due by 7/1/2019 (Attachments: # 1 Exhibit)(drz) (Entered: 06/17/2019) |
| 06/18/2019 | 113 | RESPONSE in Opposition re 109 MOTION to Produce filed by NITV Federal Services, LLC. Replies due by 6/25/2019. (DeSouza, Daniel) (Entered: 06/18/2019) |
| 06/18/2019 | 114 | RESPONSE in Opposition re 112 MOTION to Dismiss 1 Complaint, filed by NITV Federal Services, LLC. Replies due by 6/25/2019. (DeSouza, Daniel) (Entered: 06/18/2019) |
| 06/18/2019 | 115 | RESPONSE to 111 Notice of Filing Discovery by NITV Federal Services, LLC. (DeSouza, Daniel) (Entered: 06/18/2019) |
| 06/19/2019 | 116 | OMNIBUS ORDER DENYING MOTIONS denying 112 Motion to Dismiss, 109 Motion to Disclose and 111 Motion to Disclose NACVSA Location. Signed by Magistrate Judge Dave Lee Brannon on 6/19/2019. *See attached document for full details.* (drz) (Entered: 06/19/2019) |
| 06/21/2019 | 117 | MOTION to Reassign Case/To Demand Removal Of Judge Brannon by Arthur Herring, III. (cds) (Entered: 06/24/2019) |
| 06/21/2019 | 118 | MOTION to Produce by Arthur Herring, III. (cds) (Entered: 06/24/2019) |
| 06/21/2019 | 119 | Defendant's Reply/RESPONSE to Plaintiff re 103 MOTION for Sanctions *Against Defendant Arthur Herring, III* filed by Arthur Herring, III. Replies due by 6/28/2019. (cds) (Entered: 06/24/2019) |
| 06/25/2019 | 120 | REPLY to Response to Motion re 103 MOTION for Sanctions *Against Defendant Arthur Herring, III* filed by NITV Federal Services, LLC. (Attachments: # 1 Exhibit A - March 28 Email)(DeSouza, Daniel) (Entered: 06/25/2019) |
| 06/25/2019 | 121 | RESPONSE in Opposition re 118 MOTION to Produce filed by NITV Federal Services, LLC. Replies due by 7/2/2019. (DeSouza, Daniel) (Entered: 06/25/2019) |
| 06/25/2019 | 122 | PAPERLESS ORDER denying Defendant Arthur Herring, III's Motion to Produce 118 , which seeks the production of certain specified contact information. Plaintiff has responded in opposition 121 . The Court denies the Motion's request to compel the production of information for the same reasons stated in a prior Omnibus Order 116 . That is, the Motion fails to comply with Local Rule 7.1(a)(3)'s requirement of a pre-filing certification of conferral. In addition, the Motion seeks information that should be sought via a proper discovery request served directly upon opposing counsel (*i.e.* interrogatories, request for admissions, or request for production of documents) instead of via motion practice. As this latest Motion pre-dates the Omnibus Order, the Court grants Mr. Herring an appropriate measure of leeway and denies Plaintiff's request for an award of fees incurred in opposing the Motion. Signed by U.S. Magistrate Judge Dave Lee Brannon on 6/25/2019. (jrz) (Entered: 06/25/2019) |
| 06/26/2019 | 123 | |

| | | RESPONSE in Opposition re 117 MOTION to Reassign Case filed by NITV Federal Services, LLC. Replies due by 7/3/2019. (DeSouza, Daniel) (Entered: 06/26/2019) |
|---|---|---|
| 07/12/2019 | 124 | REPLY to 123 Plaintiff's Memorandum in Opposition to Herring's Motion to Dismiss nitv Lawsuit by Arthur Herring, III. (drz) (Entered: 07/12/2019) |
| 07/12/2019 | 125 | REPLY to 121 Plaintiffs Memo in Opposition to Defendant's Motion to Disclose. by Arthur Herring, III. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(drz) (Entered: 07/12/2019) |
| 07/18/2019 | 126 | REPLY to 120 Plaintiff's Response Memorandum of Further Support of Motion for Sanctions by Arthur Herring, III. (drz) Modified on 7/18/2019 (drz). (Entered: 07/18/2019) |
| 07/18/2019 | 127 | REPLY to Memorandum in Opposition to Motion re 118 MOTION to Produce filed by Arthur Herring, III. (drz) (Entered: 07/18/2019) |
| 07/19/2019 | 128 | REPLY to Response to Motion re 117 MOTION to Reassign Case filed by Arthur Herring, III. (drz) (Entered: 07/19/2019) |
| 07/19/2019 | 129 | SUPPLEMENT to 128 Reply to Response to Motion by Arthur Herring, III (drz) (Entered: 07/19/2019) |
| 08/21/2019 | 130 | ORDER denying 117 Motion to Recusal/Disqualification. Signed by Magistrate Judge Dave Lee Brannon on 8/21/2019. *See attached document for full details.* (drz) (Entered: 08/21/2019) |
| 08/26/2019 | 131 | NOTICE by NITV Federal Services, LLC re 95 Order on Motion for Default Judgment, Order on Motion for Permanent Injunction (Attachments: # 1 Exhibit 1 - Herring Email) (DeSouza, Daniel) (Entered: 08/26/2019) |
| 09/09/2019 | 132 | REPLY TO NOTICE OF FILING HERRING EMAIL RE 131 Notice (Other) by Arthur Herring, III. (drz) (Entered: 09/09/2019) |
| 09/20/2019 | 133 | ORDER GRANTING PLAINTIFFS 103 MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE AND DISCOVERY ABUSE Signed by Magistrate Judge Dave Lee Brannon on 9/20/2019. *See attached document for full details.* (jao) (Entered: 09/20/2019) |
| 10/11/2019 | 134 | Plaintiff's EXPEDITED MOTION Permanent Injunction *Against Defendants* by NITV Federal Services, LLC. (Attachments: # 1 Exhibit Aug 22 Email, # 2 Exhibit Sept 6 Email, # 3 Exhibit Sept 17 Email, # 4 Exhibit Sept 24 Email, # 5 Exhibit Sept 29 Email, # 6 Exhibit Injunction)(D'Loughy, James) (Entered: 10/11/2019) |
| 10/11/2019 | 135 | Plaintiff's MOTION for Judgment *Against Defendants* by NITV Federal Services, LLC. (Attachments: # 1 Exhibit Exhibit 1-Humble Declaration, # 2 Exhibit Exhibit 2-Smith Declaration, # 3 Exhibit Exhibit 2A-Smith CV, # 4 Exhibit Exhibit 2B-Sales Analysis, # 5 Exhibit Exhibit 3 - Transcript, # 6 Exhibit Exhibit 4-NITVCVSA Exposed)(D'Loughy, James) (Entered: 10/11/2019) |
| 10/29/2019 | 136 | MOTION for Continuance to Reply to Plaintiff's Final Default Judgment and Permanent Injunction as to 134 Plaintiff's EXPEDITED MOTION Permanent |

| | | |
|---|---|---|
| | | Injunction *Against Defendants*, 135 Plaintiff's MOTION for Judgment *Against Defendants* by Arthur Herring, III. (drz) (Entered: 10/29/2019) |
| 10/29/2019 | 137 | PAPERLESS ORDER granting 136 Defendant Arthur Herring's Motion for Extension of Time. Mr. Herring shall have until Wednesday, November 13, 2019, to file responses to Plaintiff's Motion for Permanent Injunction 134 and Plaintiff's Motion for Final Default Judgment 135 . Any replies shall be filed within the time allotted by local rule. Signed by U.S. Magistrate Judge Dave Lee Brannon on 10/29/2019. (jrz) (Entered: 10/29/2019) |
| 10/31/2019 | 138 | RESPONSE/OBJECTION to Motion re 134 Plaintiff's EXPEDITED MOTION Permanent Injunction *Against Defendants*, 135 Plaintiff's MOTION for Judgment *Against Defendants* filed by Arthur Herring, III. Replies due by 11/7/2019. (mc) (Entered: 10/31/2019) |
| 10/31/2019 | 139 | Clerk's Notice of Filing Deficiency Re: 138 Response to Motion, filed by Arthur Herring, III. Document(s) missing required signature(s) (Fed.R.Civ.P. 11(a)). (mc) (Entered: 10/31/2019) |
| 11/01/2019 | 140 | REPLY to Response to Motion re 134 Plaintiff's EXPEDITED MOTION Permanent Injunction *Against Defendants*, 135 Plaintiff's MOTION for Judgment *Against Defendants* filed by NITV Federal Services, LLC. (DeSouza, Daniel) (Entered: 11/01/2019) |
| 11/04/2019 | 141 | Objections to Plaintiff's Motion for Default Final Judgment Against Defendants re 135 Plaintiff's MOTION for Judgment *Against Defendants* filed by Arthur Herring, III. Replies due by 11/12/2019. (drz) (Entered: 11/05/2019) |
| 11/07/2019 | 142 | PAPERLESS ORDER SETTING HEARING: Evidentiary hearing on Motion for Permanent Injunction against Defendants 134 and Motion for Default Final Judgment Against Defendants 135 is hereby set for Thursday, December 12, 2019, at 1:30 P.M., 4th Floor, Courtroom 3 in the West Palm Beach Division. At the hearing, both sides will be permitted to submit relevant evidence and argument related to the Court's determination of the pending motions, including but not limited to the damages and injunctive relief sought by Plaintiff. Two hours reserved. Signed by U.S. Magistrate Judge Dave Lee Brannon on 11/7/2019. (jrz) (Entered: 11/07/2019) |
| 11/07/2019 | 143 | PAPERLESS ORDER RESETTING HEARING: Upon notice of a scheduling conflict for Plaintiff's counsel, the evidentiary hearing on Motion for Permanent Injunction against Defendants 134 and Motion for Default Final Judgment Against Defendants 135 is hereby **RESET for Tuesday, December 10, 2019, at 10:30 A.M.,** 4th Floor, Courtroom 3 in the West Palm Beach Division. At the hearing, both sides will be permitted to submit relevant evidence and argument related to the Court's determination of the pending motions, including but not limited to the damages and injunctive relief sought by Plaintiff. Two hours reserved. Signed by U.S. Magistrate Judge Dave Lee Brannon on 11/7/2019. (jrz) (Entered: 11/07/2019) |
| 11/08/2019 | 144 | CLERK'S NOTICE of mailing. Paper copies of DE 143 mailed to pro se defendants on 11/8/2019. (spe) (Entered: 11/08/2019) |
| 11/08/2019 | 145 | |

| | | |
|---|---|---|
| | | MOTION to Deny Claim of Damages by Arthur Herring, III. (kpe) (Entered: 11/08/2019) |
| 11/08/2019 | 146 | MOTION for Court to Sanction Nitv Lawyers D'sousa and D'Loughy by Arthur Herring, III. (kpe) (Entered: 11/08/2019) |
| 11/21/2019 | 147 | RESPONSE in Opposition re 145 MOTION to Deny filed by NITV Federal Services, LLC. Replies due by 11/29/2019. (DeSouza, Daniel) (Entered: 11/21/2019) |
| 11/21/2019 | 148 | RESPONSE in Opposition re 146 MOTION for Sanctions filed by NITV Federal Services, LLC. Replies due by 11/29/2019. (DeSouza, Daniel) (Entered: 11/21/2019) |
| 11/26/2019 | 149 | Request for More Time During Hearings on Damages by Arthur Herring, III. (drz) (Entered: 11/27/2019) |
| 11/26/2019 | 151 | Clerks Notice of Docket Correction re 150 Response in Opposition to Motion. **Document Restricted Due to Error**; (Document filed using wrong event) (document will be re-docketed by clerk) (drz) Modified on 11/27/2019 (drz). (Entered: 11/27/2019) |
| 11/26/2019 | 152 | REPLY to Plaintiff's Motion in Opposition to Response to Motion re 146 MOTION for Sanctions filed by Arthur Herring, III. (drz) (Entered: 11/27/2019) |
| 12/02/2019 | 153 | PAPERLESS ORDER GRANTING ADDITIONAL HEARING TIME AND REQUIRING PRE-HEARING FILING OF EXHIBIT/WITNESS LISTS: Defendant Arthur Herring's "Request for More Time During Hearing on Damages" 149 is granted in part and denied in part. The Court will reserve four hours for the upcoming evidentiary hearing (instead of two hours). The start time shall remain set for 10:30 A.M. on Tuesday, December 10, 2019, 4th Floor, Courtroom 3 in the West Palm Beach Division. The Court reminds the parties that the hearing shall be limited in scope to relevant evidence and argument regarding the damages and injunctive relief sought by Plaintiff. Four hours is sufficient to achieve this goal. In an effort to streamline the hearing, each side shall file their respective list of proposed witnesses and exhibits **by or before 12:00 Noon EST on Monday, December 9, 2019**. Plaintiff's exhibits shall be identified in numerical order (1, 2, 3, etc.), while Defendant's exhibits shall be identified in alphabetical order (A, B, C, etc.). The parties shall set forth the number or letter, and description of each exhibit. Each list shall conform to Form AO 187, which is available at http://www.uscourts.gov/sites/default/files/ao187.pdf. All exhibits shall be pre-marked to correspond to the list. Plaintiff's counsel shall forthwith serve a copy of this Order upon Mr. Herring via email. Signed by U.S. Magistrate Judge Dave Lee Brannon on 12/2/2019. (jrz) (Entered: 12/02/2019) |
| 12/02/2019 | 154 | CERTIFICATE of Counsel by James D D'Loughy on behalf of NITV Federal Services, LLC (D'Loughy, James) (Entered: 12/02/2019) |
| 12/05/2019 | 155 | NOTICE by NITV Federal Services, LLC re 135 Plaintiff's MOTION for Judgment *Against Defendants Notice of Filing* (Attachments: # 1 Exhibit Declaration of Kevin Foyteck) (DeSouza, Daniel) (Entered: 12/05/2019) |

| 12/09/2019 | 156 | Exhibit and Witness List by NITV Federal Services, LLC.. (DeSouza, Daniel) (Entered: 12/09/2019) |
|---|---|---|
| 12/09/2019 | 157 | Exhibit and Witness List by Dektor Corporation, Arthur Herring, III. (mee) (Entered: 12/09/2019) |
| 12/09/2019 | 158 | Motion for Allowing Tablet and Cell Phone to Court/ MOTION to Bring Electronic Equipment into the courtroom by Arthur Herring, III. Responses due by 12/23/2019 (mee) (Entered: 12/09/2019) |
| 12/09/2019 | 159 | PAPERLESS ORDER granting 158 Defendant Mr. Herring's Motion to Bring Electronic Equipment Into The Courtroom. Mr. Herring shall be permitted to bring one small tablet and one cellular telephone for the hearing scheduled for tomorrow, Tuesday, December 10, 2019, at 10:30 A.M., 4th Floor, Courtroom 3 in the West Palm Beach Division. Signed by U.S. Magistrate Judge Dave Lee Brannon on 12/9/2019. (jrz) (Entered: 12/09/2019) |
| 12/10/2019 | 160 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge Dave Lee Brannon: Evidentiary Hearing held on 12/10/2019. Parties provide evidence and testimony; witnesses Charles Humble, Kevin Foyteck and Arthur Herring, III sworn and testimony taken. Plaintiff Exhibits 1, 2, 3, 4, 13 and 15 admitted. Defense Exhibits A, GGGG, and WWWW admitted. Matter taken under consideration, written order to follow. Total time in court: 4 hour(s) : 28 minutes. Attorney Appearance(s): Daniel DeSouza and James D D'Loughy for Plaintiff. Also present: Charles Humble for Plaintiff, and Arthur Herring, III for Defendants. Court Reporter: Ilona Lupowitz, 305-523-5634 / Ilona_lupowitz@flsd.uscourts.gov. (Digital 10:33:41; 11:59:04; 14:49:34) (spe) (Entered: 12/10/2019) |
| 12/10/2019 | 161 | Court Exhibit and Witness List from 12/10/2019 Evidentiary Hearing. (spe) (Entered: 12/10/2019) |
| 12/16/2019 | 162 | NOTICE by NITV Federal Services, LLC re 134 Plaintiff's EXPEDITED MOTION Permanent Injunction *Against Defendants Notice of Filing Herring E-Mail* (Attachments: # 1 Exhibit Herring E-mail) (DeSouza, Daniel) (Entered: 12/16/2019) |
| 12/16/2019 | 163 | ORDER of Final Default Judgment and Permanent Injunction Against Both Defendants. Signed by Magistrate Judge Dave Lee Brannon on 12/16/2019. *See attached document for full details.* (spe) (Entered: 12/16/2019) |
| 12/16/2019 | 164 | FINAL JUDGMENT in favor of NITV Federal Services, LLC against Dektor Corporation, Arthur Herring, III. Closing Case. Motions terminated: 146 MOTION for Sanctions filed by Arthur Herring, III, 145 MOTION to Deny filed by Arthur Herring, III. Signed by Magistrate Judge Dave Lee Brannon on 12/16/2019. *See attached document for full details.* (spe) (Entered: 12/16/2019) |
| 12/20/2019 | 165 | REPLY to 162 Plaintiff's Notice of Herring's Filing Email (Other) by Arthur Herring, III. (drz) (Entered: 12/20/2019) |
| 01/10/2020 | | SYSTEM ENTRY - Docket Entry 166 [motion] restricted/sealed until further notice. (1498656) (Entered: 01/10/2020) |
| 01/13/2020 | | |

| | | |
|---|---|---|
| | | SYSTEM ENTRY - Docket Entry 167 [misc] restricted/sealed until further notice. (dj) (Entered: 01/13/2020) |
| 01/13/2020 | | SYSTEM ENTRY - Writ Issued mailed to Advisorlaw PLLC, 2925 PGA Blvd, Suite 204 Palm Beach Gardens, FL 33410 restricted/sealed until further notice. (dj) (Entered: 01/13/2020) |
| 01/16/2020 | | SYSTEM ENTRY - Docket Entry 168 [motion] restricted/sealed until further notice. (1498656) (Entered: 01/16/2020) |
| 01/16/2020 | | SYSTEM ENTRY - Docket Entry 169 [order] restricted/sealed until further notice. (dj) (Entered: 01/16/2020) |
| 01/27/2020 | | SYSTEM ENTRY - Docket Entry 170 [misc] restricted/sealed until further notice. (1498656) (Entered: 01/27/2020) |
| 02/06/2020 | 171 | MOTION for Detailed Explanation of Court's Order to Disclosure Information re 95 Order on Motion for Default Judgment, Order on Motion for Permanent Injunction by Arthur Herring, III. Responses due by 2/20/2020 (drz) (Entered: 02/06/2020) |
| 02/06/2020 | 172 | PAPERLESS ORDER denying 171 Defendant's Motion "for Detailed Explanation of Court Order Pertaining to Disclosure of Information." The Motion includes a rambling recitation of Defendant's version of events and concludes by asking the Court to either "totally dismiss its previous order" or "be extremely specific" about the Order's terms. The Court's Order of Final Default Judgment and Permanent Injunction 163 includes detailed findings and conclusions. The Order speaks clearly for itself. This case is closed and Defendant offers no legally sound grounds which would justify reopening it. Accordingly, the Motion is denied. Signed by U.S. Magistrate Judge Dave Lee Brannon on 2/6/2020. (jrz) (Entered: 02/06/2020) |
| 02/12/2020 | 173 | MOTION for Order Directing Defendants to Complete Fact Information Sheet by NITV Federal Services, LLC. (Attachments: # 1 Exhibit A - Fact Information Sheet (corporate), # 2 Exhibit B - Fact Information Sheet (individual))(DeSouza, Daniel) (Entered: 02/12/2020) |
| 02/12/2020 | 174 | NOTICE by NITV Federal Services, LLC *of Filing Herring February 12 Email* (Attachments: # 1 Exhibit Herring February 12 Email) (DeSouza, Daniel) (Entered: 02/12/2020) |
| 02/18/2020 | 175 | REPLY to 174 Notice of Filing February 12, 2012, email by Arthur Herring, III. (scn) (Entered: 02/19/2020) |
| 02/21/2020 | 176 | MOTION to Compel *Defendants' Depositions in Aid of Execution* by NITV Federal Services, LLC. Responses due by 3/6/2020 (Attachments: # 1 Exhibit 1 - Emails)(DeSouza, Daniel) (Entered: 02/21/2020) |
| 02/28/2020 | 177 | MOTION OF NOTICE TO COURT by Arthur Herring, III. (drz) Modified on 3/2/2020 (drz). (Entered: 03/02/2020) |
| 03/09/2020 | 178 | MOTION to Compel *Defendants to Provide Current Contact Information* by NITV Federal Services, LLC. Responses due by 3/23/2020 (DeSouza, Daniel) (Entered: 03/09/2020) |

| 04/06/2020 | 179 | ORDER granting in part and denying in part 173 Motion for Order Directing Defendants to Complete Fact Information Sheet; granting in part and denying in part 176 Motion to Compel Defendants Depositions in Aid of Execution; granting in part and denying in part 178 Motion to Compel Defendants to Provide Current Contact Information. Signed by Magistrate Judge Dave Lee Brannon on 4/6/2020. *See attached document for full details.* (drz) (Entered: 04/06/2020) |
| --- | --- | --- |
| 04/06/2020 | 180 | CERTIFICATE of Counsel by James D D'Loughy on behalf of NITV Federal Services, LLC (D'Loughy, James) (Entered: 04/06/2020) |
| 04/30/2020 | 181 | SUGGESTION OF BANKRUPTCY as to defendant Arthur Herring, III by NITV Federal Services, LLC (DeSouza, Daniel) (Entered: 04/30/2020) |
| 05/06/2020 | 182 | TRANSCRIPT of Excerpt of Evidentiary Hearing - Testimony of Charles Humble held on 12/10/2019 before Magistrate Judge Dave Lee Brannon, 1-142 pages, Court Reporter: Ilona Lupowitz, 305-523-5634 / Ilona_lupowitz@flsd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased by contacting the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/27/2020. Redacted Transcript Deadline set for 6/8/2020. Release of Transcript Restriction set for 8/4/2020. (ilz) (Entered: 05/06/2020) |

| PACER Service Center | | |
| --- | --- | --- |
| **Transaction Receipt** | | |
| 07/08/2020 13:59:07 | | |
| PACER Login: | advisorlaw | Client Code: | |
| Description: | Docket Report | Search Criteria: | 9:18-cv-80994-DLB |
| Billable Pages: | 17 | Cost: | 1.70 |