## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| Arthur Herring, III, | : | |
| Debtor. | : | Bankruptcy No. 20-12141-MDC |

| | | |
|---|---|---|
| NITV Federal Services, LLC, | | |
| Plaintiff, | : | |
| v. | : | Adversary No. 20-00180-MDC |
| Arthur Herring, III, | : | |
| Defendant. | : | |

# <u>MEMORANDUM</u>

BY: THE HONORABLE MAGDELINE D. COLEMAN, CHIEF UNITED STATES BANKRUPTCY JUDGE

## I.    INTRODUCTION

The plaintiff, NITV Federal Services, LLC ("Plaintiff" or "NITV"), initiated this adversary proceeding (the "Adversary Proceeding") by filing a complaint (the "Adversary Complaint")[1] against debtor Arthur Herring, III (the "Debtor-Defendant" or "Mr. Herring"), for a determination that the judgment (the "Florida Judgment") it obtained in a lawsuit (the "Florida Action") against Mr. Herring and his wholly-owned corporation in the United States District Court for the Southern District of Florida (the "Florida District Court") is nondischargeable pursuant to §523(a)(6) of the United States Bankruptcy Code, 11 U.S.C. §§101, *et seq.* (the "Bankruptcy Code").  NITV has moved for summary judgment (the "Summary Judgment

---

[1] Adv. Pro. Docket No. 1.

Motion"),[2] asserting that the findings made by the Florida District Court in rendering the Florida

Judgment against Mr. Herring are entitled to preclusive effect in this Adversary Proceeding

pursuant to the doctrine of collateral estoppel, otherwise known as issue preclusion.  The Debtor-

Defendant opposes the entry of summary judgment, arguing that the Florida District Court's

findings do not meet the requirements of collateral estoppel.  For the reasons stated herein, the

Court will deny the Summary Judgment Motion.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Florida Action[3]

#### 1.    The Florida Complaint and the Sanctions Order

On July 27, 2018, NITV filed the Florida Action against Mr. Herring and his wholly

owned corporation, Dektor Corporation ("Dektor"), in the Florida District Court.  Mr. Herring is

the sole shareholder, officer, and/or director of Dektor.  The complaint in the Florida Action (the

"Florida Complaint") alleged that Mr. Herring and Dektor, which was a competitor of NITV in

the business of truth verification products and services, disparaged and defamed NITV, its

products, and its founder and employees.  The Florida Complaint asserted claims against Mr.

Herring and Dektor for violation of the Lanham Act,[4] deceptive and unfair trade practices under

the Florida Deceptive and Unfair Trade Practices Act, defamation/business disparagement, and

tortious interference with business relationships.

On June 10, 2019, NITV filed a motion for sanctions against Mr. Herring, asserting that

---

[2] Adv. Pro. Docket No. 7.

[3] The factual and procedural background of the Florida Action is taken from the admitted allegations of the Adversary Complaint, as well as the Florida Complaint, the Florida Sanctions Motion, the Florida Sanctions Order, and the Florida Judgment, which are attached to the Summary Judgment Motion as Exhibits A through D, respectively.

[4] 15 U.S.C. §§ 1015, *et seq.*

he had engaged in various activities prior to and during the pendency of the Florida Action that

constituted spoliation of evidence and discovery abuse (the "Sanctions Motion").  On September

20, 2019, the Florida District Court granted the Sanctions Motion (the "Sanctions Order").  The

Florida District Court found the unrefuted record evidence established that Mr. Herring had

engaged in unreasonable misconduct involving the exchange of discovery in the Florida Action

with intent to deprive NITV of the ability to discover information, and that NITV had been

prejudiced as a result.  Exercising its discretion, the Florida District Court found the

extraordinary circumstances warranted the extraordinary sanction of entering default against Mr.

Herring.  The Sanctions Order instructed NITV to file a motion for final default judgment (the

"Default Judgment Motion") against Mr. Herring and provided that such motion could include

information regarding the final amount of monetary damages to be imposed against both Mr.

Herring and Dektor.[5]

### 2.      The Florida Judgment

On October 11, 2019, NITV filed the Default Judgment Motion, as well as a separate

motion for a permanent injunction against Mr. Herring and Dektor (the "Injunction Motion").

On December 10, 2019, the Florida District Court held an evidentiary hearing at which time the

parties submitted evidence and argument related to the Court's determination of damages and the

injunctive relief NITV sought.  On December 16, 2019, the Florida District Court entered the

Florida Judgment against Mr. Herring and Dektor, finding that NITV met its burden under

Federal Rule of Civil Procedure 55 to show that it was entitled to default judgment against both

Mr. Herring and Dektor, and had also met its burden in establishing that it was entitled to

---

[5] Default judgment had already been entered against Dektor on May 17, 2019, based on its failure to
appear, answer, or otherwise plead to the Florida Complaint.  That default judgment was as to liability
only, with NITV to submit supplemental evidence regarding the appropriate amount of damages.

permanent injunctive relief.

In entering the Florida Judgment, the Florida District Court noted that the defaults entered against each defendant constituted an admission of the well-pleaded allegations in the Florida Complaint, but did not constitute admissions of facts not well-pleaded or of conclusions of law.  The Florida District Court therefore analyzed each claim in the Florida Complaint separately to determine if there was a sufficient basis in the pleadings for final default judgment to be entered, prior to determining appropriate damages and injunctive relief, and made its own factual and legal findings.

### i.      Lanham Act Violations

The Florida District Court set forth the elements NITV had to prove to prevail on a false advertising/unfair competition claim under the federal Lanham Act: (1) that the opposing party's advertisements were false or misleading; (2) that the advertisements deceived, or had the capacity to deceive, consumers; (3) that the deception materially affected purchasing decisions; (4) that the misrepresentation affects interstate commerce; and (5) that the movant has been injured or is likely to suffer injury because of the false advertising.[6]

The Florida District Court also set forth the elements NITV had to prove to prevail on a product disparagement claim under the Lanham Act: (1) there must be "commercial advertising or promotion" constituting commercial speech of or concerning another's goods or services or commercial activities; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; and (4) the promotion must be disseminated sufficiently to the relevant purchasing public to constitute

---

[6] Florida Judgment, at §IV(A).

4

advertising within that industry.[7]

The Florida District Court then found that NITV was entitled to default judgment on its false advertising, unfair competition, and product disparagement claims under the Lanham Act: "Defendants have falsely represented their own PSE product as being the same product sold by Dektor Counterintelligence and Security, Inc. and falsely stated that Dektor has been in business since 1969. Defendants' various e-mails, letters, and websites constitute commercial speech from a competitor with the purpose of influencing customers to purchase Dektor's PSE product. Plaintiff has offered credible proof that these communications by Defendants contain materially false information concerning Plaintiff and its CVSA product. Plaintiff has offered specific details showing that Dektor and Mr. Herring are the source of these communications containing materially false information about Plaintiff and its CVSA product."[8]

## ii.      Florida Deceptive and Unfair Trade Practices Act Violations

The Florida District Court first identified the elements of a claim under the Florida Deceptive and Unfair Trade Practices Act: (1) a deceptive act or unfair practice in the course of trade or commerce; (2) causation; and (3) actual damages.[9] The court then concluded that, based on its factual findings, NITV demonstrated each required element: "As described in detail above, Plaintiff alleges that Dektor and Mr. Herring have engaged in a widespread scheme of intentionally deceptive acts to promote Dektor's own PSE product to the direct detriment of Plaintiff's product and legitimate business. Dektor has engaged in a widespread campaign of disparaging NITV and NITV's competing CVSA product through its websites, in emails, during

---

[7] *Id.*

[8] *Id.*

[9] *Id.* at §IV(B).

phone calls, and at speaking engagements.  NITV alleges that Dektor's deceptive and unfair

trade practices have damaged NITV's reputation, goodwill, and overall sales."[10]

### iii.    Defamation/Business Disparagement

The Florida District Court listed the elements to be proven to succeed on a defamation

claim under Florida law: (1) publication; (2) falsity; (3) the statement was made with knowledge

or reckless disregard as to the falsity on a matter concerning a public official, or at least

negligently on a matter concerning a private person; (4) actual damages; and (5) the statement

must be defamatory.[11]  The court found the elements met: "Here, the evidence shows that Dektor

and Mr. Herring published numerous false and defamatory statements about Plaintiff and

Plaintiff's product and related services to a multitude of existing and potential customers of

Plaintiff's products and services.  Defendants knew or should have known that the defamatory

statements were false when made and Plaintiff has suffered damages, including but not limited to

lost sales and lost goodwill as a direct result of the defamation."[12]

### iv.    Tortious Interference with Business Relationships

The Florida District Court identified the elements of tortious interference with a business

relationship: (1) the existence of a business relationship that affords the plaintiff existing or

prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the

defendant's intentional and unjustified interference with that relationship; and (4) damage to the

plaintiff.[13]  The court found NITV established these elements: "Plaintiff has shown that it had

existing contracts or prospective business relationships with various law enforcement agencies

---

[10] *Id.*

[11] *Id.* at §IV(C).

[12] *Id.*

[13] *Id.* at IV(D).

and other entities for the sale of its CVSA product and related services.  Plaintiff claims Dektor

and Mr. Herring knew about these contracts and business relationships and intentionally

interfered by making false and disparaging statements about Plaintiff and the CVSA product to

dissuade known CVSA users from using NITV's products and instead use Dektor's PSE

competing product."[14]

### 3.    The Florida District Court's Assessment of Damages

The Florida District Court first observed that even in the default judgment context, a

plaintiff's allegations regarding the amount of damages are not admitted by virtue of default;

rather, the court had an obligation to assure that there was a legitimate basis for any damage

award entered.[15]  After assessing NITV's evidence of damages due to lost business and expenses

incurred, the court concluded that the proven amount of base damages was $424,673.96.[16]  The

Florida District Court then evaluated NITV's request for treble damages pursuant to the Lanham

Act.  Noting that an award of enhanced damages under the Lanham Act is discretionary rather

than punitive, and must be based on a showing of actual harm, the court found that doubling the

base damages to $849,347.92 was appropriate: "Here, Plaintiff has shown that Defendants

intentionally engaged in false advertising, unfair competition, disparagement, and tortious

interference under governing federal and Florida law … [T]he Court finds that in light of

Defendants' willful violation of the Lanham Act, misuse of the internet to convey materially

disparaging information about Plaintiff and Plaintiff's product, and discovery misconduct

leading to an additional amount of unknown damages, doubling is appropriate here."[17]

---

[14] *Id.*

[15] *Id.* at §V.

[16] *Id.*

[17] *Id.*

## B.    The Adversary Complaint and the Summary Judgment Motion

On April 28, 2020, the Debtor-Defendant filed his voluntary chapter 7 bankruptcy petition.  On June 1, 2020, the Plaintiff filed the Adversary Complaint, seeking a determination that the Debtor-Defendant willfully and maliciously injured it through his violation of the Lanham Act, defamation, and tortious interference with existing and prospective business relationships, and therefore the Florida Judgment awarding damages to the Plaintiff based on that conduct should be deemed nondischargeable pursuant to §523(a)(6) of the Bankruptcy Code.[18] On July 6, 2020, the Debtor-Defendant filed an Answer[19] to the Adversary Complaint, generally denying that the Plaintiff is entitled to the relief sought.

On July 13, 2020, the Plaintiff filed the Summary Judgment Motion, as well as a brief in support (the "Supporting Brief").[20]  The Plaintiff argues that the Florida Judgment "involves 'willful' and 'malicious' conduct (on Plaintiff's claims for defamation, tortious interference, and violation of the Lanham Act) and because the District Court found that Defendant intentionally committed such conduct, the full amount of the underlying judgment is non-dischargeable under 11 U.S.C. §523(a)(6)."[21]  The Plaintiff's basis for seeking summary judgment is, in summary, that the Florida Judgment operates to collaterally estop the Debtor-Defendant from relitigating the issues and findings in the Florida Action.[22]

---

[18] The Adversary Complaint does not refer to or incorporate the Florida District Court's finding that the Debtor-Defendant is also liable under the Florida Deceptive and Unfair Trade Practices Act, and therefore seeks a nondischargeability determination only with respect to the other claims that are the subject of the Florida Judgment.  See Adversary Complaint, at ¶¶11, 12, 28; *see also* Supporting Brief at p. 1-2 (referencing the Florida Deceptive and Unfair Trade Practices Act as "not relevant hereto").

[19] Adv. Pro. Docket No. 4.

[20] Adv. Pro. Docket No. 7-1.

[21] Summary Judgment Motion, at ¶6.

[22] Summary Judgment Motion, at ¶5.

8

On July 24, 2020, the Debtor-Defendant filed a response to the Summary Judgment

Motion (the "Opposition"),[23] and on August 18, 2020 filed an opposition brief in support of the

Response (the "Opposition Brief").[24]  The Debtor-Defendant opposes the Summary Judgment

Motion on the basis that the elements of the Plaintiff's claim under §523(a)(6) of the Bankruptcy

Code are not identical to the issues that were decided in the Florida Action, and therefore

collateral estoppel does not apply to bar the Debtor-Defendant from defending against the

Plaintiff's claim in this Adversary Proceeding.

On August 19, 2020, the Court held a hearing on the Summary Judgment Motion and

Opposition and took the matter under advisement.

## III.    DISCUSSION

### A.    Standard for Evaluating the Summary Judgment Motion

The standard for evaluating a motion for summary judgment is well-established, as

recently articulated by my colleague, Judge Frank:

> Summary judgment is appropriate only when, drawing all reasonable
> inferences in favor of the nonmoving party, there is no genuine issue as to
> any material fact and the moving party is entitled to judgment as a matter
> of law. *E.g., Tri-M Group, LLC v. Sharp*, 638 F.3d 406, 415 (3d Cir.
> 2011); *In re Bath*, 442 B.R. 377, 387 (Bankr. E.D. Pa. 2010). In other
> words, summary judgment may be entered if there are no disputed issues
> of material fact and the undisputed facts would require a directed verdict
> in favor of the movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112,
> 1115 (11th Cir. 1993).
>
> In evaluating a motion for summary judgment, the court's role is not to
> weigh the evidence, but to determine whether there is a disputed, material
> fact for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
> 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A genuine issue of material
> fact is one in which sufficient evidence exists that would permit a
> reasonable fact finder to return a verdict for the non-moving party. *Id.* at
> 248. In evaluating the record, the court must view the underlying facts and

---

[23] Adv. Pro. Docket No. 10.

[24] Adv. Pro. Docket No. 13.

> make all reasonable inferences therefrom in the light most favorable to the
> party opposing the motion. *Montone v. City of Jersey City*, 709 F.3d 181,
> 189 (3d Cir. 2013); *United States v. 717 South Woodward St.*, 2 F.3d 529,
> 533 (3d Cir. 1993). On the other hand, if it appears that the evidence "is so
> one-sided that one party must prevail as a matter of law," the court should
> enter judgment in that party's favor. *Anderson*, 477 U.S. at 252.

*Fraction v. Jacklily, LLC (In re Fraction)*, 622 B.R. 642, 646-647 (Bankr. E.D. Pa. 2020). Here,

the "evidence" on which the Plaintiff relies in seeking summary judgment is the Florida

Judgment. The Plaintiff argues that the Florida Judgment collaterally estops the Debtor-

Defendant from challenging whether he willfully and maliciously injured the Plaintiff. The

Court must therefore analyze whether the Florida Judgment precludes any genuine issue of

material fact for resolution at a trial on the Plaintiff's §523(a)(6) claim.

### B.    Applicable Law Governing the Preclusive Effect of the Florida Judgment

Collateral estoppel prohibits the relitigation of issues that have been adjudicated in a prior

lawsuit, and the principles of collateral estoppel apply in bankruptcy discharge proceedings. *See,*

*e.g., Wolstein v. Docteroff (In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997) (*citing Grogan v.*

*Garner*, 498 U.S. 279, 284-85 n.11, 112 L. Ed. 2d 755, 111 S.Ct. 654 (1991); *In re McNallen*, 62

F.3d 619, 624 (4th Cir. 1995)). The principles of collateral estoppel that apply to the Florida

Judgment vary, however, because the claims the judgment addressed were a mix of federal and

state law claims. The Florida Judgment resolved the Plaintiff's claim under the federal Lanham

Act, as well as the Plaintiff's claims under Florida law. The claim under the Lanham Act

invoked the Florida District Court's federal question jurisdiction. *See Gaia Techs., Inc. v.*

*Reconversion Techs., Inc.*, 93 F.3d 774, 781 (Fed. Cir. 1996) (Lanham Act claim is sufficient to

create federal question jurisdiction in the district court). The Florida District Court had

supplemental jurisdiction over the remaining Florida state law claims pursuant to 28 U.S.C.

§1367(a).

10

Federal law governs the preclusive effect of a federal judgment in a federal question case. *O'Neal Steel, Inc. v. Chatkin (In re Chatkin)*, 465 B.R. 54, 64 (Bankr. W.D. Pa. 2012) (preclusive effect of a judgment by a federal court exercising federal question jurisdiction governed by federal law, not state law); *Fioriglio v. City of Atlantic City*, 963 F. Supp. 415, 424 (D.N.J. 1997) ("Uniform authority dictates that federal law governs the issue and claim preclusion effects of a federal judgment in a federal question case.") (*citing* 18 Charles Alan Wright et al., Federal Practice and Procedure § 4466 (1981)). Federal law therefore governs the preclusive effect of the Florida Judgment with respect to the Lanham Act claim. Under federal law, for a party to be estopped from relitigating an issue, the following elements must be satisfied: (1) the issue sought to be precluded must be the same as the one involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment. *Docteroff*, 133 F.3d at 214 (*citing In re Ross*, 602 F.2d 604, 608 (3d Cir. 1979); *Nat'l Med Imaging, LLC v. U.S. Bank, N.A. (In re Nat'l Med Imaging, LLC)*, 2021 Bankr. LEXIS 416, at * 47 (Bankr. E.D. Pa. Feb. 22, 2021).

Florida law, however, governs the preclusive effect of the Florida judgment with respect to the remaining Florida state law claims. *See Al Dosari v. McCormick (In re McCormick)*, 2020 Bankr. LEXIS 73, at *15 (Bankr. D. Md. Mar. 23, 2020) (federal principles of issue preclusion governed district court's judgment on federal causes of action, while Maryland principles of issue preclusion governed state law causes of action to the extent they were not incompatible with federal interests); *Marini v. Adamo (In re Adamo)*, 560 B.R. 642, 647 (Bankr. E.D.N.Y. 2016) (the preclusive effect of a prior judgment resolving issues of federal law is governed by the federal standard for collateral estoppel, but when a federal court reviews the preclusive effect

of state law claims decided by a federal court exercising supplemental jurisdiction under 28

U.S.C. §1367 in a federal question case, the reviewing court applies the law of the state in which

the federal court exercising supplemental jurisdiction sat) (internal citations omitted).[25]  Under

Florida law, the following elements must be established before collateral estoppel may be

invoked: (1) the issue at stake must be identical to the one decided in the prior litigation; (2) the

issue must have been actually litigated in the prior proceeding; (3) the prior determination of the

issue must have been a critical and necessary part of the judgment in that earlier decision; and (4)

the standard of proof in the prior action must have been at least as stringent as the standard of

proof in the later case.  *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 676 (11th Cir.

1993) (*citing In re Yanks*, 931 F.2d 42, 43 n. 1 (11th Cir.1991); *In re Halpern*, 810 F.2d 1061,

1064 (11th Cir.1987); *In re Scarfone*, 132 Bankr. 470, 472 (Bankr. M.D. Fla. 1991); *Mobil Oil

Corp. v. Shevin*, 354 So. 2d 372, 374 (Fla.1977)).

### C.    Standard for Willful and Malicious Injury Under §523(a)(6)

Section 523(a)(6) of the Bankruptcy Code excepts from an individual debtor's discharge

any debt "for willful and malicious injury by the debtor to another entity or to the property of

another entity."  11 U.S.C. §523(a)(6).  Based upon the overriding purpose of the Bankruptcy

Code of providing relief to debtors from the weight of oppressive indebtedness and provide them

with a fresh start, exceptions to discharge are strictly construed against creditors and liberally

construed in favor of debtors.  *Viener v. Jacobs (In re Jacobs)*, 381 B.R. 128, 136 (Bankr. E.D.

Pa. 2008) (*citing In re Cohn*, 54 F.3d 1108, 1113 (3d Cir. 1995)).  The burden is on the creditor

---

[25] In its Supporting Brief, the Plaintiff states that "Federal common law of issue preclusion determines the preclusive effect of a decision by another federal court sitting in diversity."  Supporting Brief, at §III. The Court is not clear why the Plaintiff cites this principle, as the Florida Complaint itself alleged that the Florida District Court had subject matter jurisdiction based on the Lanham Act claim, and supplemental jurisdiction over the Florida state law claims.  Florida Complaint, at ¶4.

to prove willful and malicious injury by a preponderance of the evidence. *In re Granoff*, 250 Fed. Appx. 494, 495 (3d Cir. 2007)*. (citing Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991)).

The phrase "willful and malicious" as used §523(a)(6) is narrowly defined. *Nat'l Fertilizers, Ltd. v. Vepuri (In re Vepuri)*, 2009 Bankr. LEXIS 2781, at \*18-19 (Bankr. E.D. Pa. 2009) (*citing Kawaauhau v. Geiger*, 523 U.S. 57, 63, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998)). A debtor's actions can only be "willful and malicious" under §523(a)(6) "'if they either have a purpose of producing injury or have a substantial certainty of producing injury.'" *Id.* (*quoting In re Conte*, 33 F.3d 303, 307 (3d Cir. 1994)). Merely because a debtor's conduct may have had "'a high probability of producing harm . . . does not establish that his conduct was substantially certain to produce [an] injury.'" *Harris v. Kamps (In re Kamps)*, 575 B.R. 62, 73 (Bankr. E.D. Pa. 2017) (*quoting In re Conte,* 33 F.3d 303, 307 (3d Cir. 1994)).

Willful injury requires a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. *Id.* (*quoting Kawaauhau*). As such, a party seeking a nondischargeability determination must show that the debtor actually intended to injure the party or its property; negligent or reckless acts do not suffice to establish that a resulting injury is willful and malicious. *Schlessinger v. Schlessinger (In re Schlessinger*, 208 Fed. Appx. 131, 134 (3d Cir. 2006) (*citing Kawaauhau*); *Corcoran v. McCabe (In re McCabe)*, 588 B.R. 428, 433 (E.D. Pa. 2018) ("A debt is non-dischargeable under §523(a)(6) if the debt arises from an act done with 'actual intent to cause injury,' meaning there must have been a 'deliberate or intentional injury ….'") (*quoting Kawaauhau*).

Malicious injury requires (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse. *Id.* (*quoting In re Barboza*, 545 F.3d

702, 706 (9th Cir. 2008)).  A showing of specific malice is not required, and an injury can be malicious even in the absence of personal hatred, spite, or ill-will.  *Kamps*, 575 B.R. at 73. However, in order to establish that an injury is malicious under §523(a)(6), the aggrieved party must prove that the debtor's conduct was motivated by some purpose other than the maximization of the debtor's personal financial interests.  *Sherwin Williams Co. v. Grasso (In re Grasso)*, 487 B.R. 434, 447 (Bankr. E.D. Pa. 2013) (*citing Jacobs*, 381 B.R. at 147).

In sum, in order to succeed on its claim that the Debtor-Defendant is liable for a willful and malicious injury under §523(a)(6), the Plaintiff must prove by a preponderance of the evidence that the Debtor-Defendant intentionally caused injury to the Plaintiff through a wrongful act done intentionally, without just cause or excuse, motivated by some purpose other than his own financial gain.

### D.   Application of Collateral Estoppel

The Summary Judgment Motion asks this Court to determine that the elements of the Plaintiff's §523(a)(6) claim have been established by the Florida Judgment, and are entitled to collateral estoppel in this Adversary Proceeding.  The Court therefore now turns to whether the elements of collateral estoppel are met.[26]

---

[26] Here, the Florida District Court held an evidentiary hearing, then made factual and legal findings in the Florida Judgment based on the evidence presented, rather than simply what was pleaded in the Florida Complaint: "These facts are drawn from credible witness testimony and uncontested evidentiary submissions that have been presented to the Court.  The Court has independently analyzed and considered the evidence and has adopted only those findings which the Court has deemed to be properly supported." Florida Judgment, at §III, footnote 2.  This Court therefore looks to the Florida Judgment's legal conclusions, supported by the Florida District Court's factual findings, to determine if the elements of §523(a)(6) are established such that collateral estoppel applies.  *See Durant v. Durant (In re Durant)*, 586 B.R. 577 (Bankr. D. Md. 2018) (where a state court entered default judgment against the debtor on liability but held a subsequent evidentiary hearing on damages and made specific findings based on the evidence, the bankruptcy court looked to the state court's findings to determine that the elements of §523(a)(4) were met and therefore collateral estoppel applied).

1.    **"Actually Litigated" Element**

The Court finds it useful to first address what it views as a threshold issue with respect to

whether collateral estoppel can apply here, given that the Florida Judgment was entered as a

default. Both federal law and Florida law require that, for collateral estoppel to apply, the issue

to be precluded must have been actually litigated. Under Florida law an issue was actually

litigated even where a default judgment was entered. *See Avant v. Hammond Jones, Inc.*, 79 So.

2d 423, 424 (Fla. 1955); *Massey v. Calvin F. David & Ruden*, 2000 Fla. Cir. LEXIS 5, at *28

(Fla. Cir. Ct. 2000) (collateral estoppel applies to default judgments) (*citing Bay Fin. Sav. Bank,

F.S.B. v. Hook*, 648 So. 2d 305, 307 (Fla. 2d DCA 1995)); *see also Accel Motorsports Inc. v.

Rosario (In re Rosario)*, 2015 Bankr. LEXIS 167, at *5-*6 (Bankr. M.D. Fla. Jan. 13, 2015)

(Florida state court default judgment satisfied the "actually litigated" element of collateral

estoppel under Florida law). Under federal law however, as a general rule, any issue raised in a

case where a default judgment is entered was not "actually litigated" for purposes of collateral

estoppel. *See, e.g., Consumers Produce Co. v. Masdea (In re Masdea)*, 307 B.R. 466, 473

(Bankr. W.D. Pa. 2004).

Notwithstanding the general rule under federal law, the Florida Judgment, entered as a

default against the Debtor-Defendant as a sanction for his discovery abuses, is entitled to

preclusive effect if the other elements of collateral estoppel are met. Albeit entered as a default,

the Florida Judgment satisfies the "actually litigated" requirement of collateral estoppel, because

it "is not a typical default judgment where a defendant neglects or elects not to participate in any

manner because of the inconvenience of the forum selected by the plaintiffs, the expense

associated with defending the lawsuit, or some other reason." *Docteroff*, 133 F.3d at 215.

Rather, it is strikingly similar to the default judgment in *Docteroff*, entered by a federal court as a

15

sanction for the debtor's discovery abuses, that the Third Circuit found was subject to collateral

estoppel.  There the debtor participated extensively in the lawsuit, filed an answer, noticed the

opposing party's deposition, engaged several lawyers, filed papers with the court, and

corresponded with opposing counsel.  *Id.*  The Debtor-Defendant engaged in many of the same

activities in the Florida Action, and ultimately was sanctioned with the Florida Judgment by

default for his extraordinary discovery abuses.  In such circumstances, the Third Circuit has

given a full-throated endorsement to the application of collateral estoppel if the other elements

are met.  *Id.*  ("We do not hesitate in holding that a party … who deliberately prevents resolution

of a lawsuit [through obstruction of discovery], should be deemed to have actually litigated an

issue for purposes of collateral estoppel application.").  Applying the "*Docteroff* exception" here,

the Court finds that the "actually litigated" element of collateral estoppel is satisfied.

### 2.    "Identity of Issues" Element

The Court next determines whether the issue the Plaintiff seeks to preclude, *i.e.,* that the

Debtor-Defendant willfully and maliciously injured it, is identical to the issues decided by the

Florida District Court.  An identity of issues is established by showing that the same general

legal rules govern both cases and that the facts of both cases are indistinguishable as measured

by those rules.  *Kamps*, 575 B.R. at 76 (*quoting Suppan v. Dadonna*, 203 F.3d 228, 233 (3d Cir.

2000)).  To determine whether there is an identity of legal or factual issues in the Florida Action

and this Adversary Proceeding, the Court must compare the legal principles and essential factual

findings underlying the Florida Judgment to the legal principles and factual issues involved in

making a nondischargeability determination under §523(a)(6).  *Id.* (*citing Carmelo v. Mickletz
(In re Mickletz)*, 544 B.R. 804, 815 (Bankr. E.D. Pa. 2016)).

As discussed *supra*, for its claim to succeed under the narrow definition of "willful and

16

malicious injury" contemplated by §523(a)(6), the Plaintiff must prove by a preponderance of the evidence that the Debtor-Defendant intentionally injured the Plaintiff through a wrongful act done intentionally, without just cause or excuse, motivated by some purpose than his own financial gain.  On its Summary Judgment Motion, the Plaintiff relies on the Florida Judgment to make this showing.[27]  The Court therefore must determine whether the judgment decided the issues that must be proven for a §523(a)(6) claim.[28]

### i.    Lanham Act Claim

Starting with the Plaintiff's Lanham Act claim, the Florida District Court first listed the elements required to be proven, then concluded that the Plaintiff was entitled to judgment on that claim, reasoning as follows:

> Defendants have falsely represented their own PSE product as being the same product sold by Dektor Counterintelligence and Security, Inc. and falsely stated that Dektor has been in business since 1969.  Defendants' various e-mails, letters, and websites constitute commercial speech from a competitor *with the purpose of influencing customers to purchase Dektor's PSE product*.  Plaintiff has offered credible proof that these communications by Defendants contain materially false information concerning Plaintiff and its CVSA product.  Plaintiff has offered specific details showing that Dektor and Mr. Herring are the source of these communications containing materially false information about Plaintiff and its CVSA product.  As such, Plaintiff is entitled to judgment on its false advertising, unfair competition, and product disparagement claims arising under the Lanham Act.[29]

---

[27] *See, e.g.,* Summary Judgment Motion, at Introduction ("The district court made detailed findings of fact/conclusions of law in granting judgment to Plaintiff on its claims for violation of the Lanham Act, defamation, and tortious interference with existing/prospective business relationships … and each of these claims involves the type of malicious/willful conduct necessary for a finding of non-dischargeability under 11 U.S.C. §523(a)(6).").  As noted above, the Plaintiff's Adversary Complaint and Summary Judgment Motion do not seek a nondischargeability determination with respect to the Plaintiff's claim under Florida's Deceptive and Unfair Trade Practices Act.  *See* Adversary Complaint, at ¶¶11, 12, 28.

[28] In doing so, the Court finds it useful to restate the Florida District Court's reasoning for finding the Debtor-Defendant was liable for each of the Plaintiff's claims, already set forth *supra*.

[29] Florida Judgment, at §IV(A) (emphasis added).

Although the Florida District Court found that the Debtor-Defendant and Dektor committed

various wrongful acts with the purpose of influencing customers to purchase Dektor's product,

absent is a finding that the Debtor-Defendant had the specific intent to injure the Plaintiff.  To

the contrary, the Florida District Court found that the Debtor-Defendant was, at least partially,

motivated to have customers purchase Dektor's products and services, thereby benefitting his

own financial interests.  Nor is specific intent to injure an element of a Lanham Act claim.

Although the Plaintiff's injury flowed from the Debtor-Defendant's actions, which the Florida

District Court found violated the Lanham Act, there was no finding by the Florida District Court

that injury to the Plaintiff was "a goal of the scheme he pursued, as opposed to the goal of

benefitting himself."  *KV Pharm. Co. v. Harland (In re Harland)*, 235 B.R. 769, 779 (Bankr.

E.D. Pa. 1999) (finding that state court judgment against the debtor did not establish all elements

of §523(a)(6) claim because it did not find the debtor had intent to cause injury when breaching

contract).  The Florida District Court's findings with respect to the Debtor-Defendant's liability

under the Lanham Act therefore do not establish all elements of a willful and malicious injury

claim under §523(a)(6) of the Bankruptcy Code.[30]

---

[30] The Plaintiff misses the mark in arguing that the Florida District Court based the Florida Judgment on willful and malicious conduct because it doubled the Plaintiff's damages and awarded attorneys' fees, which "required [the court] to find intentional/malicious conduct on the part of the Defendant …." Summary Judgment Motion, at §III(A)(3).  The Florida District Court noted that in order to be eligible for treble damages under the Lanham Act the Debtor-Defendant's conduct had to be intentional, *citing Vector Prod., Inc. v. Hartford Fire Ins. Co.*, 397 F.3d 1316 (11th Cir. 2005), and found that "in light of Defendants' willful violation of the Lanham Act, misuse of the internet to convey materially disparaging information about Plaintiff and Plaintiff's product, and discovery misconduct leading to an additional unknown amount of actual damages, doubling is appropriate here."  Florida Judgment, at §V.  The Florida District Court therefore found intentional conduct warranting additional damages, but that does not equate to a finding of "intent to injure" or malice under §523(a)(6).  The Plaintiff misquotes *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1205 (11th Cir. 2001), stating that it holds fee awards under the Lanham Act are reserved for the exceptional case that can be characterized as "malicious, fraudulent, deliberate, ***and*** willful."  Summary Judgment Motion, at §III(A)(3) (emphasis added).  The *Techsplosion* decision stated, rather, that an award of fees is reserved for cases where the infringing party acts in a "malicious, fraudulent, deliberate, ***or*** willful manner."  *Id.* at 1205 (emphasis added).  This supports the conclusion, already stated, that the Florida District Court's award of double damages and fees based on

### ii.    Defamation Claim

The Court next turns to the Florida District Court's findings on the Plaintiff's defamation claim. The Florida District Court identified the elements of a defamation claim under Florida law, then concluded that "the evidence shows that Dektor and Mr. Herring published numerous false and defamatory statements about Plaintiff and Plaintiff's product and related services to a multitude of existing and potential customers of Plaintiff's products and services. Defendants knew *or should have known* that the defamatory statements were false when made and Plaintiff has suffered damages, including but not limited to lost sales and lost goodwill as a direct result of the defamation. Plaintiff is entitled to judgment against Defendants on this claim."[31]

These findings do not constitute a finding that the Debtor-Defendant specifically intended to injure the Plaintiff, and specific intent to injure is not an element of a Florida defamation claim. *See Kamps*, 575 B.R. at 78-79 (finding that state court determination that debtor was liable under Pennsylvania defamation law was not entitled to collateral estoppel in §523(a)(6) action for willful and malicious injury because there was no requirement under Pennsylvania law that a defendant must intend to injure a plaintiff in order to establish a defamation claim). As noted above, negligent or reckless acts do not suffice to establish that a resulting injury is willful and malicious. The Florida District Court, in concluding that the Debtor-Defendant was liable under Florida defamation law because he "knew or should have known" his statements were false, left open the possibility that the Debtor-Defendant could have acted with negligence or recklessness, as opposed to actual intent to injure the Plaintiff. *Compare Fremuth v. Peterson (In re Peterson)*, 2002 Bankr. LEXIS 376, at *6-7 (Bankr. D. Del. 2002) (arbitrator's decision that

---

the Debtor-Defendant's intentional conduct did not necessarily constitute a finding of malice, as the Plaintiff argues.

[31] Florida Judgment, at ¶IV(C) (emphasis added).

debtor had engaged in defamation under Michigan law, based on a finding that the debtor

engaged in "malicious and/or negligent use of the Internet and Internet websites" was not entitled

to collateral estoppel as a finding of willful and malicious injury under §523(a)(6) because under

Michigan law it was not required that the arbitrator make a specific finding of anything beyond

negligence, and therefore the bankruptcy court could not find that the arbitrator addressed

whether the debtor acted maliciously for purposes of §523(a)(6)), *with Ashley v. Andrews (In re

Andrews)*, 2006 Bankr. LEXIS 4091, at *9-10 (Bankr. D.N.J. May 10, 2006) (jury finding of

defamation in state court established willful and malicious injury under §523(a)(6) because the

jury found that the debtor "acted in willful and wanton disregard of Plaintiff's rights and that [the

debtor's] primary motive in making the statements was not to advance the interests of another

person or persons, but was instead, ill will or spite directed at Plaintiff … It is implicit in the

jury's findings that [the debtor] acted with malice and that [the debtor's] actions were intended to

lead to Plaintiff's injury, satisfying the standard set forth in *Kawaauhau v. Geiger*.").[32]   The

Florida District Court's findings with respect to the Debtor-Defendant's liability for defamation

therefore do not establish all elements of a willful and malicious injury claim under §523(a)(6) of

[32] The Plaintiff cites *Johnston v. Elbaum (In re Elbaum)*, 2009 Bankr. LEXIS 4323, 22 Fla. L. Weekly Fed. B231 (Bankr. S.D. Fla. Nov. 20, 2009) and *Kronk v. Anthony (In re Anthony)*, 2020 U.S. Dist. LEXIS 2784, at *21 (M.D. Fla. Jan. 7, 2020) for the principle that intentional defamation under Florida law constitutes a willful and malicious injury for purposes of §523(a)(6). *See* Summary Judgment Motion, at §III(A)(1). In *Elbaum*, the court found that a default judgment finding the debtor liable for defamation satisfied the elements of §523(a)(6), thereby permitting application of collateral estoppel. In so doing, the court looked to the only allegation of the complaint, which was that the debtor engaged in intentional defamation, not simply reckless disregard for the truth. *Id.* at *6. In that context, that the court reasoned that willful and malicious injury was established because "[i]ntentional defamation meets the requirements of nondischargeability under §523(a)(6) because malice is an essential element of defamation and intentional defamation meets the 'willful' requirement of §523(a)(6)." *Id.* at *8. Here, however, the Florida District Court found that the Debtor-Defendant "knew or should have known" of the falsity of his statements. Leaving open the possibility of something less than intentional defamation, the Florida District Court's finding is distinguishable from *Elbaum*. This distinction is consistent with the *Anthony* court's statement that the intentional tort of defamation "*may* constitute a 'willful and malicious injury' *so long as* the debtor *knew* the published statements were false." 2020 U.S. Dist. LEXIS 2784, at *21 (emphasis added).

the Bankruptcy Code.

### iii.    Tortious Interference with Business Relationship Claim

Finally, the Florida District Court identified the elements of a claim under Florida law for tortious interference with a business relationship.  The court then concluded that the Debtor-Defendant was liable for this cause of action as well: "Here, Plaintiff has shown that it had existing contracts or prospective business relationships with various law enforcement agencies and other entities for the sale of its CVSA product and related services.  Plaintiff claims Dektor and Mr. Herring knew about these contracts and business relationships and intentionally interfered by making false and disparaging statements about Plaintiff and the CVSA product to dissuade known CVSA users from using NITV's products and instead use PSE competing product.  NITV is thus entitled to judgment against Dektor on this fourth and final count."[33]  As with the two causes of action discussed *supra*, the Florida District Court did not make a finding that the Debtor-Defendant intended to injure the Plaintiff or took actions that were not motivated by his own financial benefit.  Nor did the Florida District Court enumerate intent to injure as one of the elements of a tortious interference claim under Florida law.  The Florida District Court's finding[34] that the Debtor-Defendant intentionally interfered with the Plaintiff's contracts and business relationships by making false and disparaging statements does not *necessarily* equate to a finding that the Plaintiff intended to injure Plaintiff as contemplated by §523(a)(6).  *See Ice House Am., LLC v. Cardin (In re Cardin)*, 2013 Bankr. LEXIS 503, at *25-*29 (Bankr. E.D.

---

[33] Florida Judgment, at §IV(D).

[34] The Court is unsure how to read the Florida District Court's use of the phrase "Plaintiff claims" preceding its statement that the Debtor-Defendant intentionally interfered with the Plaintiff's business relationships, but given that the Florida District Court found the Debtor-Defendant liable for the claim, the Court will assume that the Florida District Court did not mean to qualify that statement by preceding it with the phrase "Plaintiff claims."

Tenn. Jan. 31, 2013) (providing thorough analysis of subtle difference between standards

governing §523(a)(6)'s "intent to injure" requirement compared to Florida's intentional tort law,

although ultimately concluding that a state court jury verdict finding the debtor liable for

intentional interference with business relationships was entitled to collateral estoppel based on

the specific instructions given to the jury). Therefore, as with the claims discussed above, the

Florida District Court's findings with respect to the Debtor-Defendant's liability for intentional

interference with the Plaintiff's business relationships do not establish all elements of a willful

and malicious injury claim under §523(a)(6) of the Bankruptcy Code. [35]

### 3.     Remaining Elements of Collateral Estoppel

Because the Court finds that there is not a complete identity of the issues to be decided in

this Adversary Proceeding and those that were decided by the Florida Judgment, and therefore

collateral estoppel does not apply to the Florida Judgment, the Court does not need to address

whether the remaining elements of collateral estoppel under federal common law or Florida law

are satisfied.

---

[35] The Plaintiff asserts it is "beyond question that tortious interference – as Defendant was found to have committed – constitutes a willful and malicious injury for purposes of §523(a)(6)," citing *Corn v. Marks (In re Marks)*, 192 B.R. 379, 385 (E.D. Pa. 1996) and *Caro v. Jundi (In re Jundi)*, 2012 Bankr. LEXIS 4022, at *22-23 n.12 (Bankr. E.D. Pa. Aug. 23, 2012). As the Plaintiff notes, the *Marks* court did state that "The tort of intentional interference requires an intent to injure; this makes it a 'willful and malicious injury.'" *Marks*, 192 B.R. at 385. It did so, however, in evaluating whether a state court finding of tortious intentional interference with an economic opportunity *under Pennsylvania law* established willful and malicious injury. *Id.* One of the elements of that claim under Pennsylvania law is "an intent on the part of the defendant to harm the plaintiff by interfering with [a] contractual relationship." *Id.* Therefore, because under Pennsylvania law intent to injure is an element of the tortious interference claim, a finding of liability would establish that element of a claim for willful and malicious injury under §523(a)(6). This is not necessarily the case under Florida law, where intent to injure is not an express element of the tortious interference claim. The *Jundi* decision is consistent with the conclusion that tortious interference may, but does not necessarily, establish intent to injure: "Tortious interference with contractual relations *may constitute* willful and malicious conduct under section 523(a)(6). For purposes of nondischargeability under section 523(a)(6), the plaintiff must prove an 'intent to injure' the creditor." *Id.*, 2012 Bankr. LEXIS 4022, *22-23 (*citing Marks*).

IV.    **CONCLUSION**

The Florida Judgment did not establish all elements of the Plaintiff's claim in this

Adversary Action that the Debtor's debt to it is nondischargeable pursuant to §523(a)(6) of the

Bankruptcy Code.  The Summary Judgment Motion will therefore be denied, and the Adversary

Proceeding will proceed to trial.

An Order consistent with this Memorandum Opinion will be entered.

Dated:  April 22, 2021

_____
MAGDELINE D. COLEMAN
CHIEF U.S. BANKRUPTCY JUDGE

Dean E. Weisgold, Esquire
Dean E. Weisgold, P.C.
1835 Market Street, Suite 1215
Philadelphia, PA 19103

Arthur Herring, III
1045 NW End Boulevard, Lot 150
Quakertown, PA 18951